**EXHIBIT "A-2"**

I. **THE GOVERNMENT IS ENTITLED TO SUMMARY JUDGMENT ON COUNTS III AND IV OF THE COMPLAINT BECAUSE THE SUBJECT MAILINGS WERE INELIGIBLE FOR THE NONPROFIT RATE**

In Counts III and IV of the complaint, the United States seeks to recover the difference between the postage due at the regular third-class bulk rate and the postage paid by Vantage at the Nonprofit Rate. Count IV alleges that the postage deficiency constitutes a debt due to the United States under the Federal Debt Collection Procedure Act, 28 U.S.C. § 3001 *et seq*. Count III alleges that Vantage is liable for the same postage deficiency under the common law doctrine of unjust enrichment. The Government is entitled to summary judgment on both counts because the material facts relating to the Subject Mailings are not genuinely disputed and, as a matter of law, the Subject Mailings were ineligible for the Nonprofit Rate.

    A.    **The Subject Mailings were Ineligible for the Nonprofit Rate under the Plain Language of the Cooperative Mailing Regulation**

The Postal Service regulation governing this case is plain: "[c]ooperative mailings may be made at the [Nonprofit Rate] only when each of the cooperating organizations is individually authorized to mail at the [Nonprofit Rate] at the post office where the mail is deposited. DMM § 625.521 (1992); DMM § E670.5.3 (current) ("the cooperative mail regulation"). The cooperative mail regulation, which was first promulgated by the Postal Service on August 26, 1975, 40 Fed.Reg. 37209 (1975), is a valid exercise of the Postal Service's authority to adopt regulations, and is entitled to the highest level of deference under Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837 (1984).

Congress has given the Postal Service broad authorization to adopt rules and regulations, "as it deems necessary," to accomplish the objectives of the special rate classification legislation. See 39 U.S.C. § 401 ("The Postal Service shall have the following general powers: . . . to adopt,

28

amend, and repeal such rules and regulations as it deems necessary to accomplish the objectives of this title."). The cooperative mail regulation comports with Congress's establishment of special, reduced postage rates for certain nonprofit organizations. See National Retired Teachers Assoc. v. United States Postal Service, 593 F.2d 1360, 1364 (D.C. Cir. 1979).

Every published decision addressing the issue has upheld the cooperative mail regulation. For example, in National Retired Teachers Assoc., 593 F.2d 1360, the Court of Appeals for the D.C. Circuit rejected a challenge to the validity of the cooperative mail regulation. In upholding the regulation, the court reasoned:

> We believe USPS validly exercised its interpretative discretion in concluding in § 134.57 [the predecessor to DMM § 625.521] that the "mailed by" language of the governing provisions contained, by fair implication, limitations on the use of the nonprofit rate. Congress, in enacting the statutory classification, and the [Postal Rate Commission], in adopting it following passage of the Act, established certain criteria for qualification for the nonprofit rate. Chief among them was the requirement that an organization be a "religious, educational, scientific, philanthropic, agricultural, labor, veterans or fraternal" organization. The USPS interpretation reflects a conclusion that Congress and the PRC contemplated that the nonprofit rate would be used for the purposes of the listed organizations, and not for other purposes such as commercial activities inconsistent with the grant of qualification. Viewed in this light, § 134.57's limitations are eminently reasonable as effectuating the implicit purpose of the provisions.

National Retired Teachers Assoc., 593 F.2d at 1364. The court also noted that further support for the cooperative mail regulation can be found in 39 U.S.C. § 403(c)(1976), "which prohibits USPS from granting any 'undue or unreasonable preferences' to mail users." Id. at 1364 n.19.

Vantage does not have a nonprofit permit and is therefore not "individually authorized to mail at the Nonprofit Rate." DMM § 625.521. Under a common understanding of the word "cooperate" or "cooperative", Vantage cooperated with the Nonprofit Organizations and therefore, under the literal language of the regulation, engaged in "cooperative mailings".

29

The term "cooperative mailings," however, while undefined in § 625.521, has been repeatedly defined by the Postal Service. As demonstrated below, under the Postal Service's interpretation of the phrase "cooperative mailings," as well as the plain meaning of the phrase, Vantage engaged in prohibited cooperative mailings with the Nonprofit Organizations.

### B. The Subject Mailings were Ineligible for the Nonprofit Rate under the Postal Service's Interpretation of the Cooperative Mailing Regulation

The Postal Service interprets the cooperative mail regulation as prohibiting "cooperative mailings" when the relationship between the cooperating parties is a joint venture rather than a strict principal agent relationship. See Lease Decl. ¶¶ 13-29, Exs. C-G. In this respect, the Postal Service prohibits cooperative mailings when the unauthorized party has a financial stake in the success or failure of the mailings, or, put another way, shares in the costs, risk, or benefits of the mailing. Id. As demonstrated below, every published decision addressing the issue has upheld this interpretation of the cooperative mail regulation, and these decisions are consistent with the deference due the Postal Service's interpretation of its own regulation.

The government's Statement of Undisputed Facts demonstrates that Vantage shared in the costs, risks, and benefits of the Subject Mailings, and that, consequently, its relationship with the Nonprofit Organizations was in the nature of a joint venture, rather than that of a principal agent, and therefore violated the cooperative mailing regulation. Among other things, it is notable that, with respect to the Subject Mailings, Vantage did not collect over $5,000,000 (or 27%) of its Agreed Upon Contract Charges. Douillette Decl. ¶ 5, Ex. A. It is also notable that, with respect to the Subject Mailings, 76% of all Program Receipts went to Vantage (i.e., Vantage received approximately $41,000,000 of the approximate $53,000,000 in Program Receipts). Id. ¶ 6, Ex.

30

A.[14]

    1.    **The Cases have upheld the Postal Service's Interpretation of its Regulation**

In <u>United States Postal Service v. University Publishing Corp.</u>, 835 F. Supp. 489, 491 (S.D. Ind. 1993), the court rejected a challenge to the Postal Service's interpretation of the cooperative mail regulation. The Postal Service brought an action claiming a postage deficiency against a for-profit publisher ("UPC") which, pursuant to contracts with nonprofit clients, sold alumni directories by mail using the Nonprofit Rate. The Postal Service's Final Agency Decision in the matter had concluded:

> [T]he mailings in question were cooperative ventures. Both your for-profit corporation and the nonprofit organizations shared in the cost, risk, and benefits of these mailings. UPC gained considerably through the sale of their business product, the alumni directories. Because UPC is not an authorized nonprofit organization, postage on the mailings was due at the applicable regular bulk rate.

<u>University Publishing</u>, 835 F.Supp. at 490-91.[15]

The court began its analysis by noting that, "[a]lthough DMM § 625.52, which is captioned 'Cooperative Mailings,' does not define 'cooperative mailing,' the USPS construes the term to mean 'a mailing in which one or more parties cooperate with an authorized nonprofit mailer to share the cost, risk, and benefits of the mailing.'" <u>University Publishing Corp.</u>, 835 F. Supp. at 491 (quoting Postal Service's Final Agency Decision). Noting that the court is required to give great deference to an agency's interpretation of its own regulations, the court held that

---

[14] Also of note, with respect to the Shriners Hospital, an ongoing program, as of approximately January 2002, Program Receipts equaled approximately $24,800,000, Payments to Vantage equaled approximately $20,600,00, and Vantage's Agreed Contract Charges equaled $24,600,000. Douillette Decl. ¶ 8, Ex. B.

[15] A copy of the Postal Service's Final Agency Decision is attached as Exhibit F to the Declaration of Jerome Lease.

"[t]he USPS definition of 'cooperative mailing' is reasonable and the Court will not disturb it."

Id.

In support of this conclusion, the court reasoned:

DMM § 625.521 describes when cooperative mailings may be made using the special bulk rates. According to UPC, it "receives the first $15.00 of every alumni contribution to defray the costs incurred in producing and mailing the letters and directories." This billing practice places the UPC mailings squarely within the definition of a "cooperative mailing" because UPC's revenues are linked to the success of the mailings in generating alumni contributions. DMM § 625.521 requires that each cooperating organization be individually authorized to mail at the special bulk rate. UPC lacks such authorization.

Id.

More recently, in <u>United States v. Raymond & Whitcomb Co.</u>, 53 F.Supp.2d 436 (S.D.N.Y. 1999), the court also upheld the Postal Service's interpretation of the cooperative mailing regulation.[16] The government brought claims against a for profit travel company, ("R&W"), alleging that R&W improperly sent mail at the Nonprofit rate in connection with the promotion of travel tours to the members of R&W's two nonprofit clients. <u>Raymond & Whitcomb</u>, 53 F.Supp.2d at 439-40.

The court held that the mailings violated the Postal Service's prohibition on cooperative mailings, relying on the Postal Service's interpretation of the cooperative mailing regulation contained in PS-209, and Publications 417 and 417A. <u>Id.</u> at 441-42. The district court began its analysis by noting that, while the cooperative mailing inquiry looks to "traditional agency principles, . . . in agency law, 'control by the principal' often is the most critical consideration, while in the cooperative mailing inquiry, 'absence of gain or risk to the agent' often is more

---

[16] <u>See</u> <u>United States v. American Target Advertising Inc.</u>, 257 F.3d 348 (4th Cir. 2001) (noting that "the Postal Service's interpretation of the Cooperative Mail Rule has been accepted by at least two federal courts") (citing <u>University Publishing</u> and <u>Raymond & Whitcomb</u>).

32

important, and various other factors are relevant as well." Id. at 441 (citing PS-209).

The court explained:

> Risk-sharing is critical because to the extent that a for-profit entity substantively participating in a venture with a non-profit entity has a sizeable financial stake in the venture, that venture ceases to be a truly non-profit endeavor eligible for the non-profit rate. Rather, the venture becomes a cooperative endeavor, even if the non-profit entity retains final decision-making control over the venture. Mailings for a project involving a for-profit entity and a non-profit entity therefore generally are not eligible for the non-profit rate when the for-profit entity "shares in the costs, risks, and benefits of the mailing," such as when the for-profit entity's "revenues are linked to the success of the mailings."

Id. at 442 (quoting Univ. Publ'g Corp., 835 F.Supp. at 490-91 (upholding and applying Postal Service interpretation of cooperative mailing rule)). The court then reviewed the additional factors contained in PS-209, Publication 417, and Publication 417A, noting that the Postal Service "has established that it determines whether a mailing is cooperative by a multi-factor test that it not entirely coextensive with pure agency law considerations." Id.

The district court rejected R&W's arguments about disputed facts "because they are simply disputes as to degree, such as the extent to which the [nonprofit clients] bore 'a much greater risk,' and to which R&W 'ultimately passed on to the traveling member' its costs." Id. at 443. The court granted summary judgment to the government on its Federal Debt Collection Procedure Act and unjust enrichments claims, concluding:

> In sum, even if the Institutions had total control and did the overwhelming share of the work, R & W's risk-, reward-, and expense-sharing still would make it a sufficiently weighty investor that it would be more than a mere functionary of the Institutions. Moreover, it is clear that R&W had more input into the substance of the endeavors than a mere silent investor would have. Accordingly, any reasonable fact finder would conclude that the disputed mailings were cooperative mailings between R & W and one of the Institutions, and therefore were ineligible for the non-profit rate.

Id. at 443.

### 2. These Results are Consistent with the Deference Due the Postal Service's Interpretation

The results in <u>University Publishing</u> and <u>Raymond & Whitcomb</u> are consistent with the Supreme Court's recent explication of the <u>Chevron</u> doctrine. <u>See</u> <u>United States v. Mead Corp.</u>, 533 U.S. 218, 226-27 (2001) ("administrative implementation of a particular statutory provision qualifies for <u>Chevron</u> deference when it appears that Congress delegated authority to the agency generally to make rules carrying the force of law, and that the agency interpretation claiming deference was promulgated in the exercise of that authority").

Congress granted the Postal Service broad authority to "to adopt, amend, and repeal such rules and regulations as it deems necessary to accomplish the objectives of [the rate classification legislation]." <u>See</u> 39 U.S.C. § 401. The Postal Service's interpretation of the cooperative mailing regulation was promulgated in the exercise of that authority. "The purpose of CSR 209 is to ensure that, consistent with the Postal Service's statutory and regulatory mandate, only nonprofit organizations benefit financially from use of the significantly reduced Nonprofit Rate." Lease Decl. ¶ 16. CSR 209, like Publications 417 and 417A, effectuates the Postal Service's cooperative mailing regulation, which is "designed to prevent abuses in the use of bulk mail permits." <u>See</u> <u>Owen v. Mulligan</u>, 640 F.2d 1130, 1131 (9th Cir.1981). The Postal Service's interpretation of the cooperative mailing regulation also effectuates its legislative mandate that, in establishing the rate classifications, the Postal Service not grant any "undue or unreasonable preferences" to any mailer. Lease Decl. ¶ 26 (quoting 39 U.S.C. § 403(c)).