**EXHIBIT "B-1"**

-10-

7.1 <u>Program Account, Control of Funds Deposited</u> - Vantage shall prepare all mail packages for Shriners under this Agreement so the mail packages include a clear statement that directs the recipient to send all donations to a designated post office box in the name of Shriners. Based on the number of responses, Vantage shall instruct the designated U.S. Post Office to sweep the designated postal box several times a week and forward the contents to the designated depository bank, Boston Financial Data Services, Inc., a subsidiary of State Street Bank of Boston ("Bank"), for deposit into a segregated account in the name of Shriners Hospitals for Children.

7.2 Boston Financial Data Services shall count, record by donor, and deposit all such proceeds in Shriners' segregated bank account at State Street Bank of Boston (hereinafter referred to as the "Program Account"). Shriners shall establish the Program Account so that it is dedicated solely to deposits that are generated pursuant to this Agreement. The Program Account shall be in Shriners' name, and Shriners alone shall own and control it. Any interest that accrues on funds deposited in the Program Account shall be the sole property of Shriners. Bank shall invoice Shriners directly for all fees and other costs associated with services that Bank renders to Shriners, or Bank may withdraw payment of such invoices from the Program Account, at Shriners' choice and at Shriners' discretion. Vantage shall prepare and submit a report to Shriners weekly that sets forth the amount of funds received and deposited pursuant to this Agreement or Shriners may receive such information directly from the Bank, at Shriners' choice and discretion.

7.3 <u>Submission and Payment of Billing Statements</u>

7.3.1 After a mailing is dropped, Vantage shall prepare and submit a billing statement, consistent with this Agreement, of the charges for that mailing to the Shriners Program Administrator along with a copy of the U.S. Postal Service ("USPS") Form 3602, or an equivalent form certified by the USPS, that shows the actual quantity of packages mailed and postage paid. Vantage shall use the unique job identification code it assigned to the mailing to which the billing statement relates so that Shriners can easily match each billing statement and the corresponding USPS Form 3602 to the correct Campaign Approval Packet of paragraph 6 herein in order to verify that invoiced charges are identical to those costs that Shriners approved and authorized Vantage to incur on behalf of the Shriners and to

NSG048

JAN-24-02 11:45 FROM-VANTAGE GROUP SERVICES +1-6177389605 T-080 P.13/24 F-108
Case 1:04-cv-11686-WGY    Document 19-8    Filed 03/25/2005    Page 3 of 14

-11-

verify that the billing statement is based on the number of packages that Shriners approved and that Vantage actually mailed. The charges contained in a billing statement shall not be other than contained in Schedule A, and shall not exceed the costs that Shriners approved in the Campaign Approval Packet, nor include any additional costs.

7.3.2 Shriners agrees to retain all funds received in response to the Direct Mail Program in the Program Account. Upon receipt and verification of the billing statement, and upon verification from the Bank of the amount of funds available in the Program Account to pay the charges on the billing statement, Shriners shall pay the charges on the billing statement from the Program Account.

7.3.3 Upon Shriners' verification of the correctness of a billing statement, the order of payment from the Program Account is as follows: first - postage; second - list rentals; third - product cost.

7.4 <u>Withdrawals from Program Account</u> - Unless terminated pursuant to Section 13 of this Agreement, beginning on the effective date of this Agreement, and through the first eighteen (18) months of operation of the Shriners' Direct Mail Program, Shriners will not withdraw funds from the Program Account until it is current with all undisputed outstanding billing statements, and the Program Account contains at least one-half of the total budgeted expense for the upcoming mailing that has been approved by Shriners in writing. Unless sooner terminated pursuant to Section 13 of this Agreement, beginning on January 1, 2001, and at the conclusion of every three month period thereafter, Shriners may withdraw an amount from the Program Account equal to twenty percent (20%) of gross donations it received in the same three-month period a year earlier. Unless sooner terminated pursuant to Section 13 of this Agreement, at any time after April 1, 2001, Shriners may withdraw more than twenty percent (20%) if it is current with all outstanding undisputed billing statements, and the Program Account contains at least one-half of the total budgeted expense for the upcoming mailing that has been approved by Shriners in writing.

Paragraph 8. <u>Trademarks, Trade Names, Service Marks</u>

8.1 Vantage agrees that it will use the name "Shriners Hospitals for Children" or any of Shriners' trademarks, trade names, or service marks ("Shriners Marks") only in connection with the conduct and operation of Shriners' Direct Mail Program

NSG049

-12-

provided for under this Agreement and only with the written approval of Shriners for all such applications. Vantage recognizes and acknowledges that the use of the Shriners Marks shall not confer any proprietary rights on Vantage to the Shriners Marks. Upon expiration or termination of this Agreement, Vantage's right to use Shriners Marks shall terminate, and Vantage shall cease all use of Shriners Marks, except as permitted under Sections 13.1 and 13.2 of this Agreement. Shriners shall accrue all goodwill relating to the use of the Shriners Marks at any time.

8.2 Vantage acknowledges that Shriners member and donor lists are an asset of substantial value and shall maintain this information in strictest confidence and shall use only the names in accordance with this Agreement. The confidentiality obligation imposed on Vantage pursuant to the preceding sentence shall survive the term of this Agreement.

Paragraph 9. Intellectual Property and Confidentiality

9.1 Shriners recognizes that Vantage has expended Know-How and other intellectual property of a proprietary nature that Vantage has developed in order to fashion and present the Direct Mail Program to Shriners as embodied in Schedule A. Shriners recognize further that Vantage's intellectual property as represented by the Direct Mail Program and Schedule A has value to Shriners, Vantage, and Vantage's competitors.

9.2 Shriners shall use its best efforts to ensure the confidentiality of Schedule A and all other Know-How, other Vantage intellectual property of a proprietary nature, and any confidential business information related thereto or that otherwise relates to implementing this Agreement.

9.3 Shriners shall use its best efforts to restrict access to such information to personnel who have a need to know, including by way of limitation: (a) members of its legal department; (b) Shriners' Program Administrator or other high level employee, such as its Executive Secretary; (c) accounting department; (d) Shriners' corporate officers, directors and trustees; and (d) officials of governments or judiciaries who have a legal right to know.

    9.4 Notwithstanding the foregoing, confidential information shall not include any information that (a) is or becomes a part of the public domain by some means other that through an act or omission of Shriners or

NSG050

-13-

Vantage; (b) Vantage discloses to a third party without any restriction on such third party; (c) is in the possession of Vantage or Shriners without actual or constructive knowledge of an obligation of confidentiality with respect thereto at or prior to the time it is disclosed under this Agreement; or (d) is developed by Shriners independently of this Agreement.

Paragraph 10.    Compliance with State Law and Registration Requirements

Shriners and Vantage agree that each party is responsible to comply with its duties and registration obligations pursuant to the laws and regulations of each state provided, however, that Vantage shall in all events be responsible to register this Agreement with the appropriate jurisdictions as required by law. Each party shall bear its own registration and licensing costs and fees, all penalties under state law for noncompliance, and all expenses or fees incurred by that party as a result of any administrative or legal action arising from noncompliance. Both parties agree that they will provide a complete list to the other party of the jurisdictions where they have registered as well as the registration number if they have received one. Shriners has the option to direct Vantage not to mail anything to a particular state, should Shriners determine it is not in its best interests for Shriners to register to solicit for charitable contributions in that state. As of the execution of this Agreement, Shriners has not registered to solicit for charitable contributions in the states of: Alabama, Arkansas, Louisiana, Maine, Michigan, and Nebraska. If Shriners elects to register in those states, it will advise Vantage.

Paragraph 11.    Indemnification

Shriners and Vantage each agrees to indemnify, defend, and hold harmless the other party to this Agreement and its respective partners, directors, trustees, officers, agents, and employees, from and against any loss, damage, liability, claims or causes of action (including attorneys' fees and expenses of litigation) in any way resulting from such party's intentional or negligent acts or omissions or the intentional or negligent acts or omissions of such party's partners, directors, trustees, officers or employees, or members in connection with or in any way related to the Direct Mail Program or any such party's breach of its respective obligations under this Agreement. Vantage and Shriners shall indemnify each other only up to the

NSG051

-14-

limits of each other's respective comprehensive general liability insurance policy.

Paragraph 12.   <u>Notice</u>

12.1 Any Notice or other communication between Shriners and Vantage concerning or required under this Agreement shall be in writing and shall be sent by Certified U.S. Mail or overnight courier service to the address listed below or to such other address as either of the parties may hereafter specify by such Notice to the other:

> To: Shriners Hospitals for Children
> 2900 Rocky Point Drive
> Tampa, FL 33607
> Attn: Director of Giving
> Copy to: Executive Vice President of Shriners
> Hospitals for Children
>
> To: Vantage Direct Mail Services
> 1244 Boylston Street
> Boston, MA 02467
> Attn: Ms. Lynn S. Edmonds
> Executive Vice President and General
> Manager

12.2 <u>Service</u> - Determination of the date that Notice is received: (a) certified mail is the date received; (b) first class mail is the date postmarked; and (c) overnight courier service is the date sent.

Paragraph 13.   <u>Termination, Proprietary Material</u>

13.1 <u>Termination Without Cause by Shriners</u> - At any time within the term of this Agreement, Shriners may terminate this Agreement unilaterally without cause by providing Vantage with sixty (60) days prior written notice in accordance with the notice requirements of Paragraph 12 above. In that event, this Agreement shall automatically terminate on the sixtieth (60) day following the date of the written notice or at the end of the mailing campaign during which the written notice is given, whichever occurs first. Upon termination, Shriners shall have two options to satisfy Billing Statements prepared by Vantage which have been approved by Shriners in accordance with Paragraph 7.3.1 of this Agreement:

NSG052

JAN-24-02 10:06 FROM-VANTAGE GROUP SERVICES +1-6177389605 T-090 P.17/24 F-108
Case 1:00-cv-00686-WEB Document 19-8 Filed 03/25/2005 Page 7 of 14

-15-

A.  First, Shriners may pay such billing statements directly. If such direct payments are made by Shriners, Vantage shall within thirty (30) days of complete payment, deliver to Shriners, at Vantage's cost, all materials prepared by Vantage on behalf of Shriners, including, but not limited to Mailing Lists.

B.  Second, at Shriners' option, Shriners may permit Vantage to rent or exchange Shriners' donor file and use the proceeds to satisfy any outstanding Billing Statements approved by Shriners in accordance with Section 7.3.1 of this Agreement. If Shriners elects this second method of payment, Vantage also has the right to continue to conduct Donor Renewal Mailings to those donor names acquired through the efforts of Vantage. In this case the Donor Renewal Mailings must be approved by Shriners in the manner provided by Paragraph 6 of this Agreement, but Shriners' approval shall not be unreasonably withheld. Shriners agrees to apply all Gross Income from these Donor Renewal Mailings to settle any Billing Statements approved by Shriners in accordance with Paragraph 7.3.1 of this Agreement. Vantage may continue to conduct Donor Renewal Mailings, or continue to rent or exchange Shriners' donor file, until the balance of Billing Statements approved by Shriners in accordance with Paragraph 7.3.1 of this Agreement, which is outstanding upon the termination of this Agreement, is paid in full by Shriners. Vantage shall mail to Program Donors for thirty-six (36) months until all outstanding billing statements are paid or until such mailings no longer produce net income at which time Shriners shall be responsible to pay the balance. In no case shall Vantage continue to conduct Donor Renewal Mailings after thirty-six (36) months from the date of the Notice of Termination.

13.2 <u>Termination for any Other Reason</u> - In the event this Agreement is terminated for any other reason than that provided in Section 13.1 hereof, after sixty (60) days from termination Vantage shall have the right to rent or exchange Shriners' donor file and use the proceeds to satisfy any outstanding Billing Statements approved by Shriners in accordance with Paragraph 7.3.1 of this Agreement. In addition, Vantage has the right to continue to conduct Donor Renewal Mailings to those donor names acquired through the efforts of Vantage, which Donor Renewal Mailings must be approved by Shriners in the manner provided by Paragraph 6 of this Agreement. Gross Income from these Donor Renewal Mailings will be used to settle any outstanding Billing Statements approved by Shriners in accordance with Paragraph 7.3.1 of this Agreement. Vantage may continue to conduct Donor

Renewal Mailings, or continue to rent or exchange Shriners' donor file until thirty-six (36) months from termination of this Agreement. In no case shall Vantage continue to conduct Donor Renewal Mailings for this paragraph after thirty-six (36) months from the date of termination. Upon the conclusion of said thirty-six (36) month period, Vantage shall have no further recourse against Shriners.

13.3 <u>Proprietary Material</u> - Proprietary material shall include without limitation selection of mailing lists, preparation and distribution of the initial direct mail package, acknowledgement of donations, and specialized mail packages that includes such premiums as name and address labels, note cards, holiday greeting cards, lapel pins, and calendars. In the event that Shriners terminates this Agreement Shriners shall not use any proprietary material that Vantage developed for Shriners, for a period of five (5) years from the date of the termination. Excluded therefrom shall be any material that is proprietary to Shriners, which was utilized by Vantage to develop its material.

13.4 <u>Bankruptcy</u> - This Agreement shall terminate immediately upon the filing by either party of any petition in bankruptcy or for reorganization or debt consolidation under the Federal Bankruptcy Laws or under any comparable law by or against either party, or upon either party's making an assignment of its assets for the benefit its creditors, or upon the application of either party for the appointment of a receivor or trustee of its assets.

Paragraph 14.   <u>General</u>

14.1 <u>Headings</u> - The headings set out in this Agreement are for the convenience of reference only and shall not be deemed a substantive part of this Agreement.

14.2 <u>Counterparts</u> - This Agreement may be executed in counterparts, all of which taken together shall constitute on Agreement

14.3 <u>Benefit</u> - This Agreement shall be binding upon and inure to the benefit of the parties signing it, their successors, and assigns. Neither party shall have the right to assign its rights or liabilities under this Agreement, in whole or in part, without prior written consent of the other party.

14.4 <u>Recitals</u> - The Recitals to this Agreement are hereby incorporated as an integral part of this Agreement.

NSG054

14.5 <u>Use of Terms</u> - Use of the terms "hereunder," "hereof," "herein," and similar terms refer to this Agreement.

14.6 <u>Waiver</u> - No failure on the part of either party to notify the other party of any noncompliance hereunder and no failure on the part of any party to exercise its rights created by such noncompliance shall prejudice any remedy for any subsequent non-compliance; any waiver by any party of any breach or non-compliance with any term or condition of this Agreement shall be limited to the particular instance and shall not operate or be deemed to waive any future breaches or noncompliance with any term or condition.

14.7 <u>Other Agreements</u> - This Agreement constitutes the entire agreement between the parties and it supersedes all negotiations, representations, warranties, commitments, offers, contracts, and writings executed prior to the Effective Date, except as otherwise provided in this Agreement. Other than those documents required to be signed during the term of this Agreement's operation, there are no other exhibits, attachments, recitals or documents that make up, supplement or otherwise enhance or limit this Agreement other than those attached hereto, and dated and signed by the parties.

14.8 <u>Severability</u> - The parties agree that each of the foregoing covenants shall be construed as independent of any other covenant in this Agreement. If all or a portion of a covenant herein contained is held to be unenforceable, the parties agree to be bound by any lesser covenant subsumed within the terms of such covenant, as if the resulting covenant were separately stated in this Agreement.

14.9 <u>Survival</u> - All covenants and agreements within this Agreement made by the parties within this Agreement, which take effect after its termination, shall survive the termination of this Agreement.

14.10 <u>Modifications</u> - All modifications to this Agreement can only be made by a writing signed and dated by both parties.

14.11 <u>Governing Law</u> - This Agreement shall be deemed to have been made in the State of Florida and shall be construed according to the laws of that state.

14.12 <u>Mediation</u> - With respect to any dispute, controversy, or claim that may arise out of or in connection with this Agreement, Shriners and Vantage agree that they shall submit

NSG055

JAN-24-02 11:48 FROM-VANTAGE GROUP SERVICES +1-6177389605 T-090 P.20/24 F-108
Case 1:04-cv-11686-WGY   Document 19-8   Filed 03/25/2005   Page 10 of 14

-18-

such disagreement to non-binding mediation by a single mediator in Florida, such mediator to be agreed to mutually by the parties. The parties shall divide the cost of the mediator equally among them.

14.13 **Relationship of Parties** - This Agreement does not constitute and shall not be construed to constitute a partnership or joint venture between Shriners and Vantage. Neither party shall have any right to obligate or bind the other party in any manner whatsoever except as authorized in this Agreement or as either party may specifically authorize the other in writing.

Paragraph 15. **Effective Date**

This Agreement shall not become effective until all exhibits, attachments and recitals mentioned in this Agreement have been appended to this Agreement and executed by the parties. Such exhibits, attachments and recitals must be consistent with this Agreement, otherwise the Agreement does not become effective.

In Witness Whereof, we have executed this Agreement on behalf of Shriners and Vantage as of the Effective Date first entered above.

Vantage Financial Services, Inc.

By: _____
Evelyn S. Edmonds
Executive Vice President and General Manager

By: _____
Lawrence C. Lyon
Senior Vice President Sales and Marketing

NSG056

STATE OF _____ )
                         ) ss.:
COUNTY OF _____ )

The foregoing instrument was acknowledged before me, the undersigned Notary Public, in and for said State, on the ____ day of _____, 19__, by _____, as _____ and _____ as _____ of Vantage Financial Services, Inc., a

JAN-24-02 11:48 FROM-VANTAGE GROUP SERVICES +1-6177389605 T-090 P.21/24 F-108
Case 1:04-cv-11686-WGY    Document 19-8    Filed 03/25/2005    Page 11 of 14

-19-

_____ corporation, for the purposes therein expressed as the act and deed of said corporation. They are personally known to me. In witness whereof I hereunto set my hand and official seal.

Notary Public _____
            Notary's Name
            Typed
My Commission Expires:

Shriners Hospitals for
Children

By: _____
    John D. VerMaas
    President

By: _____
    Gene Bracewell
    Treasurer

STATE OF FLORIDA    )
                    ) ss.:
COUNTY OF HILLSBOROUGH)

The foregoing instrument was acknowledged before me, the undersigned Notary Public, in and for said State, on the 17th day of      June      , 1999, by John D. VerMaas, as President and Gene Bracewell as    Treasurer    of Shriners Hospitals for Children, a Colorado corporation, for the purposes therein expressed as the act and deed of said corporation. They are personally known to me. In witness whereof I hereunto set my hand and official seal.

Notary Public Suzanne Walsh
             Notary's Name
             Typed
My Commission Expires:



NSG057

# Schedule A and proforma Attachment

Package Descriptions and Costs

1. Name and Address Labels - Full sheet ¾ line address with stamp section die-cut, 4 color process or PMS line copy (Black text on backer of label sheet). Includes 5 ½ x 8 ½ cover letter (folds in half), Carrier Envelope 5 ½ x 8 ½, Courtesy Reply Envelope. Package cost: $0.55 for test, $0.37 for roll-out. (Validation)

2. Cards - Holiday/All Occasion 5 x 7 cards; Notecards 6 x 4 ½. Available in a 5 or 10 pack with a 7 x 14 cover letter, Carrier Envelope 5 ¾ x 8 ½/Box, Courtesy Reply Envelopes and Banded envelopes in which to mail cards:
   Package cost: $1.25 - Note cards; $1.50 - Holiday cards

3. Calendar - 12 month, 24 page plus 4 page cover or a 32 page self cover. Presend components are used for the mailing device. Includes Carrier Envelope, Courtesy Reply Envelope, Cover letter and Reply form. The entire package is polybagged.
   Package cost: $1.35

4. Lapel Pin - cloisonne, die struck enamel based, photo domed available on various metals. (pin size ¾" - 1"). Pin is blistered onto a pin backer, includes 7 x 14 cover letter/remittance form, Carrier Envelope and Courtesy Reply Envelope.
   Package cost: $1.50

5. Decals - 3" round on a 3 ¼ x 3 ¼ square liner cut as one up and print in either PMS colors, 4 color process or combination. Prints on 3.5 mil matte clear polyolefin with permanent adhesive. Includes 7 x 14 Cover letter/remittance form, Carrier Envelope and Courtesy Reply Envelope.
   Package cost: $0.25

6. Thank You - 7 x 7 personalized double buckslip (folds in half). Includes Carrier Envelope and Courtesy Reply Envelope. Package cost: $0.15

7. Reminder - 7 x 3 ½ personalized remittance slip, includes 5 ½ x 8 ½ cover letter (folds in thirds), Carrier Envelope and Courtesy Reply Envelope. All Donor Mailings include two Reminder notices. Package cost: $0.09

8. Heart Package - 7 x 7 Double Buckslip, with peel and stick label on top panel, bottom panel is personalized copy. Includes, 4 ½ x 7 Double Window Carrier (label shows through top window). Courtesy reply envelope.
   Package cost: $0.40

9. Special Appeal - 8 ½ x 14 personalized letter/remittance form, includes, a #10 Window Carrier, and #9 Reply Envelope. Package cost: $0.20

NSG058

## TEMPLATE - ACQUISITION AND DONOR PROGRAM (PROFORMA)

| Assumptions | Price Test | QTY | QTY | Response | | Ave Gift |
|---|---|---|---|---|---|---|
| Acquisition Labels | $0.37 | 1,000,000 | 500,000 | 2.50% | | $13.20 |
| Note Cards - 5 pack | $1.25 | | | 25.00% | Donor | $15.00 |
| Holiday Cards - 10 pack | $1.50 | | | 25.00% | Donor | $15.00 |
| Pins | $1.50 | | | 20.00% | Donor | $18.00 |
| Calendar | $1.35 | | | 25.00% | Donor | $18.00 |
| Labels | $0.57 | | | 25.00% | Donor | $15.00 |
| Thank You/Ack/Appeals | $0.15 | | | 5.00% | Donor | $12.00 |
| Special Appeal | $0.20 | | | 9.00% | Donor | $15.00 |
| Decal | $0.25 | | | 8.00% | Donor | $18.00 |
| Reminders on Labels | $0.09 | | | | | $15.00 |
| Heart Package | $0.40 | | | 2.50% | | $15.00 |
| Postage (non profit rates) | $0.090 ( labels, 5 Card Pack, acquisition) | | | | | |
| Postage (non profit rates) | $0.170 (calendars, 10 card pack, pins) | | | | | |
| Postage (first class rates) | $0.330 | | | | | |
| Postage (bulk mail) | $0.185 (Thank You/Acknowledgments)(less than 15,000 pieces) | | | | | |
| List Acquisition Fee | $0.080 | | | | | |

shriner hospitals proforma xls

NSG059

Ir25v01

| Mailing | Qty | Product | Donors | Donations | Product Cost | Postage List Cost | In Mail Cost | Total Cost | Current Program Results $$ | Cumulative Program Results $$ | Per Donor |
|---|---|---|---|---|---|---|---|---|---|---|---|
| **YR ONE** | | | | | | | | | | | |
| 7/1/99 | 100,000 | Acquisition Test - Labels | 2,500 | 90,000 | 0.25 | 0.170 | 0.72 | 72,000 | (42,000) | (42,000) | |
| 7/1/99 | 100,000 | Acquisition Test - Heart Pkg | 2,500 | 37,500 | 0.40 | 0.170 | 0.57 | 57,000 | (19,500) | (61,500) | |
| 9/1/99 | 1,000,000 | Label Validation | 10,000 | 360,000 | 0.17 | 0.170 | 0.54 | 540,000 | (180,000) | (241,500) | |
| 11/1/99 | 35,000 | Thank You/Acknowledgment | 1,750 | 8,400 | 0.17 | 0.070 | 0.24 | 8,400 | 0 | (241,500) | |
| 12/28/99 | 5,000,000 | Acquisition Labels | 150,000 | 1,980,000 | 0.15 | 0.080 | 0.54 | 2,700,000 | (720,000) | (961,500) | |
| 3/1/500 | 150,000 | Thank You/Acknowledgement | 7,500 | 90,000 | 0.15 | 0.170 | 0.24 | 36,000 | 54,000 | (907,500) | |
| 4/1/00 | 5,000,000 | Acquisition Labels | 150,000 | 1,980,000 | 0.15 | 0.080 | 0.54 | 2,700,000 | (720,000) | (1,627,500) | |
| 4/15/00 | 185,000 | Spring Note Cards/Donors (5 cds) | 46,250 | 693,750 | 0.37 | 0.170 | 1.52 | 281,200 | 412,550 | (1,214,950) | |
| 5/15/00 | 150,000 | Thank You/Acknowledgment | 7,500 | 90,000 | 0.15 | 0.090 | 0.24 | 36,000 | 54,000 | (1,160,950) | |
| **YR TWO** | | | | | | | | | | | |
| 8/1/00 | 335,000 | Holiday Labels (Donors) | 83,750 | 1,256,250 | 0.82 | 0.270 | 0.82 | 274,700 | 981,550 | (179,400) | |
| 8/30/00 | 5,000,000 | Acquisition Labels | 150,000 | 1,980,000 | 0.15 | 0.080 | 0.54 | 2,700,000 | (720,000) | (899,400) | |
| 9/15/00 | 135,000 | Holiday Cards (10 cd pak)(Donors) | 81,750 | 1,251,250 | 0.57 | 0.170 | 1.85 | 249,750 | 994,250 | 94,850 | |
| 10/1/00 | 150,000 | Holiday Cards (10 cd pak)(Donors) | 37,500 | 562,500 | 1.50 | 0.350 | 1.85 | 285,000 | 645,000 | 739,850 | |
| 11/1/00 | 45,000 | Special Appeal (Donors) | 42,650 | 140,650 | 0.17 | 0.170 | 0.29 | 12,600 | 128,050 | 867,900 | |
| 12/28/00 | 485,000 | Annual Fund Decal (Donors) | 38,800 | 582,000 | 0.25 | 0.090 | 0.34 | 164,900 | 417,100 | 1,285,000 | |
| 2/15/00 | 485,000 | Annual Fund Decal (Donors) | 121,250 | 1,818,750 | 0.55 | 0.210 | 0.82 | 397,700 | 1,421,050 | 2,706,050 | |
| 4/1/01 | 150,000 | Thank You/Acknowledgment | 7,500 | 90,000 | 0.15 | 0.090 | 0.24 | 36,000 | 54,000 | 2,760,050 | |
| **YR THREE** | | | | | | | | | | | |
| 7/1/01 | 485,000 | All Occasion Cards (10 cds)(Donors) | 121,250 | 1,818,750 | 0.35 | 0.350 | 1.85 | 897,250 | 921,500 | 3,439,400 | |
| 8/30/01 | 485,000 | Holiday Calendars (Donors) | 121,250 | 1,818,750 | 0.35 | 0.350 | 1.70 | 824,500 | 994,250 | 4,433,650 | |
| 9/15/01 | 485,000 | Thank You/Acknowledgment | 48,500 | 485,700 | 0.17 | 0.090 | 0.24 | 36,000 | 54,000 | 4,487,650 | |
| 11/1/01 | 485,000 | Special Appeal (Donors) | 150,000 | 1,980,000 | 0.15 | 0.170 | 0.54 | 2,700,000 | (720,000) | 3,767,650 | |
| 12/28/01 | 5,000,000 | Acquisition Labels | 150,000 | 90,000 | 0.15 | 0.090 | 0.24 | 36,000 | 54,000 | 3,821,650 | |
| 2/15/02 | 485,000 | Thank You/Acknowledgment | 7,500 | 90,000 | 0.15 | 0.170 | 1.85 | 897,250 | 846,750 | 4,668,400 | |
| 2/15/02 | 485,000 | Pins (Donors) | 97,000 | 1,746,000 | 0.35 | 0.170 | 1.85 | 215,900 | 546,100 | 5,214,500 | |
| 5/15/02 | 635,000 | Annual Fund (Decal) | 50,800 | 762,000 | 0.25 | 0.090 | 0.34 | 215,900 | 546,100 | 5,807,550 | |
| **YR FOUR** | | | | | | | | | | | |
| 8/15/02 | 5,000,000 | Acquisition Labels | 150,000 | 1,980,000 | 0.17 | 0.090 | 0.54 | 2,700,000 | (720,000) | 5,087,550 | |
| 8/30/02 | 635,000 | Holiday Cards (10 cd pak)(Donors) | 158,750 | 2,381,250 | 1.50 | 0.090 | 1.85 | 1,174,750 | 1,206,500 | 6,294,050 | |
| 10/15/02 | 150,000 | Thank You/Acknowledgement | 7,500 | 90,000 | 0.15 | 0.200 | 0.24 | 36,000 | 54,000 | 6,348,050 | |
| 12/28/02 | 785,000 | Special Appeal (Donors) | 70,650 | 1,271,700 | 0.20 | 0.090 | 0.29 | 227,650 | 1,044,050 | 7,392,100 | |
| 12/28/02 | 5,000,000 | Acquisition Labels | 196,250 | 1,960,000 | 0.17 | 0.090 | 0.54 | 2,700,000 | (720,000) | 4,672,100 | |
| 3/1/03 | 785,000 | Thank You (Donors) | 150,000 | 2,942,750 | 0.17 | 0.170 | 0.87 | 643,200 | 2,300,050 | 6,972,150 | |
| 3/1/03 | 150,000 | Thank You (Donors) | 7,500 | 90,000 | 0.15 | 0.090 | 0.24 | 36,000 | 54,000 | 9,026,150 | |
| 6/1/03 | 935,000 | Annual Fund Prem Pkg (Donors) | 74,800 | 1,122,000 | 0.25 | 0.090 | 0.34 | 317,900 | 804,100 | 9,830,250 | |
| 9/1/03 | 935,000 | Holiday Cards (10 cd pak)(Donors) | 233,750 | 3,506,250 | 1.50 | 0.150 | 1.85 | 1,729,750 | 1,776,500 | 11,606,750 | |
| 10/31/03 | 935,000 | Calendars (Donors) | 233,750 | 3,506,250 | 1.35 | 0.150 | 1.70 | 1,589,500 | 1,916,750 | 13,523,500 | |
| **TOTAL** | | | | 27,872,600 | | | | 13,523,500 | | | |

Unique Donors to date: 335,000 (YR ONE)
Unique Donors to date: 485,000 (YR TWO)
Unique Donors to date: 815,000 (YR THREE)
Unique Donors to date: 915,000 (YR FOUR)

NSG060