UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Vantage Financial Services, Inc. <br>                    Plaintiff <br><br> v. <br><br> Nonprofit Service Group, Inc. and George E. Miller <br>                    Defendant | CIVIL ACTION NO. 04-11686WGY |

AFFIDAVIT OF RICHARD L. NAHIGIAN

I, Richard L. Nahigian, hereby depose and state as follows:

1.      My name is Richard L. Nahigian.  I am a member of the bar of this court and represent the defendants Nonprofit Service Group, Inc. and George E. Miller in this case.  I submit this affidavit in support of defendants' Motion to Compel Discovery, and for Extension of Time to Complete Discovery.

2.      Attached hereto as Exhibit "A" is a true and accurate copy of an email dated November 5, 2004 from Laurence Johnson, Esq., plaintiff's counsel, to me.

3.      On or about December 3, 2004, the defendants served a document request and interrogatories on plaintiff, Vantage Financial Services, Inc. ("Vantage") as well as notices of deposition for Lawrence Lyon and Harry Melikian.  Just days before the depositions were scheduled to go forward on January 20 and 21, 2005, counsel for Vantage contacted me and requested that the depositions be postponed.  At that time, Vantage's counsel stated that he would propose alternative dates.

4.      On February 8, 2005, defendants served a deposition notice under Fed.R.Civ.P.

30(b)(6) on Vantage, scheduling the deposition for February 17, 2005.  On February 14, 2005, I

contacted Vantage's counsel to discuss the Rule 30(b)(6) deposition.  At that time and no earlier,

Vantage's counsel stated that he was not available for a deposition on February 17th, and that he

was starting a bench trial on February 15th, 2005.

5.      Although Vantage's counsel stated during the telephone call that he would contact

defense counsel on February 16, 2005 to discuss scheduling the depositions noticed by the

defendants, as well as other discovery-related matters, I did not receive any such call from

Vantage's counsel.

6.      As a result, I contacted Vantage's counsel on the afternoon of February 16, 2005.

At that time, I was told that Vantage had not yet designated a rule 30(b)(6) witness, and that

Vantage's counsel would be contacting me the following week to discuss the Rule 30(b)(6)

deposition.  During that same conversation, Vantage's counsel indicated that he would be

traveling out of state on February 17th on a personal commitment, and that Vantage would be

responding to the outstanding written discovery requests in the near future.  In view of these

representations, defendants extended the courtesy of continued forbearance from discovery-

related motion practice.

7.      Following the February 16, 2005 telephone call, I heard nothing further from

Vantage until I contacted Vantage's counsel on February 24, 2003.  At that time, I was advised

that Vantage still had not designated a Rule 30(b)(6) witness, and that Vantage's counsel had

"mislaid" the defendant's written discovery requests, which had been served almost three months

earlier.  During that telephone call, I again raised the need to settle on dates for the already-

noticed depositions. Vantage's counsel responded that he would contact me early the following

week to discuss the depositions.

8.      On that same day, I wrote to Vantage's counsel and indicated that although

defendants would prefer to avoid filing motions to compel, they would do so if it became

necessary. A true and accurate copy of that letter, dated February 24, 2005, is attached hereto as

Exhibit "B."

9.      The next time I heard from Vantage's counsel was on March 2, 2005, at which

time Vantage's counsel informed me that he would be leaving that week for a vacation. During

that telephone call, Vantage's counsel again promised that written discovery responses would be

served early the following week.

10.      On March 21, 2005, the parties participated in a local Rule 37.1(A) meet and

confer at the offices of Vantage's counsel beginning at 11:00 a.m. Despite a nearly two-hour

discussion, the parties were unable to resolve their differences with respect to many key areas of

discovery. For example, Vantage's counsel could not state with any certainty when Vantage

would finally serve answers to defendants' interrogatories. It was also made clear that Vantage

would not agree to produce any financial documentation relating to the Shriner's contract, any

documents concerning the *qui tam* action and any documents that would provide actual support

for Vantage's damages claims related to its attorney's fees in the *qui tam* action.

11.      During the March 21st meeting, Vantage's counsel did purport to agree to contact

his client that day to determine when it would be producing whatever documents it would agree

to turn over to defendants and to determine availability and other logistics with respect to the

previously noticed depositions. Although Vantage's counsel stated that he would call

defendant's counsel by the end of the day, regardless of whether he was able to discuss these

issues with his client or not, I did not receive any such telephone call on the end of the day on

March 21, 2005.

12.    I subsequently did speak to Vantage's counsel on March 23, 2005.  At that time,

the parties were unable to resolve the outstanding discovery issues.  As of the March 23

conversation, Vantage still could not advise defendants of any date certain for the production of

documents that it had agreed to produce.  Nor did Vantage indicate when it would be responding

to the outstanding interrogatories.

Signed under the pains and penalties of perjury this 25th day of March, 2005.


/s/ Richard L. Nahigian
Richard L. Nahigian


610830_1