UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

VANTAGE FINANCIAL SERVICES, INC.
Plaintiff,

v.

NONPROFIT SERVICE GROUP AND
GEORGE E. MILLER,
Defendants.

C.A. No. 04-11686-WGY

**OPPOSITION TO DEFENDANTS' MOTION TO COMPEL DISCOVERY**

INTRODUCTION

The plaintiff, Vantage Financial Services, Inc. ("Vantage"), hereby opposes the Motion to

Compel Discovery and for Extension of the Time to Complete Discovery ("Defendants' Motion")

filed by the defendants, Nonprofit Service Group ("NSG") and George E. Miller ("Miller")

(collectively "Defendants") on the grounds that (i) Defendants have not met their Local Rule

37.1 obligations and therefore prematurely filed the present motion; (ii) Vantage has agreed to

produce the vast majority of the documents that are at issue in Defendants' Motion; and (iii) the

remaining documents sought by Defendants are subject to valid objections.

FACTUAL BACKGROUND

Vantage engages in the business of assisting non-profit organizations (hereinafter

"NPOs") in fundraising and membership solicitation. (Complaint, ¶ 7.)  During and prior to

1999, Vantage and two members of its senior management were defendants in a civil action in

the United States District Court for the District of Massachusetts (the "Action"), pursuant to the

provisions of the Federal False Claims Act, in which recovery was sought for alleged postal

deficiencies, penalties and exemplary damages claimed to be due as a result of fundraising

mailings made by Vantage for various of its NPO customers at not-for-profit postal rates.

(Complaint, ¶ 8.)  It was further alleged in the Action that such mailings were not eligible for

mailing at not-for-profit postal rates because Vantage's contracts with such NPO customers

either limited the NPO customer's liability to pay Vantage for its services and out-of-pocket

costs or restricted the means by which Vantage could obtain payment for same in the event of a

shortfall in the funds raised by the solicitation mailings and that, as a result, the mailing of such

solicitations at not-for-profit postage rates was proscribed by the CMR.  (Complaint, ¶ 8.)

　　　While the Action was pending, Vantage consulted Defendants and sought their

assistance, professional services and legal counsel with respect to a substantial fundraising

services contract that Vantage was then negotiating with Shriners, a large nonprofit corporation.

(Complaint, ¶ 10.)  It was anticipated by Vantage that any fundraising services contract with

Shriners would involve repeated and substantial mailings on behalf of Shriners requiring the

payment of several million dollars in postage even at not-for-profit postal rates.  (Complaint, ¶

10.)  While Shriners wanted to be able to mail its fundraising mailings at not-for-profit postal

rates, Shriners had nonetheless demanded, during the course of the negotiations, that any

fundraising services contract with Vantage include terms that limited its liability to pay Vantage

for its fundraising services and out-of-pocket expenses from Shriners' cash assets in the event

that the fundraising programs failed to raise sufficient amounts to pay out of the fundraising

proceeds.  (Complaint, ¶ 11.)[1]

---

[1] In their Brief, p. 6, Defendants mischaracterize the allegations contained in paragraph 11 of the Complaint.
Contrary to Defendants' characterizations, Vantage did not allege that the provisions of the Shriners Contract that
violated the CMR were "prerequisites" to doing business with Shriners.  To the contrary, it is alleged that such
provision had only to "limit" Shriners liability.  The conclusion that Defendants would have the Court reach from
this statement, i.e. that Vantage could not have done any business with Shriners except pursuant to the exposure
creating provisions suggested by Defendants, is this wholly unwarranted.  There is no reason to suppose that
provisions consistent with the Postal Service's interpretation of the CMR, but that still addressed Shriners' concerns,
could not have been prepared.  Such provisions would have relieved Vantage, the choice that Defendants

In light of the claims pursued by the United States in the Action, Vantage employed Defendants to prepare a contract that would satisfy the desire of Shriners for protection against having to pay for Vantage's fundraising services out of Shriners' own cash assets, while at the same time containing provisions that would not violate the CMR, compromise the ability of Shriners to mail its fundraising materials at not-for-profit rates or expose Vantage to additional claims or potential liability such as that then being asserted against it in the Action. (Complaint, ¶¶ 12-13.)

Vantage expressly informed Defendants of the pendency of the Action and of the claims being asserted and positions being taken by the United States therein. (Complaint, ¶ 14.) Vantage emphasized to Defendants that it wanted to be sure that any terms in the contract with Shriners limiting the liability of Shriners or restricting the manner or means by which Vantage would have a right to enforce payment for its services and expenses incurred on behalf of Shriners must be consistent with the requirements of the CMR and must effectively protect Vantage from any further claims of the kind being asserted in the Action, based upon mailings made by Vantage on behalf of Shriners. (Complaint, ¶ 14.) Vantage also requested that Defendant advise it if they concluded that it was not possible to prepare contract provisions that would both satisfy Shriners and protect Vantage from potential liability for violation of the CMR or additional claims against it in the Action. (Complaint, ¶ 14.)

Pursuant to the Engagement, Defendants prepared a fundraising services agreement between Vantage and Shriners (the "Shriners Contract"). (Complaint, ¶ 15 and the Shriners Contract attached thereto as Exhibit A.) The Shriners Contract prepared by Defendants provided, in relevant part, that Shriners would have the option of paying Vantage's then unpaid

---

unjustifiably assume was unavoidable, namely incurring hugh additional exposure in the Qui Tam case or foregoing the Shriners business.

charges at the time of any termination of the Shriners Contract by Shriners either (1) directly in cash or (2) by permitting Vantage to rent or use for the benefit of Vantage's other customers Shriners' donor list file and to use the amounts paid by such other customers for the use of the Shriners donor list file to satisfy any outstanding amounts owed by Shriners to Vantage. (Complaint, ¶ 16.)

Defendants advised Vantage that the above-described provisions would be effective to avoid any violation of the CMR and protect Vantage from possible claims with respect to mailings at not-for-profit postal rates made pursuant to the Shriners Contract and from any exposure to additional liability on claims such as those being asserted in the Action. (Complaint, ¶ 17.)  In reliance upon Defendants' advice, Vantage entered into the Shriners Contract with Shriners and thereafter proceeded to render substantial services and make extremely voluminous mailings on behalf of Shriners at not-for-profit postal rates. (Complaint, ¶ 18.)

When the United States learned, through discovery, of the Shriners Contract and the mailings on behalf of Shriners made pursuant thereto, it promptly amended its Complaint in the Action to add claims with respect to all mailings made by Vantage on behalf of Shriners pursuant to the Shriners Contract (the "Shriners Mailings").  The effect of such amendment was to increase the amount of the United States' claims by approximately $3,000,000 in compensatory damages and for an additional $6,000,000 in exemplary or punitive damages, thus approximately doubling the amount of the claims asserted against Vantage in the Action. (Complaint, ¶ 19.)

At that point, Vantage was faced with the choice between settling all the remaining claims of the United States or going to trial on all such claims, involving exposure to a judgment of more than twelve million ($12,000,000) dollars before assessment of interest.  After protracted and vigorous negotiations with the United States, Vantage entered into an agreement to settle the

United States' claims (the "Settlement Agreement") for four million five hundred thousand ($4,500,000) dollars. (Complaint, ¶ 25.) Approximately one half of this amount, or almost two million two hundred fifty thousand ($2,250,000) dollars, was agreed to by Vantage in order to resolve its potential liability with respect to the Shriners mailings. (Complaint, ¶ 25.)

### PROCEDURAL BACKGROUND

Defendants served their initial documents requests and interrogatories on or about December 3, 2004 and they also noticed two depositions at about that time. What Defendants have not disclosed to the Court is that they did so without having served their Initial Disclosures pursuant to Rule 26(a)(1), Fed. R. Civ. P. As a result, Defendants' initiation of such discovery without having served their initial disclosures violated L.R. 26.2(A) of the Local Rules of this Court which forbids the initiation of discovery by a party until it has served its initial disclosures. Vantage's counsel notified Defendants' counsel of their failure to comply with L.R. 26.2(A) in early January, 2005. Despite this, Defendants did not serve their initial disclosures until on or about January 20, 2005. (Affidavit of Laurence M. Johnson, hereinafter "Johnson Aff.," ¶ 3.) Rather than considering such purported discovery a nullity and requiring Defendants to serve it following their belated service of their initial disclosures, Vantage's counsel, in an effort to be cooperative, simply indicated that they would consider such discovery as having been served simultaneously with Defendant's initial disclosures.

Vantage's time to respond to Defendants' discovery therefore did not begin to run until the service of the initial disclosures on January 20, 2005. Vantages' response to Defendants' First and Second Requests for Production of Documents was served on March 7, 2005. The alleged "three month game of delay" claimed by Defendants (Brief, p. 2) is thus fanciful since most of the delay resulted from Defendants' own disregard of the Local Rules of this Court. (Johnson

Aff., ¶ 4.) The remainder of the delay in responding to Defendants' documents requests, some

seventeen days, was occasioned by Vantage counsel's trial commitments and by the fact that

Vantage's counsel suffered a fractured vertebra on or about February 5, 2005. Vantage's counsel

had so informed Defendants' counsel on February 14 and had, as well, informed him that

Vantage's counsel had been unexpectedly ordered to trial on February 15 in a Probate Court

matter that he had just come into as successor counsel. (Johnson Aff., ¶ 4.) Vantage's counsel

nonetheless kept Defendants' counsel informed by telephone as to the progress of work on

responses to both the documents requests and interrogatories and endeavored to cooperate with

him with respect to the scheduling of depositions. (*Id.*)

The parties held a Rule 37.1 discovery conference on March 21, 2005. Nevertheless,

Defendants filed the present motion without first complying with the requirements of Local Rule

37.1. As is set forth below, Defendants (Br. p. 10) have materially misstated the results of that

conference. Contrary to Defendants' claim, Vantage substantially modified its positions with

respect to permitting discovery of substantial portions of Defendants' documents requests during

the discovery conference of March 21 so that there was no need whatsoever, with respect to

those issues, for the filing of the instant motion.

ARGUMENT

A.    Vantage Should Not Be Ordered To Produce Any Of The Requested Documents Because
      Those Documents Are Already Being Voluntarily Produced Or Lack Relevance To Any
      Of The Claims In This Case

1.    Financial Records Relating To The Shriners Fundraising Program

As an initial matter, Defendants dispute the propriety of the assertion of the general

objections set forth in Vantage's response to Defendants' Request for Production of Documents.

However, they have failed to disclose what Plaintiff's counsel proposed, and they have failed to

respond to, a resolution to this issue. During the Rule 37.1 conference Vantage's counsel pointed

out that both parties had interposed general objections to each other's documents requests and that their responses to the specific requests had been stated to be "subject to" such general objections. (Johnson Aff., ¶ 6(v).)   Vantage's counsel expressly indicated that both sides had a similar interest in having a clear record as to whether, where a specific response indicated that documents would be produced "subject to" one or more general objections, all documents responsive to the request were, in fact, being produced except as limited by documents withheld but identified on a privilege log. (*Id.*)   Vantage's counsel suggested that the parties enter into a reciprocal stipulation to that effect.   Defendants' counsel indicated that he would consider that suggestion but has never further responded to it. (*Id.*)

Defendants (Br. p. 10) have also materially misstated the results of the Rule 37.1 conference regarding documents relating to financial results of the Shriners Program.   During the conference Vantage's counsel pointed out that Defendants' claim as to the relevance of such documentation appeared to be predicated on the assumption that Vantage and Shriners would not have entered into any contract had Defendants advised them of their potential exposure to additional revenue deficiency claims by the Post Office if the language prepared by Defendants was employed. (Johnson Aff., ¶ 6(i).)   Vantage's counsel further pointed out that neither party had so alleged and that Vantage's counsel was aware of nothing that suggested that a provision could not have been found that would have satisfied the concerns of Shriners without exposing Vantage to liability. (*Id.*)   Nonetheless, Vantage's counsel acknowledged that if evidence was forthcoming to suggest that Vantage would have had to entirely forego doing business with Shriners in order to avoid exposure to additional claims, the financial results of the Shriners Contract might then become relevant and that, in light of that possibility, Vantage was prepared to reconsider its position with respect to producing such documentation. (*Id.*)   There was no

"blanket refusal" (Br. p. 9) to provide such documentation. On the contrary, Vantage's counsel expressly indicated that Vantage was prepared to reconsider its position in that regard. (*Id.*) Thereafter, on March 23, 2005, Vantage's counsel spoke further with Defendants' counsel and reiterated this position and intimated that Vantage was leaning in the direction of acceding to this request. (*Id.*) Although Vantage's counsel told Defendants' counsel that he thought that, with respect to this issue, it was premature for him to file a motion, Defendants' counsel indicated that he had decided to do so anyway, and without waiting to see whether Vantage would produce such information voluntarily. (*Id.*) This decision by Defendant's counsel is inconsistent with his Rule 37.1 obligations and plainly indicates a preference for manufacturing a discovery disputes over resolving them.

2.    Documents Concerning The Qui Tam Action and Other Vantage Contracts

With respect to documents filed in the Qui Tam action, Vantage's counsel expressly told Defendants' counsel at the discovery conference on March 21 that Vantage was willing to produce any documents relating, either in whole or in part, to the claims against Shriners. (Johnson Aff., ¶ 6(ii).) Defendants' counsel indicated that he wanted to see all of the documents in the case, but did not indicate any basis upon which documents relating solely to claims with respect to other non-profits (and which have not resulted in any claim against the present Defendants) were relevant. Even though Defendants' counsel had failed to present any argument for the relevance of such documents, Vantage's counsel told Defendants' counsel that since all of the pleadings were in a single set of pleadings files, and were also matters of public record in the files of this Court, Vantage was not inclined to make an issue of it and that Vantage would retrieve the pleadings files from storage. (*Id.*)

3.    Meeting Minutes

Defendants have not established that the meeting minutes requested in Document Request No. 29 bear any relevance to the claims or defenses asserted in this case. Although the scope of discovery is broad, discoverable material must not be privileged, must be relevant to the subject matter of the pending action and must be reasonably calculated to lead to the discovery of admissible evidence. Mass. R. Civ. P. 26(b)(1). "While the standard of relevancy is a liberal one, it is not so liberal as to allow a party 'to roam in shadow zones of relevancy and to explore matter which does not presently appear germane on the theory that it might conceivably become so.'" *In Re Fontaine*, 402 F. Supp. 1219, 1221 (1975), *citing Broadway & Ninety Sixth St. Realty Co. v. Lowe's, Inc.*, 21 F.R.D. 347, 352 (S.D.N.Y. 1958).

In the present case, Defendants have requested that Vantage produce "[a]ny minutes of company meetings concerning Vantage created from January 1, 1999 to present." (Defendants' Brief, p. 17.) For any document to fall within the boundaries of relevance in this case, it must, as a starting point, relate to the advice given by Defendants to Vantage in connection with the Shriners Contract. At the Rule 37.1 conference, Vantage suggested that Defendants limited their request to the Shriners Contract and the Qui Tam action. As is set forth in their brief, Defendants refused to limit the scope of its request on the ground that "Vantage cannot be relied upon to make the necessary distinctions and redactions." (Brief, p. 17.) Defendants have no basis for believing that Vantage would violate its discovery obligations and have cited no authority for the proposition that a party's mere unsupported and self-serving distrust of another party is a basis for allowing the discovery of irrelevant material. Defendants request for all Vantage minutes is overly broad and should be denied.

4.   Documentation of Legal Fees Attributable to the Shriners Claim

Again, Defendants' efforts to compel the production of documents related to Vantage's defense costs in the Qui Tam action is difficult to understand given the results of the Rule 37.1 and counsels' subsequent telephone conversations.  During the conference, Defendants' counsel indicated that he wanted to see all bills rendered to Vantage by all of the various attorneys that had represented it in the underlying action.  (Johnson Aff., ¶ 6(iii)).  With respect to these requests, the only issue raised by Vantage was that, because the bills contained very detailed chronological summaries of counsel's activities, (including communications with their client), Vantage's counsel believed that redaction of attorney-client privileged materials would be appropriate and necessary.  (*Id.*)  Vantage's counsel indicated that Vantage would review the bills in order to redact any privileged material prior to production.

Immediately following the discovery conference, Vantage's counsel caused a review of the bills and prepared copies, redacting any privileged materials.  During a telephone conversation between counsel on March 23, 2005, Vantage's counsel reiterated his position to Defendants' counsel.  Neither Defendants' brief in support of the present Motion nor Defendants' counsel's accompanying affidavit (See Nahigian Affidavit, ¶ 12) makes any mention of same.  (*Id.*)  Defendants' representations to the Court are clearly inconsistent with Vantage's position with respect to this category of documents, as well as with what transpired between counsel during the Rule 37.1 conference and subsequent telephone conversations.

B.   Vantage Has Served Its Answers To Interrogatories

With respect to answers to Interrogatories, during the discovery conference, Vantage's counsel informed Defendants' counsel that the answers to interrogatories had been prepared and were being reviewed by the appropriate personnel at Vantage.  (Johnson Aff., ¶ 6(iv).)  Vantage's

counsel told Defendants' counsel that Vantage would serve them as soon as they had been approved and executed. This was confirmed between counsel during their telephone conversation on March 23, at which time Vantage's counsel again assured Defendants' counsel that no motion would be necessary in order for Defendants to obtain responses to their interrogatories. While that execution of the answers was briefly delayed because of the travel schedules of Vantage personnel, the answers to interrogatories have now been executed and served on Defendants. (*Id.*)

C.    Upon Denial Of The Present Motion, The Court Should Sanction Defendants

Defendants should be ordered to pay Vantages costs associated with opposing the present motion. Fed. R. Civ. P. 37(a)(4)(B) provides that

> If the motion is denied, the court . . . shall, after affording an opportunity to be heard, require the moving party or the attorney filing the motion or both of them to pay to the party or deponent who opposed the motion the reasonable expenses incurred in opposing the motion, including attorney's fees, unless the court finds that the making of the motion was substantially justified or that other circumstances make an award of expenses unjust.

In the present case, as is detailed above, the filing of the present motion was not justified and clearly premature, given the results of the Rule 37.1 conference and counsels' subsequent telephone conversations. Vantage had substantively modified its position with respect to production of most of the documents as to which Defendants had continued to press for production. Vantage made reasonable requests that Defendants limit the scope of other discovery requests to relevant material, which requests have been ignored by Defendants. Rather than cooperate in the discovery process as required by Local Rule 37.1, Defendants rushed to this Court for purposes of creating a discovery dispute where none existed.

## CONCLUSION

For the foregoing reasons, Vantage respectfully requests that the Court (i) deny

Defendants' present motion; (ii) grant a 90 day extensions for the completion of discovery; and

(iii) award Vantage the costs of preparing the present opposition due to Defendants' failure to

comply with Local Rule 37.1.


**VANTAGE FINANCIAL SERVICES, INC.,**
By its Attorneys,


Laurence M. Johnson (BBO #252720)
Neal J. Bingham (BBO #652029)
Davis, Malm & D'Agostine
One Boston Place
Boston, MA 02108
(617) 367-2500

Dated: April 8, 2005