UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| VANTAGE FINANCIAL SERVICES, INC.<br>Plaintiff,<br><br>v.<br><br>NONPROFIT SERVICE GROUP AND<br>GEORGE E. MILLER,<br>Defendants. | C.A. No. 04-11686-WGY |

## AFFIDAVIT OF LAURENCE M. JOHNSON

Laurence M. Johnson, hereby deposes and states as follows:

1. My name is Laurence M. Johnson. I am a member of the bar of this Court and am principal counsel for the Plaintiff, Vantage Financial Services, Inc. in the above-entitled matter. I submit this affidavit, with respect to matters within my own personal knowledge, in opposition to defendants' Motion to Compel Discovery.

2. It is true that Defendants served their initial documents requests and interrogatories on or about December 3, 2004 and that they also noticed two depositions at about that time. What Defendants have not disclosed to the Court is that they did so without having served their Initial Disclosures pursuant to Rule 26(a)(1), F.R.Civ.p. As a result, Defendants' initiation of such discovery without having served their initial disclosures violated L.R. 26.2(A) of the Local Rules of this Court which forbids the initiation of discovery by a party until it has served its initial disclosures.

3. I notified defendants' counsel of their failure to comply with L.R. 26.2(A) in early January, 2005. Despite this, Defendants did not serve their initial disclosures until on or about January 20, 2005.

4. Assuming that the improper service Defendants' initial documents requests and interrogatories could be subsequently validated by the service, some seven weeks later, of their initial disclosures, Plaintiff's time to respond thereto could not have begun to run until the service of such initial disclosures on January 20, 2005. Plaintiffs' responses to Defendants' First and Second Requests for Production of Documents was served on March 7, 2005. The delay of "three month game of delay" claimed by Defendants (Brief, p. 2) is thus fanciful since most of the delay resulted from Defendants' own disregard of the Local Rules of this Court.

5. The remainder of the delay in responding to Defendants' documents requests, some seventeen days, was occasioned by counsel's trial commitments and by the fact that undersigned counsel suffered a fractured vertebra on of about February 5, 2005. Exhibit "B" to Mr. Nahigian's affidavit I had so informed him on February 14 and had, as well, informed him that I had been unexpectedly ordered to trial on February 15 in a Probate Court matter that I had just come into as successor counsel. I nonetheless kept defendant's counsel informed by telephone as to the progress of work on responses to both the documents requests and interrogatories and endeavored to cooperate with him with respect to the scheduling of depositions. My time records show that I initiated telephone calls to Defendants' counsel for those purposes on January 11, 19, February 14, March 2 and 22 (calls both to and from Mr. Nahigian), 2005. In addition, I initiated a call to his associate, Mr. Griffin from California, where I then was, on March 4 and received spoke with Mr. Nahigian during calls that he intitiated on February 16, 24 and March 18 and 23.

6. Defendants have also failed to comply with the requirements of L.R. 37.1 prior to filing this motion. The parties held a Rule 37.1 discovery conference on March 21, 2005. However, Defendants (Br. p. 10) have materially misstated the results of that

-2-

conference. On the contrary, as confirmed by the memories and notes of the discovery conference of both I and my associate, Attorney Neal Bingham, who was also in attendance, I took the following positions during the course of the discovery conference with respect to each of the issues discussed:

(i) <u>With respect to documents concerning the financial results of the Shriners Contract:</u> During the conference I pointed out that Defendants' claim as to the relevance of such documentation appeared to be predicated on the assumption that Vantage and Shriners would not have entered into <u>any</u> contract had Defendants advised them of their potential exposure to additional revenue deficiency claims by the Post Office if the language prepared by Defendants was employed. I pointed out that neither party had so alleged and that I was aware of nothing that suggested that a provision could not have been found that would have satisfied the concerns of Shriners without exposing Vantage to liability. Nonetheless, I acknowledged that <u>if</u> evidence was forthcoming to suggest that Vantage would have had to entirely forego doing business with Shriners in order to avoid exposure to additional claims, the financial results of the Shriners Contract might then become relevant and that, in light of that possibility, I was prepared to reconsider Vantage's position with respect to producing such documentation. Not only was there no "blanket refusal" (Br. p. 9) to provide such documentation; I expressly indicated that Vantage was prepared to reconsider its position in that regard. When I spoke further with Defendants' counsel on March 23, I reiterated this position and intimated that I was leaning in the direction of acceding to this request. I told Mr. Nahigian that I thought that, with respect to this issue, it was premature for him to file a motion, but he indicated that he had decided to do so anyway, and without waiting to see whether we would produce such information voluntarily.

(ii) <u>With respect to documents filed in the *Qui Tam* action</u>: I expressly told Mr. Nahigian at the discovery conference on March 21 that Vantage was willing to produce any documents relating, either in whole or in part, to the claims against Shriners. He indicated that he wanted to see all of the documents in the case, but did not indicate any basis upon which documents relating solely to claims with respect to other non-profits (and which have not resulted in any claim against the present Defendants) were relevant. Even though he had failed to present any argument for the relevance of such documents, I told Defendants' counsel that since all of the pleadings were in a single set of pleadings files, and were also matters of public record in the files of this Court, I was not inclined to make an issue of it and that we would retrieve the pleadings files from storage. That, too, hardly constitutes a "blanket refusal" to produce the requested materials; on the contrary, I expressly acceded to the position of Defendants' counsel.

(iii) <u>With respect to documentation of Vantage's defense costs in the *Qui Tam* action</u>: With respect to this issue, Mr. Nahigian indicated that he wanted to see all bills rendered to Vantage by all of the various attorneys that had represented it in the underlying action. With respect to these requests, the <u>only</u> issue that I raised was that, because the bills contained very detailed chronological summaries of counsel's activities (including communications with their client, Vantage) I believed that redaction of attorney-client privileged materials would be appropriate and necessary. I indicated that we would review the bills in order to redact any privileged material, prior to production. That position is plainly inconsistent with what Defendants have now represented to this Court. In fact, immediately following the discovery conference, I requested my associate counsel in the case, Neal Bingham, to review the bills and prepare copies redacting any privileged materials (indicating, of course, where redactions had been made) preparatory to their production. I reiterated that position, as well, to Mr. Nahigian

during our telephone conversation of March 23, but neither Defendants' brief in support of this Motion nor Mr. Nahigian's accompanying affidavit (See Nahigian Affidavit, Paras. 12) makes any mention of same.

(iv) <u>Answers to Interrogatories</u>:  During the discovery conference I also informed Mr. Nahigian that the answers to interrogatories had been prepared and were being reviewed by the appropriate personnel at Vantage.  I told him that I would serve them as soon as they had been approved and executed.  I confirmed the same during our telephone conversation on March 23 and again assured Mr. Nahigian that no motion would be necessary in order for Defendants to obtain responses to their interrogatories. While that execution of the answers was briefly delayed because of the travel schedules of Vantage personnel, the answers to interrogatories have now been executed and served on Defendants.

(v) <u>The effect of General Objections to the Documents Requests</u>:  I also pointed out during the discovery conference that both parties had interposed general objections to each others documents requests and that their responses to the specific requests had been stated to be "subject to" such general objections.  I indicated that both sides had a similar interest in having a clear record as to whether, where a specific response indicated that documents would be produced "subject to" one or more general objections, all documents responsive to the request were, in fact, being produced except as limited by documents withheld but identified on a privilege log.  I suggested that we enter into a reciprocal stipulation to that effect.  Mr. Nahigian indicated that he would consider that suggestion but he has never further responded to it.

7. While it is true that I indicated at the discovery conference that I would try to call Mr. Nahigian to follow up on our discussions at the discovery conference later that day, I was unable to reach my client and therefore did not do so.  However, I did call and

-5-

leave a voicemail message the following day and actually spoke to Mr. Nahigian on March 23, 2005. During that discussion, I summarized our positions as above set forth, told him that I still had to obtain final approval to accede to his request with respect to the Shriners Contract results and suggested that filing a motion would be premature in the circumstances. Mr. Nahigian indicated that he had decided to do so anyway.

8. Finally, with respect to the present status of written discovery, it is noteworthy that answers to Defendants' interrogatories have now been served and that Defendant's counsel has been notified that the documents that Plaintiff is producing pursuant to its response, as augmented by the further concessions above described, will be ready for production during the coming week. While Plaintiff's documents requests were on January 24, 2005, (only four days after Defendants served their initial disclosures and thus the earliest time for responding to Defendants documents requests and interrogatories could have been to run) Defendants have produced no documents whatsoever to Plaintiff and have yet to give any indication of when their documents are going to be ready for inspection. Despite that circumstance, Plaintiffs have elected so far to resolve such matters directly with Defendants' counsel, and without needlessly imposing on the time or attention of this Court.

9. The foregoing chronology of my dealings with Defendants' counsel with respect to discovery matters plainly indicates to me that Defendants and their counsel have been more interested in creating an occasion to have a discovery dispute than in resolving those disputes that have arisen. Indeed, contrary to Defendants' claim, Plaintiffs substantially modified their positions with respect to the relevancy of substantial portions of Defendants' documents requests during the discovery conference of March 21 so that there was no need whatsoever, with respect to those issues, for the filing of the instant motion. While there have been some delays in responding to

Defendants' documents requests and interrogatories, those delays were not the result of any design or intent to delay but, rather, were occasioned in part by Vantage's principal counsel's trial schedule and the spinal fracture that he suffered in early February, which caused some periods of almost complete disability. Moreover, the overall progress of discovery in this case, has been even more significantly caused occasioned by Defendants' counsel's failure to serve its initial disclosures until seven weeks after purporting to initiate discovery. It was not the fault of Plaintiff or its counsel that Defendants' counsel attempted to initiate discovery at a time when they were expressly barred from doing to by the clear provisions of L.R. 26.2(A). Rather than considering such purported discovery a nullity and requiring Defendants to serve it following their belated service of their initial disclosures, Plaintiff's counsel, in an effort to be cooperative, simply indicated that they would consider such discovery as having been served simultaneously with Defendant's initial disclosures. Defendant's counsel is hardly in a position to tax Vantage or its counsel with the entirety of the delays in documents production that have occurred. In any event, there appear to be few if any remaining issues of substance with respect to Defendants' discovery and those few are dealt with in Plaintiff's memorandum in opposition to the Motion.

Signed under the pains and penalties of perjury this 8th day of April, 2005.

_____
Laurence M. Johnson