UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Vantage Financial Services, Inc.<br>Plaintiff<br><br>v.<br><br>Nonprofit Service Group, Inc. and George E.<br>Miller<br>Defendants | CIVIL ACTION NO. 04-11686-WGY |

## DEFENDANTS' MOTION FOR LEAVE TO SUBMIT A SUPPLEMENTAL AFFIDAVIT IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL DISCOVERY AND FOR EXTENSION OF TIME TO COMPLETE DISCOVERY

Pursuant to Local Rule 7.1(B)(3), defendants Nonprofit Service Group, Inc. and George

E. Miller request leave to file a supplemental affidavit in support of defendants' Motion To

Compel Discovery and For Extension of Time to Complete Discovery. (Supplemental Affidavit

of Richard L. Nahigian , attached hereto as Exhibit "A". A supplemental affidavit is necessary

to address various inconsistencies and misstatements set forth in plaintiff's opposition to

defendants' motion to compel discovery and the supporting affidavit of Laurence M. Johnson. In

support of this motion defendants state as follows:

1.      As set forth in defendants' motion to compel and accompanying memorandum

and affidavits, the plaintiff in this action has failed to adequately respond to defendants'

discovery requests in a timely fashion and have so far avoided appearing for and attending

properly noticed depositions. In response to defendants' motion to compel, plaintiff served an

opposition and supporting affidavit, both of which misstate numerous procedural and substantive

aspects of the case.

2.    First and foremost, plaintiff misstates the substance of the parties' discussions pursuant to Local Rule 37.1. Plaintiff's submissions attempt to characterize those mostly fruitless negotiations in a more positive light despite continued resistance to engaging in open discovery.

3.    Plaintiff also misstates the procedural history of the case. Plaintiff's claim that defendants have failed to comply with the Local Rules of this Court is unsubstantiated. The submission of a supplemental affidavit is necessary to correct certain misstatements with respect to the procedural background of the case and to direct attention back onto plaintiff's substantive failures to comply with defendants' discovery requests.

4.    Furthermore, plaintiff misinterprets for the Court the defendants' stated reason for pursuing the specific discovery at issue. The discovery sought by defendants impacts liability and damages in a number of ways that are not addressed by plaintiff's opposition, but were specifically set forth in the defendants' motion to compel and supporting papers.

**WHEREFORE**, defendants request that the Court grant them leave to file the attached Supplemental Affidavit of Richard L. Nahigian In Support of Defendants' Motion to Compel Discovery and for Extension of Time to Complete Discovery.

Respectfully submitted,
Nonprofit Service Group, Inc. and George
E. Miller,
By their attorneys,

/s/ Matthew J. Griffin
Richard L. Nahigian BBO No. 549096
Matthew J. Griffin BBO No. 641720
Peabody & Arnold LLP
30 Rowes Wharf
Boston, MA 02110
(617) 951-2100

## LOCAL RULE 7.1 CERTIFICATION

The undersigned counsel hereby certifies that I conferred with plaintiff's counsel Laurence Johnson on April 11, 2005 at which time he indicated that he would not object to the filing of this motion.  In return, defendants agreed that they would not object to plaintiff filing a motion for leave to submit a surreply affidavit.

/s/ Matthew J. Griffin
Matthew J. Griffin

PABOS2:MJGRIFF:612333_1
14794-90433

3

# EXHIBIT A

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Vantage Financial Services, Inc.<br>          Plaintiff<br><br>v.<br><br>Nonprofit Service Group Inc. and George E.<br>Miller<br>          Defendant | CIVIL ACTION NO. 04-11686WGY |

**SUPPLEMENTAL AFFIDAVIT OF RICHARD L. NAHIGIAN IN SUPPORT OF
DEFENDANTS' MOTION TO COMPEL DISCOVERY AND FOR EXTENSION OF
TIME TO COMPLETE DISCOVERY**

I, Richard L. Nahigian, hereby depose and state as follows:

1.      My name is Richard L. Nahigian.  I am a member of the bar of this Court and

represent the defendants Nonprofit Service Group Inc. and George E. Miller in this case.  I

submit this supplemental affidavit in further support of defendants' Motion to Compel Discovery

and for Extension of Time to Complete Discovery.

2.      I have reviewed the Affidavit of Laurence M. Johnson submitted in opposition to

defendants' motion to compel.  In order to set straight the record created by Mr. Johnson's

affidavit, I am compelled to submit the following additional information for the Court's review.

3.      Following an abbreviated initial scheduling conference before the Court on

October 27, 2004, Mr. Johnson and I negotiated a scheduling order that provided, in part, that

discovery would be completed by April 30, 2005.  The proposed scheduling order, which was

later endorsed by the Court, did not provide for the exchange of initial or automatic disclosures.

This was consistent with Fed.R.Civ.P. 26(a)(1), which permits parties to agree to dispense with initial disclosures. Local Rule 26.1 provides for "informal, cooperative discovery practices without resort to formal discovery procedures," and it was my understanding that Mr. Johnson and I had agreed to proceed on this basis. Defendants proceeded to serve document requests and interrogatories on December 3, 2004.

4.    Significantly, plaintiff made no effort to serve any initial disclosures of its own until after defendants did so in January 2005. Nor did plaintiff formally object at any time to the timing of defendants' disclosures. Instead, plaintiff remained silent until I had a telephone conversation with Mr. Johnson on or about January 19, 2005. At that time, Mr. Johnson told me, for the first time, that he expected to receive initial disclosures from defendants, and that he would be serving plaintiff's own initial disclosures shortly. It is not true, therefore, that Mr. Johnson discussed the initial disclosures with me in "early January, 2005."

5.    Following my January 19 telephone conversation with Mr. Johnson, defendants immediately served initial disclosures the following day on or about January 20, 2005. Plaintiff served its own initial disclosures six days later on January 26, 2005. Mr. Johnson told me during our January 19, 2005 telephone call that he would consider defendants' discovery requests served as of the date defendants served their own initial disclosures (i.e. January 20, 2005). Nevertheless, February 20, 2005 came and went with no compliance by plaintiff. Instead, when I spoke to Mr. Johnson on February 24, 2005, he told me that he had lost defendants' two document requests and interrogatories, suggesting that plaintiff had done nothing to comply with those requests by that date. Plaintiff did not respond to defendants' document requests until March 7, 2005, at which time it served a response consisting largely of unspecified objections.

2

6.    Plaintiff did not serve answers to defendants' interrogatories until late in the day
on April 8, 2005, the same day it filed its opposition to defendants' motion to compel.  Plaintiff's
interrogatory responses, a copy of which are attached hereto as Exhibit "A", continued plaintiff's
trend of avoiding any meaningful response to key aspects of defendants' discovery requests.
Indeed, Mr. Johnson's assertion that plaintiffs are willing to provide disputed discovery items to
defendants is not only belied by plaintiff's interrogatory answers (served simultaneously with
plaintiff's Opposition to Defendants' Motion to Compel Discovery), but also by the fact that
plaintiff has yet to make any documents whatsoever available to defendants.  Contrary to Mr.
Johnson's affidavit, prior to the filing of plaintiff's opposition to the motion to compel, I had
received no communication from him or anyone else suggesting that plaintiff is prepared to make
documents available for inspection "this coming week," or at any other time.  (Affidavit of
Laurence Johnson, ¶8).  I have been informed by my associate, Matthew Griffin, that he
conferred with Mr. Johnson on April 11, 2005, pursuant to Local Rule 7.1, to discuss the filing of
this supplemental affidavit and that during that conversation Mr. Johnson indicated that he would
be receiving and reviewing an initial wave of documents to be produced in the near future.
According to Mr. Griffin, Mr. Johnson also indicated that he was starting a trial, which
presumably would delay the promised production.  Even at this late date, defendants have not
received a date-certain as to when documents will be produced; nor do defendants know what the
promised production will contain.  This continued pattern of delay shows that forbearance by
defendants was not an option and that a motion to compel was necessary to have any chance of
receiving adequate responses prior to the close of discovery.

7.    In any event, in view of plaintiff's ongoing discovery noncompliance, failure to
keep its promises and general tactics of delay Mr. Griffin sent a letter to Mr. Johnson on March 7,

3

2005, requesting a discovery conference under Local Rule 37.1(A).  Neither Mr. Johnson, nor

anyone else in his office, responded to that request for a discovery conference within seven days

of the date of the request as required by Local Rule 37.1(A).  When Mr. Johnson finally

contacted me and Mr. Griffin on or about March 18, 2005, we agreed to schedule a face-to-face

discovery conference at his office on March 21, 2005.

       8.     Mr. Johnson's rendition of numerous aspects of the discovery conference is

inaccurate.  For example, Mr. Johnson's description of the discussion concerning the Shriners

Program financial data misstates defendants' position, which is detailed in their memorandum in

support of their motion to compel.  Moreover, plaintiff, through counsel or otherwise, has never

suggested that it will voluntarily produce the Shriners Program financial information sought by

defendants.  This is confirmed by the continuing refusal to produce this information in plaintiff's

interrogatory responses, which were served contemporaneously with its opposition to

defendant's motion.

       9.     With respect to redacting meeting minutes, this issue was not discussed at all.

The suggestion that the minutes be redacted was made for the first time in defendants'

memorandum in support of the motion to compel.  In light of plaintiff's dilatory tactics and

ongoing failure to produce any meaningful information (or any documents at all), defendants are

justified, however, in doubting the reliability of any redaction effort that plaintiff might

undertake with respect to any of the documents that it might produce.  Having been informed of

plaintiff's dilatory discovery tactics in the underlying *qui tam* action, defendants have good

reason to take this position.

10.     With respect to plaintiff's legal expenses in the *qui tam* action, which are included in plaintiff's alleged damages, I was told that the total cost of the litigation would be produced, but not the legal invoices or billing entries. The issue of redaction was not discussed. To the contrary, Mr. Johnson stated at the conference that the bills would not be produced because they contained very detailed attorney time entries. I later pointed out to Mr. Johnson that in order to pursue a claim for attorneys' fees related to the Shriners claims, his client would have to show what portion of what time entries were actually attributable to the Shriners. At that point in the conference, Mr. Johnson changed course and indicated that the legal bills did not contain that level of detail. In any event, Mr. Johnson did not indicate that he would be producing legal bills in any form whatsoever.

11.     With respect to the documents concerning the underlying *qui tam* litigation, it was very clear during the discovery conference that plaintiff had no intention of producing anything other than documents specifically relating to the Shriners claim. This would have been unacceptable for the reasons set forth defendants' memorandum in support of their motion to compel. In view of the nature of this case, these documents should have been produced long ago. When I spoke to Mr. Johnson on March 23, 2005, he suggested that I should go to the clerk's office to copy the documents, even though discovery documents are not generally filed with the Court. While he did suggest, as a last resort, that he would retrieve the documents from storage and make them available, it seems clear that plaintiff had not made any effort to do so up to that point. Given the rapidly approaching discovery deadline, I felt that I had no choice but to proceed with the motion to compel. I did tell Mr. Johnson, however, that once the motion was served, I was willing to continue our dialogue to determine whether or not this motion could be resolved without judicial intervention. Mr. Johnson chose instead to file an opposition to the

5

motion and to continue defendants' pattern of obstructing discovery. As stated above, plaintiff has yet (i) to produce any documents, (ii) to inform defendants of a reasonably certain date when any documents will be made available for production, (iii) to provide deposition dates, and (iv) to provide meaningful responses to key interrogatories.

12.     I am aware that Mr. Johnson apparently sustained a compression fracture of the spine in early February 2005. Mr. Johnson specifically told me on February 14, 2005, that his injuries had not prevented him from being in the office, and that he was starting a trial the next day. Additionally, I was informed on March 4, 2005, that my associate, Mr. Griffin, received a telephone call from Mr. Johnson's associate, Neil Bingham, during which Mr. Bingham informed Mr. Griffin that Mr. Johnson was away on a mountain climbing expedition.

13.     It is unfortunate that this case has been reduced to its present state, but defendants saw no alternative to their motion to compel in view of what has, assuredly, become a more than three-month pattern of delaying tactics by plaintiff. More than anything else, plaintiff's belated responses to interrogatories demonstrate why the instant motion to compel is necessary. Despite the plaintiff's suggestion in its opposition papers that it was ready to make a meaningful effort at compliance, the interrogatories (Exhibit "A") suggest otherwise.

14.     There is no better example of this than plaintiff's response to Interrogatory No. 6 which states in full as follows:

> Interrogatory No. 6
>
> State the amount of money that the Plaintiff received as a result of its performance under the Contract, including:
> > a)      The Plaintiff's gross revenues from the contract; and

        b)      The Plaintiff's net revenues under the contract, exclusive of any funds paid to settle the underlying litigation.

<u>Answer to Interrogatory No. 6</u>

Plaintiff objects to this Interrogatory on the grounds that it calls for information that is irrelevant to any claim or defense of any party and is thus beyond the scope of discovery permitted by Fed.R.Civ.P. 26(b)(1).

Whether plaintiff agrees or not, defendants believe that the information sought in this interrogatory is highly relevant for the reasons set forth in its memorandum in support of its motion to compel. While Mr. Johnson's affidavit suggests that plaintiff is leaning towards producing such information, plaintiff's interrogatory responses, served contemporaneously with plaintiff's opposition to the motion to compel, suggest otherwise. They belie any intent to proceed with discovery on the cooperative basis suggested in plaintiff's opposition.

15.    There is no justification for plaintiff's request for sanctions where as of the date of its opposition, (i) plaintiff has yet to produce a single document and (ii) its interrogatory responses reflect the same obstructive discovery tactics that characterized its response to the document requests.

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY this 12th day of April, 2005.

_____
Richard L. Nahigian

612328_1

# EXHIBIT A

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

VANTAGE FINANCIAL SERVICES, INC.
            Plaintiff,

            v.

NONPROFIT SERVICE GROUP AND
GEORGE E. MILLER,
            Defendants.

**C.A. No. 04-11686-WGY**

## PLAINTIFF'S ANSWERS TO DEFENDANTS' FIRST SET OF INTERROGATORIES

The plaintiff, Vantage Financial Services, Inc. ("Vantage") hereby responds and objects

to Defendants, Nonprofit Service Group, Inc. and George E. Miller's, First Set of Interrogatories

pursuant to Fed.R.Civ.P. 33, without waiving:

a)      the right to object on any ground to the use of any of the following responses in any other
subsequent proceeding or the trial of this or any other action;

b)      the right to object on any ground at any time to any demand for further responses to these
or any other interrogatories or any other discovery procedures involving or relating to the subject
matter of these interrogatories;

c)      the right at any time to revise, correct, add to or clarify any of the following.

### GENERAL OBJECTIONS

All answers herein are made subject to the following general objections.

1.      The plaintiff objects to the defendants' "definitions" and to the extent that they impose
duties, require the performance of acts or seek information beyond the scope of permissible
discovery as set forth in the Federal Rules of Civil Procedure.

2.      The plaintiff objects generally to the interrogatories in each and every instance in which
they request information protected by the attorney-client privilege, work product doctrine or
which is otherwise protected from discovery.

3.      The plaintiff objects generally to the interrogatories in each and every instance in which
they are beyond the scope of discovery, an annoyance, embarrassing, oppressive, or unduly
burdensome or expensive.

4.      Where the response to any interrogatory may be derived or ascertained from the records of the plaintiff or from an examination, audit or inspection of such records, including a compilation, abstract or summary thereof, and the burden of deriving or ascertaining the answer is substantially the same for the plaintiff as for the defendants, the plaintiff reserves its right to specify the records from which a response may be derived or ascertained and to afford the defendant reasonable opportunity to examine, audit or inspect such records and to make copies, compilations, abstracts or summaries at the defendant's expense.

## INTERROGATORIES

Interrogatory No. 1.

Set forth an accounting of all funds paid or to be paid to United States Government entities to resolve any claims in the underlying action, including:

    a)      the total amount paid to date and expected to be paid in the future (specifying when) to resolve the underlying action;

    b)      the names of any persons or entities, in addition to the Plaintiff, that made payments to settle or resolve the underlying litigation;

    c)      a description of the individual claims that were the subject of the settlement;

    d)      the amount of money allocated to each individual claim that was the subject of the settlement;

    e)      a description of all United States Government entities to which the settlement funds were paid; and

    f)      a description of the payment terms of the settlement of the underlying action, including but not limited to the cost or pre-cost values of the settlement as of the date of the settlement and any financing terms, conditions, amounts, financers or borrowers to fund the settlement.

Answer to Interrogatory No. 1

Plaintiff objects to this Interrogatory on the grounds that it calls for information that is irrelevant to any claim or defense of any party and is thus beyond the scope of discovery permitted by Fed. R. Civ. P. 26(b)(1). Without waiving the foregoing general and specific objections, and subject thereto, Plaintiffs respond as follows:  Plaintiff has/will pay a total of $4,500,000.00 plus interest at the rate of 3.25% on the outstanding principal balance to the USPS in settlement of the action captioned United States v. Henry Lewis, et al., Civil Action No. 97-CV-10052-MLW (the "Action"), approximately $3,000,000.00 of which has been allocated by Plaintiff to the settlement of claims related to the contracted entered into between Vantage and Shriners Hospital for Children ("Shriners").

2

Interrogatory No. 2.

Identify all individuals who reviewed the Contract prior to its execution.

Answer to Interrogatory No. 2

Plaintiff objects to this Interrogatory on the grounds that it calls for information that is irrelevant to any claim or defense of any party and is thus beyond the scope of discovery permitted by Fed. R. Civ. P. 26(b)(1).  Without waiving the foregoing general and specific objections, and subject thereto, Plaintiff responds as follows:

George E. Miller, Esq.
1601 North Kent Street
Arlington, VA 22209

Larry Lyon
Ipswich Country Club, #43
Ipswich, MA  01938

Jay Fleisher, Esq.
Shriners Hospitals for Children
P.O. Box 31356
Tampa FL 33631-3356

Interrogatory No. 3.

Identify all attorneys who represented the Plaintiff in the underlying action.

Answer to Interrogatory No. 3

Plaintiff objects to this Interrogatory on the grounds that it calls for information that is irrelevant to any claim or defense of any party and is thus beyond the scope of discovery permitted by Fed. R. Civ. P. 26(b)(1). Without waiving the foregoing general and specific objections, and subject thereto, Plaintiff responds as follows:


Morris M. Goldings, Esq.

Laurence M. Johnson, Esq.
Davis, Malm & D'Agostine, P.C.
One Boston Place
Boston, MA 02108

3

Brian W. LeClair, Esq.
12 Fox Run Lane
Marblehead, MA 01945

Seth Perlman, Esq.
Perlman & Perlman
220 Fifth Avenue, Seventh Floor
New York, NY 10001

Patton Boggs LLP
2550 M Street, NW
Washington, DC 20037

Interrogatory No. 4.

Identify all individuals with knowledge of the subject matter of the Complaint.

Answer to Interrogatory No. 4

Harry S. Melikian
President
Vantage Financial Services, Inc.
90 Canal Street
Boston, MA 02114

Larry Lyon

George Miller

Carolyn Emigh
1601 North Kent Street
Arlington, VA 22209

Henry R. Lewis
Vice President
Vantage Financial Services, Inc.
90 Canal Street
Boston, MA 02114

Peter K. Levitt, Esq.
United States Attorney's Office
One Courthouse Way, Suite 9200
Boston, MA 02210

Anton Geidt, Esq.
United States Attorney's Office
One Courthouse Way, Suite 9200
Boston, MA 02210

Hon. Mark L. Wolf
John Joseph Moakley
United States Courthouse
1 Courthouse Way
Boston, Massachusetts 02210

Seth Perlman, Esq.

Brian W. LeClair, Esq.

Laurence M. Johnson, Esq.

Peter Demakis
243 Larchmont Lane
Hanover, MA 02339

Jay Fleisher, Esq.

Interrogatory No. 5.

Describe any fines and/or penalties the Plaintiff has paid over the last 15 years as a result of
alleged violations of rules, regulations or statutes concerning nonprofit mailings and/or mailings
on behalf of nonprofit organizations, including the amounts of any fines or penalties and a brief
description of the alleged violations.

Answer to Interrogatory No. 5

Plaintiff objects to this Interrogatory on the grounds that it calls for information that is irrelevant
to any claim or defense of any party and is thus beyond the scope of discovery permitted by Fed.
R. Civ. P. 26(b)(1). Without waiving the foregoing general and specific objections, and subject
thereto, Plaintiffs respond as follows: Plaintiff has paid no such fines and/or penalties.

Interrogatory No. 6.

State the amount of money that the Plaintiff received as a result of its performance under the
Contract, including:

     a)     The Plaintiff's gross revenues from the contract; and

b)    The Plaintiff's net revenues under the contract, exclusive of any funds paid to settle the underlying litigation.

<u>Answer to Interrogatory No. 6</u>

Plaintiff objects to this Interrogatory on the grounds that it calls for information that is irrelevant to any claim or defense of any party and is thus beyond the scope of discovery permitted by Fed. R. Civ. P. 26(b)(1).

<u>Interrogatory No. 7.</u>

State the total amount of fundraising contributions generated as a result of the Plaintiff's performance under the Contract.

<u>Answer to Interrogatory No. 7</u>

Plaintiff objects to this Interrogatory on the grounds that it calls for information that is irrelevant to any claim or defense of any party and is thus beyond the scope of discovery permitted by Fed. R. Civ. P. 26(b)(1).

<u>Interrogatory No. 8.</u>

State the net amount of fundraising contributions resulting from the Plaintiff's performance under the Contract that were retained by, paid to, or withdrawn from the program account identified in Paragraph 7 of the Contract by the Shriners.

<u>Answer to Interrogatory No. 8</u>

Plaintiff objects to this Interrogatory on the grounds that it calls for information that is irrelevant to any claim or defense of any party and is thus beyond the scope of discovery permitted by Fed. R. Civ. P. 26(b)(1).

<u>Interrogatory No. 9.</u>

Identify all individuals or entities that the Plaintiff retained to assist the Plaintiff in performing the Contract including, the name and address each third party and a brief description of the goods and services the third party provided to the Plaintiff.

<u>Answer to Interrogatory No. 9</u>

Plaintiff objects to this Interrogatory on the grounds that it calls for information that is irrelevant to any claim or defense of any party and is thus beyond the scope of discovery permitted by Fed. R. Civ. P. 26(b)(1).

Interrogatory No. 10.

Describe all mailings that the Plaintiff mailed on behalf of the Shriners pursuant to the Contract, including for each mailing:

    a)     the job number for each mailing;

    b)     the name of each mailing and/or description of the contents of the mailing;

    c)     the price the Plaintiff paid to produce the mailing;

    d)     the party that produced the mailing;

    e)     the party that mailed each mailing piece;

    f)     the amount that the Plaintiff billed the Shriners for the mailing;

    g)     the quantity mailed; and

    h)     the drop date or dates on which the mailing was issued.

Answer to Interrogatory No. 10

Plaintiff objects to this Interrogatory on the grounds that it calls for information that is irrelevant to any claim or defense of any party and is thus beyond the scope of discovery permitted by Fed. R. Civ. P. 26(b)(1).

Interrogatory No. 11.

Identify any documents concerning the payment of funds to resolve the underlying litigation, including, but not limited to, any documents concerning financing for structured settlement provisions.

Answer to Interrogatory No. 11

Plaintiff objects to this Interrogatory on the grounds that it calls for information that is irrelevant to any claim or defense of any party and is thus beyond the scope of discovery permitted by Fed. R. Civ. P. 26(b)(1). Without waiving the forgoing general and specific objections, and subject thereto, Plaintiff responds that the information responsive to this Interrogatory may be derived or ascertained from the payment records of Plaintiff or from an examination or inspection of same, and that the burden of deriving or ascertaining such information is substantially the same for Defendants as for Plaintiff, and that accordingly Plaintiff specifies its payment records, or extracts therefrom concerning payments made pursuant to the settlement of the underlying action, and tenders same to defendants for examination, inspection and copying pursuant to Rule 33(d), F.R.Civ.P.

7

Interrogatory No. 12.

Describe in detail any conversations that the Plaintiff had with any employees, representatives or attorneys of the Shriners concerning the Shriners' liability to pay the Plaintiff for its services and out-of-pocket costs under the Contract, including the identity of all individuals witness to any such conversations, the dates of such conversations and a description of the substance of any such conversation.

Answer to Interrogatory No. 12

Plaintiff objects to this Interrogatory on the grounds that it calls for information that is irrelevant to any claim or defense of any party and is thus beyond the scope of discovery permitted by Fed. R. Civ. P. 26(b)(1). Plaintiff further objects to this Interrogatory on the additional grounds that (a) identification of oral conversations would be unduly burdensome and expensive and that discovery with respect to such oral communications is better conducted by depositions.

Interrogatory No. 13.

State the basis of your allegation in Paragraph 17 of the Complaint that "Miller and NSG expressly assured Vantage that the form of contract drafted by Miller had been used repeatedly by fundraisers for non-profits with the knowledge and without question, objection or challenge by the Postal Service and that the use of that form of contract and the making of fundraising mailings and not-for-profit postage rates pursuant thereto complied with the CMR and was safe, lawful and appropriate."

Answer to Interrogatory No. 13

Without waiving the foregoing general objection and subject thereto, Plaintiff responds that, during and prior to 1999 and thereafter, Vantage and two members of its senior management became involved in a civil action brought by the United States Postal Service in the United States District Court for the District of Massachusetts (hereinafter the "Action"), in which recovery was sought by USPS as a result of several previous fundraising mailings made by Vantage for various of its NPO customers at not-for-profit postal rates, which mailings the USPS alleged were not eligible for mailing at not-for-profit postal rates.

While the Action was pending, Vantage consulted Defendants with respect to the terms of a proposed contract with one of Vantage's largest prospective customers, Shriners Hospital for Children ("Shriners"). Vantage informed Defendants that it was extremely concerned that entering into a contract with Shriners would simply add to its potential liability in the Action. Vantage informed Defendants that it sought their expert counsel and advice in preparing terms with respect to Shriners' contractual obligations that would be suitable to satisfy the contract requirements of Shriners and, at the same time, protect Vantage from further liability with respect to any claim (such as those being asserted in the Action) that the contractual terms with

8

Shriners rendered any premium solicitation mailings for Shriners not eligible for not-for-profit postal rates pursuant to the CMR.

Communications related to this potential engagement of Defendants, which initially were limited to telephone communications, were numerous and began in either late 1998 or early 1999. The vast majority of these communications either involved telephone calls by Vantage from Massachusetts or by Defendants to Massachusetts. The content of these early communications focused on providing Defendants with detailed background information regarding the Action and Defendants' experience in the area of drafting fundraising contracts involving nonprofits, such as Shriners, which would satisfy existing law and regulations. During these numerous communications, Defendants, and Defendant George Miller in particular, held themselves out to Vantage as specialists and experts in "nonprofit organizations," "for-profit fund raisers," "postal rates and regulation," "contracts" and "evaluation of direct mail or telemarketing fundraising programs." During these numerous communications, Defendants represented that they had drafted contracts for other customers that satisfied non-profit customers' concerns for minimizing their liability for the cost of fundraising services without violating the CMR. These representations were also made on Defendants' Website, which Defendants recommended Vantage visit. Defendants, and Defendant George Miller in particular, intimated that the USPS was aware of at least some of such contracts and that the USPS had never challenged any of them.

Interrogatory No. 14.

Describe any edits, revisions, or additions the Plaintiff made to the "form of the contract draft by Miller," as described in Paragraph 17 of the Complaint.

Answer to Interrogatory No. 14

Plaintiffs object to this Interrogatory on the grounds that it is vague, ambiguous and indecipherable.

Interrogatory No. 15.

State the basis for your allegation in Paragraph 19 of the Complaint that "The effect of such amendment was to increase the amount of the United States' claims by approximately $3,000,000 in compensatory damages and for an additional $6,000,000 in exemplary or punitive damages, thus approximately doubling the amount of the claims asserted against Vantage in the Action."

Answer to Interrogatory No. 15

Without waiving the forgoing general objections and subject thereto, Plaintiffs respond that its receipt of discovery materials with respect to the Contract and mailings made by Plaintiff pursuant thereto, the United States filed statements with respect to its claimed damages in the underlying action that increased its claims therein as alleged.

Interrogatory No. 16.

State the basis of your allegation in Paragraph 24 of the Complaint that the United States' claims in the underlying action with respect to the Shriners mailing totaled three million dollars ($3,000,000.00).

Answer to Interrogatory No. 16

Without waiving the forgoing general objections and subject thereto, Plaintiff responds that the statements of its damages filed by the United States with respect to its claims with respect to mailings pursuant to the Contract so indicated.

Interrogatory No. 17.

State the basis of your allegation in Paragraph 24 of the Complaint that the United States' claims for exemplary damages in the underlying litigation were subject to certain additional defenses not available with respect to the revenue recovery claims of the United States, and thus the Plaintiff's principal exposure was with respect to the $6,000,000.00 of revenue recovery claims.

Answer to Interrogatory No. 17

Without waiving the forgoing general objections and subject thereto, Plaintiff responds that the referenced allegations are based upon the legal conclusions and advice given to Plaintiff by its counsel in the underlying action.

Interrogatory No. 18.

Identify all documents and communications memorializing the settlement negotiations and settlement agreement referred to in Paragraph 25 of the Complaint.

Answer to Interrogatory No. 18

Plaintiffs object to this Interrogatory on the additional grounds that it is overly broad and unduly burdensome and harassing.  Without waiving the forgoing general and specific objections, and subject thereto, Plaintiff responds that the information responsive to this Interrogatory may be derived or ascertained from the correspondence and memoranda files, or extracts thereof, of Plaintiff and its counsel in the underlying case or from an examination or inspection of same, and that the burden of deriving or ascertaining such information is substantially the same for Defendants as for Plaintiff, and that accordingly Plaintiff specifies its payment records, or extracts therefrom concerning payments made pursuant to the settlement of the underlying action, and tenders same to defendants for examination, inspection and copying pursuant to Rule 33(d), F.R.Civ.P.

10

Interrogatory No. 19.

Identify all experts that the Plaintiff retained to assist in the defense of the underlying action.

Answer to Interrogatory No. 19

Plaintiff objects to this Interrogatory on the grounds that it calls for information that is irrelevant to any claim or defense of any party and is thus beyond the scope of discovery permitted by Fed. R. Civ. P. 26(b)(1).

Interrogatory No. 20.

Set forth an accounting of all funds the Shriners paid to the Plaintiff to reimburse the Plaintiff for the Plaintiff's out-of-pocket expenses resulting from the Contract.

Answer to Interrogatory No. 20

Plaintiff objects to this Interrogatory on the grounds that it calls for information that is irrelevant to any claim or defense of any party and is thus beyond the scope of discovery permitted by Fed. R. Civ. P. 26(b)(1).

Interrogatory No. 21.

Set forth an accounting of all funds the Plaintiff received as a result of renting or exchanging the Shriners' mailing list, including for each transaction:

a)    the date of the rental or exchange;

b)    the number of names rented or exchanged;

c)    the cost per thousand names rented or exchanged; and

d)    the total amount that the Plaintiff or its list brokerage affiliate, broker or agent received for renting or exchanging the list.

Answer to Interrogatory No. 21

Plaintiff objects to this Interrogatory on the grounds that it calls for information that is irrelevant to any claim or defense of any party and is thus beyond the scope of discovery permitted by Fed. R. Civ. P. 26(b)(1).

Interrogatory No. 22.

Set forth a computation of all categories of damages you are claiming in this lawsuit, including an explanation for your damages calculations.

11

Answer to Interrogatory No. 22

(1) Cost of Settlement attributable to Shriners claim:

    (a) Amount of single damages claim of United States:      $6,055,260.56

    (b) Amount of single damages claim attributable
    to mailings under Shriners contract prepared by
    Defendants      $2,984,674.92

    (c) Amount paid to settle case      $4,500,000.00

    (d) Amount of settlement attributable to
    punitive damages claims:      less than      $ 500,000.00

    (e) Amount of settlement attributable to
    single damages claims      more than      $4,000,000.00

    (d) Amount of settlement attributable to claims
    based upon Shriners mailings      more than      $2,000,000.00

(2) Defense costs attributable to Shriners claims:

    (a) Total defense costs from time United
    States added Shriners claims      $781,266.14

    (b) Defense costs attributable to
    Shriners claims (at least 1/2 of total)      $390,633.07

(3) Total damages attributable to defense and settlement
of Shriners claims:      more than      $2,390,633.07

12

Signed under the pains and penalties of perjury on this _8th_ of April 2005.

_Ted Sykes_

Ted L. Sykes, its Secretary

AS TO OBJECTIONS:

_Neal Bgl_

Laurence M. Johnson (BBO #252720)
Neal J. Bingham (BBO #652029)
Davis, Malm & D'Agostine
One Boston Place
Boston, MA 02108
(617) 367-2500

13

354469v.1