UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

VANTAGE FINANCIAL SERVICES, INC.
Plaintiff,

v.

NONPROFIT SERVICE GROUP AND
GEORGE E. MILLER,
Defendants.

**C.A. No. 04-11686-WGY**

**PLAINTIFF'S MOTION FOR LEAVE TO SUBMIT SUPPLEMENTAL AFFIDAVIT IN OPPOSITION TO MOTION TO COMPEL DISCOVERY**

The plaintiff, Vantage Financial Services, Inc. ("Vantage"), hereby moves pursuant to Local Rule 7.1(b)(3) for leave to file a supplemental affidavit in opposition to the Motion to Compel Discovery and for Extension of the Time to Complete Discovery filed by the defendants, Nonprofit Service Group and George E. Miller ("Defendants"). A supplemental affidavit is necessary to address various inconsistencies and misstatements set forth in the Supplemental Affidavit of Richard L. Nahigian in Support of Defendants' Motion to Compel Discovery (the "Supplemental Affidavit"). In further support of this motion, Vantage states:

1. In the Supplemental Affidavit, Mr. Nahigian misstates pertinent matters in connection with the exchange of initial disclosures. Counsel discussed and negotiated the scheduling order in this case during several telephone conversations. However, at no time did Vantage's counsel agree to dispense with the requirements of Fed. R. Civ. P. 26(a) for the exchange of initial disclosures. Defendants' service of discovery prior to making initial disclosures was therefore premature.

2. The Supplemental Affidavit also misstates the substance of the parties' discussions during their Local Rule 37.1 conference. Particularly, Defendants misstate Vantage's

intentions with respect to the production of various documents, including (i) financial

information in connection with the Shriners Contract; (ii) redacted legal bills; and (iii)

documents filed in the underlying *Qui Tam* case.

WHEREFORE, Vantage respectfully requests that the Court grant them leave to file the

attached Supplemental Affidavit of Laurence M. Johnson in Opposition to Defendants' Motion to

Compel, attached hereto as <u>Exhibit A</u>.


**VANTAGE FINANCIAL SERVICES, INC.,**
By its Attorneys,


Laurence M. Johnson (BBO #252720)
Neal J. Bingham (BBO #652029)
Davis, Malm & D'Agostine
One Boston Place
Boston, MA 02108
(617) 367-2500

Dated: April 25, 2005


## RULE 37.1 CERTIFICATION

The undersigned counsel hereby certifies that the parties conferred on April 11, 2005 at
which time Defendants' counsel, Matthew J. Griffin, agreed that he would not object to Vantage
filing a motion for leave to submit a supplemental affidavit.


Neal J. Bingham

# EXHIBIT A

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| VANTAGE FINANCIAL SERVICES, INC.<br>Plaintiff,<br><br>v.<br><br>NONPROFIT SERVICE GROUP AND<br>GEORGE E. MILLER,<br>Defendants. | C.A. No. 04-11686-WGY |

## SUPPLEMENTAL AFFIDAVIT OF LAURENCE M. JOHNSON IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL

I, Laurence M. Johnson hereby depose and state the following under the pains and penalties of perjury:

1. My name is Laurence M. Johnson. I am a member of the bar of this Court and represent the Plaintiff, Vantage Financial Services, Inc., in this case. I submit this supplemental affidavit, as to matters within my own personal knowledge, in further opposition to the Motion to Compel and to address certain matters set forth, for the first time, in the Supplemental Affidavit of Richard L. Nahigian.

2. Dispensing with the requirements of Rule 26(a), F.R.Civ.P. for the exchange of initial disclosures was never proposed, discussed or agreed to, either in connection with parties' scheduling order, or at all. Mr. Nahigian and I discussed and negotiated the scheduling order during several telephone conferences that took place between the scheduling conference of October 27, 2004 and November 10, 2004, when Mr. Nahigian approved the final version of the proposed order, that I had prepared, and when my office caused it to be filed with the Court. The scheduling order, of course, did not need to expressly provide for the exchange of initial disclosures because, absent express agreement to the contrary, such disclosures are required by Rule 26(a).

3. The fact that I understood that the parties were still going to exchange the initial disclosures mandated by Rule 26(a) is shown by the fact that on the very next day, November 11, 2004, I began working on a draft of Plaintiff's initial disclosures and emailed a draft of same to my client. My time records for November 11, 2004 (which are kept on a contemporaneous daily basis and were thus generated within a day or two of November 11 (long before the present controversy arose) contain the following excerpt with respect to this matter:

> ...em [email] to ...[employees of client] re: draft and plaintiff's initial disclosures, .2....

That time entry plainly shows that I was working on Plaintiff's initial disclosures within a day of the filing of the scheduling order, and is entirely inconsistent with the implication in Mr. Nahigian's affidavit that the Scheduling Order had implicitly dispensed with the initial disclosures required by Rule 26(a).

4. My time records further show that I had a meeting with representatives of my client to review and discuss a draft of Plaintiff's initial disclosures on November 17, 2004, again long before any issue about whether the parties had agreed to dispense with them arose.

5. My time records further show that I had two telephone conversations with Attorney Nahigian on January 11, 2005. While my entry on that date is not explicit as to the subject of our telephone conversation, I believe that it was at this time that I told him that I was surprised that he had attempted to initiate documents requests and interrogatories without having served his initial disclosures. I also believe that I told him, on that occasion, that despite the fact that his documents requests and interrogatories were served in violation of the Local Rules of this Court, I would consider them as served as of the time that he served his initial disclosures. While Mr. Nahigian confirms this conversation, he attributes it to a conversation on January 19 while I believe that it took place on January 11.

6. Plaintiff's response to Defendant's First and Second Requests for Production of Documents was served more than thirty days following the service of Defendants' initial disclosures for the reasons of my back injury and trial commitments that I have explained in detail in my initial affidavit. It is unnecessary to repeat that explanation here, beyond reiterating that there were exigent circumstances that had nothing whatsoever to do with any design to hinder or delay defendants' discovery.

7. Plaintiff's answers to Defendants' Interrogatories were prepared and transmitted to the client for execution prior to the discovery conference of March 21. The concessions that I have agreed to, as a result of that conference, will obviously be reflected in supplemental answers to Interrogatories that will be promptly supplied by Vantage.

8. With respect to the financial information regarding the revenues and expenses in connection with the Shriners' contract, Defendants' rationale for requesting such discovery is immaterial. Despite Mr. Nahigian's claim to the contrary, Vantage has unequivocally undertaken to produce such documents voluntarily (see my initial affidavit) and is presently retrieving the responsive documents.

9. Paragraph 9 of Mr. Nahigian's Supplemental Affidavit misstates the context of the discussion of redaction at the discovery conference of March 21. That discussion did not concern Defendants' request for production of minutes of corporate meetings. It was concerned with redaction of portions of Vantage's legal bills that contained or referred to privileged communications between Vantage and its counsel in the *Qui Tam* case. That was unmistakably clear from both Vantage's Opposition memorandum (p. 10) and my initial affidavit (Para. 6(iii) at pp. 4-5). With respect to the minutes of corporate meetings, Mr. Nahigian now takes the indefensible position that even granted that Defendants' request is overly broad and not confined to matters relevant to the case, Vantage should be required to produce all such minutes anyway because he feels 'justified…in doubting the reliability of any redaction….'' Vantage is prepared

to produce those portions of any corporate minutes that refer to (i) the defense or settlement of the *Qui Tam* case, (ii) the Shriners' contract or (iii) Vantage's dealings with the Defendants with respect to the Shriners' contract. Any appropriate redactions will be made by Vantage's counsel, not Vantage's employees and Defendants have no reason to believe that counsel will not discharge this responsibility properly. There is no legitimate issue about this discovery and Mr. Nahigian's refusal to accept the production offered simply confirms Defendants' tactic of seeking to create discovery disputes where none exist.

10. Mr. Nahigian is incorrect in his claim (Supplemental Affidavit, Para. 10) that redaction of privileged materials from Vantage's legal bills was not discussed. I expressly indicated that that would be necessary in connection with such production. I further indicated that the reason that redaction would be necessary was that the detail contained in the Firm's bills might include materials that are privileged. My memory and my notes are confirmed by the independent memory of my colleague, Mr. Bingham, who was present at the discovery conference with me.

11. With respect to the documents filed in the *Qui Tam* case, Mr. Nahigian's Supplemental Affidavit (Para. 11) is again inaccurate and reflects, at best, a misunderstanding of what I told him, both during the discovery conference and during our later telephone conversation prior to his filing of the instant Motion to Compel. I did <u>not</u> suggest that he examine the papers in the case at the clerk's office. What I <u>did</u> suggest was that, many of such documents were irrelevant to the present case, because they involve non-profits other than Shriners, <u>since</u> such documents are matters of public record and since the Firm's pleadings files do not distinguish between documents relating to Shriners and those relating to other non-profits, it was not worth making an issue of, and we would produce the entire pleadings file. I so stated in my original affidavit as well as on both March 21 and March 23.

-4-

12.  As indicated above, Vantage's answers to Defendants' interrogatories had been prepared before Vantage and its counsel determined to produce information with respect to its gross and net revenues from the Shriners' contract.  That information is now being retrieved and will be produced, together with an amended response to the appropriate interrogatories referring Defendants to such documents pursuant to Rule 33(d).  That being the case, the disputes between the parties regarding the relevance of the requested discovery is immaterial.

13.  In sum, the only remaining dispute regarding Defendants' discovery is that involving whether defendants are entitled to all minutes of corporate meetings, regardless of whether they deal with matters wholly unconnected with any conceivable issue in this case.  Vantage has indicated its willingness to produce all portions of such minutes that have any conceivable relevance but Defendants continue to press for production of admittedly irrelevant materials on the basis of their claim that they "do not trust" Vantage's counsel to determine what should be redacted.  They could, as easily, claim to be entitled to production of all of Vantage's records of any kind, and involving any transaction, on the same grounds.  The argument is frivolous.  Since there are no discovery disputes of any substance, there is no justification for expending the resources of the Court on non-existent disputes.

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY this 22nd day of April, 2005.

_____
Laurence M. Johnson