EXHIBIT _____

FILED
IN CLERK'S OFFICE

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

JUL 20  3 02 PM '98

US DISTRICT COURT
DISTRICT OF
MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA EX REL. LAURENCE SAKLAD, | ) ) ) ) | |
| Plaintiff, | ) ) | CIVIL ACTION NO. 97-10052-MLW |
| V. | ) ) ) | |
| HENRY R. LEWIS AND VANTAGE TRAVEL SERVICE, INC., | ) ) ) ) | |
| Defendants. | ) ) | |

## COMPLAINT OF THE UNITED STATES

The United States of America ("United States" or "the Government"), by and through its undersigned attorneys, alleges as follows for its Complaint in this matter:

### INTRODUCTION

1.    On January 17, 1997, relator Lawrence Saklad filed a Complaint under the qui tam provisions of the False Claims Act, 31 U.S.C. §§ 3729 et seq., against defendants Henry R. Lewis and Vantage Travel Service, Inc.  The relator's Complaint alleges that the defendants submitted false claims to the United States Postal Service to conceal an obligation to pay or transmit money to the Government.

2.    On June 15, 1998, the plaintiff, the United States, filed a Notice of Intervention in this civil action.  The United States has thus exercised its right under the False Claims Act to proceed with the action filed by the relator.  31 U.S.C. § 3730(b).

## JURISDICTION AND VENUE

3.    This action arises under the False Claims Act, as amended, 31 U.S.C. §§ 3729-3733, and at common law.  This Court has subject matter jurisdiction over this action under 31 U.S.C. § 3730(a) and (b) and 28 U.S.C. §§ 1331 and 1345.

4.    This Court has personal jurisdiction over the defendants pursuant to 31 U.S.C. § 3732(a).  Venue is proper under 28 U.S.C. § 1391(b) and 31 U.S.C. § 3732(a).  Both defendants can be found, reside, and transact business within the district, and the acts that violate the provisions of 31 U.S.C. § 3729 occurred within this district.

## THE PARTIES

5.    The plaintiff is the United States on behalf of its agency, the United States Postal Service ("Postal Service").

6.    Defendant Henry R. Lewis ("Lewis") resides at 393 Commonwealth Avenue, Newton, Massachusetts.  At all times relevant to this Complaint, Lewis was chief executive officer of defendant Vantage Travel Service, Inc.

7.    Defendant Vantage Travel Service, Inc. ("Vantage") is a for-profit corporation organized and existing under the laws of the Commonwealth of Massachusetts with its principal place of business at 111 Cypress Street, Brookline, Massachusetts.

## STATEMENT OF FACTS

8.    At all times relevant to this action, Vantage has been in the commercial mailing business; it conducts fund-raising programs by mail on behalf of nonprofit organizations ("nonprofits").    Under agreements between Vantage and its nonprofit clients, Vantage solicits donations from the nonprofits' members in return for items of nominal value (e.g., calendars or greeting cards).

9.    In conducting many such fund-raising programs, Vantage has caused the mail necessary to the program to be delivered by the Postal Service at the special bulk third-class rate ("nonprofit rate").

10.    The nonprofit rate, which is determined according to a formula established by Congress, is only available to nonprofit organizations under conditions established by the Postal Service.

11.    The nonprofit rate is approximately one-half the regular bulk third-class rate ("standard rate").

12.    The Postal Service will not permit mail to be entered at the nonprofit rate if such mail is being sent by a nonprofit that is cooperating with a for-profit company to share the costs, risks, or benefits of the mailing.    The Postal Service refers to such a mailing as a "cooperative mailing."

13.    The Postal Service will permit mail to be entered at the nonprofit rate if such mail is being sent by a nonprofit that

hires a for-profit company, such as Vantage, to conduct the mailing, but only if the relationship between the nonprofit and the for-profit company is that of principal and agent. If the Postal Service determines that the parties share the costs, risks, or benefits of the mailing, the Postal Service will not deem their relationship to be that of principal and agent and, therefore, will not permit the mail to be entered at the nonprofit rate.

14.    The Postal Service requires that a nonprofit seeking to enter mail at the nonprofit rate submit, with each mailing, a Postal Service Form 3602 on which the mailer has certified that the mailing does not violate Domestic Mail Manual § 625, which prohibits cooperative mailings at the nonprofit rate. The mailer must also expressly certify on Form 3602 that the mailing is not a cooperative mailing.

15.    Since no later than November 1990, the defendants have had knowledge of the Postal Service's prohibition on the entry of cooperative mailings at the nonprofit rate. During an investigation conducted by the Postal Inspection Service in 1990 ("the 1990 investigation") into cooperative mailings in which Vantage was involved, a postal inspector notified Lewis and Vantage that, under the terms of the standard contract ("Program Agreement") governing mailings conducted by Vantage on behalf of its nonprofit clients, those mailings were cooperative and, therefore, ineligible for the nonprofit rate.

- 4 -

16. The postal inspector overseeing the 1990 investigation informed Vantage that mailings conducted under its Program Agreement were cooperative because, under the terms of the Program Agreement, Vantage shared the risks and benefits of such mailings. Specifically, the postal inspector informed Vantage that mailings covered by its Program Agreement were cooperative because of the provision at paragraph 6(c) of the Program Agreement. This provision stated as follows:

> In the event that gross collections associated with a PROGRAM are insufficient to cover the expenses and costs. . . then Vantage shall have the right to solicit further known contributions until such shortfall is eliminated[.]

A sample of the Vantage Program Agreement in effect in 1990 is attached hereto as Exhibit A.

17. Prior to being notified, during the 1990 investigation, that mailings under its Program Agreement were cooperative mailings and, thus, ineligible for the nonprofit rate, Vantage had routinely submitted Forms 3602 certifying that such mailings were not cooperative.

18. During the 1990 investigation, the Postal Inspection Service informed Vantage that Vantage would remain ineligible to enter mail at the nonprofit rate until Vantage amended the language of its Program Agreement to eliminate the language quoted in paragraph 17 above, and to require the nonprofits to pay all costs and expenses associated with the program, regardless of the program's success. In response, Vantage

- 5 -

amended its Program Agreement and, in late 1991, reported to the
Postal Service that its amended Program Agreement complied with
the cooperative mail rule.

19.   In discussions with the postal inspector overseeing the
1990 investigation, Vantage acknowledged being aware of the
cooperative mail rule.  Vantage also specifically acknowledged
being aware that any contractual arrangement with a nonprofit
that shielded the nonprofit from financial responsibility for an
unsuccessful fund-raising program would be a cooperative mailing
and, thus, ineligible for the nonprofit rate.  To settle claims
asserted by the Postal Service, Vantage and certain of its
clients subsequently reimbursed the Postal Service for postage
deficiencies resulting from improper use of the nonprofit rate.

20.   At that time, Vantage also provided, as samples of its
amended Program Agreement, copies of Program Agreements executed
in late 1991 by Vantage and specific nonprofits.  Vantage
explained that mailings conducted under the amended Program
Agreement were not cooperative mailings because of the terms set
forth in paragraph 6(c) of the amended Program Agreement.
Paragraph 6(c) stated as follows:

> In the event that gross collections associated with a
> program are insufficient to cover the expenses and
> costs [of the program], then the [nonprofit] will be
> billed by Vantage for the shortfall, which will be due
> and payable within 30 days of invoice.

A sample of the amended Program Agreement provided by Vantage to
the Postal Service in 1991 is attached hereto as Exhibit B.

- 6 -

21. Because paragraph 6(c) allocated the financial risk of an unsuccessful program to the nonprofit alone and did not give Vantage the right to continue a fund-raising program in the event that the program's revenues did not cover its costs, the Postal Service believed that mailings covered by the amended Program Agreement were eligible for the nonprofit rate.

22. However, Vantage immediately modified its Program Agreement by executing "secret side agreements" with provisions that superseded paragraph 6 of the Program Agreement. (A sample of Vantage's secret side agreements is attached hereto as Exhibit C.) Those provisions included the following language:

> In the event that proceeds from the program are insufficient to cover all program costs (including postage and bank charges, if applicable), Vantage . . . shall have the right to continue the fund-raising program until such shortfall is eliminated.

Thus, Vantage immediately modified its Program Agreement to include the very provision that the Postal Service had informed Vantage made mailings under the Program Agreement ineligible for the nonprofit rate.

23. In addition to modifying its Program Agreements as described in paragraph 23 above, Vantage guaranteed its nonprofit clients that all mailings covered by a secret side agreement would be conducted with no financial risk to the nonprofit. Vantage guaranteed that in the event of an unsuccessful fund-raising program, Vantage would absorb all financial losses. Vantage communicated this guarantee both verbally, before

- 7 -

execution of a secret side agreement, and by including the
following provision in the secret side agreement:

> To prevent the [nonprofit] from reporting any financial
> liability, Vantage . . . agrees not to invoice the
> [nonprofit] until sufficient funds are collected to
> cover the relevant invoice.

This provision, by itself, also rendered mailings covered by
Vantage's Program Agreement cooperative, because it shifts the
risk of an unsuccessful program from the nonprofit to Vantage.
Had the Postal Service been aware of this provision, or of
Vantage's no-risk guarantee, it would not have permitted mailings
covered by the secret side agreement to be entered at the
nonprofit rate.

24.  Vantage concealed its secret side agreements from the
Postal Service.  At the time that Vantage provided the Postal
Service with samples of Program Agreements that Vantage had
amended, ostensibly to comply with the cooperative mail rule,
Vantage had already executed secret side agreements modifying
those Program Agreements.  In fact, Vantage had executed secret
side agreements modifying the sample "complying" Program
Agreements on the very same day that Vantage executed the Program
Agreements themselves.  Vantage did not provide those secret side
agreements to the Postal Service.

25.  Between 1991 and 1997, Lewis and Vantage executed or
caused to be executed at least 74 secret side agreements.

26. Between 1991 and 1997, Lewis and Vantage have submitted or caused to be submitted hundreds or thousands of Forms 3602 containing certifications that mailings covered by secret side agreements were not cooperative mailings. Each such certification was a false or fraudulent statement or record. A sample of the Forms 3602 submitted by Vantage during this period is attached hereto as Exhibit D.

27. Lewis and Vantage had actual knowledge that each such certification was false or fraudulent or acted in deliberate ignorance or reckless disregard of the truth or falsity of the certifications.

28. Lewis and Vantage made or caused to be made such false or fraudulent statements or records in order to conceal, avoid or decrease an obligation to pay or transmit money to the Government, namely postage fees at the proper rate.

29. Between 1991 and 1997, Lewis and Vantage have caused millions of mailpieces covered by secret side agreements to be mailed at the nonprofit rate. In so doing, Vantage has concealed, avoided, or decreased an obligation to pay money to the Government.

30. If the Postal Service had been aware of the secret side agreements executed by Vantage, the Postal Service would not have permitted mailings covered by those secret side agreements to be entered at the nonprofit rate. The least expensive rate at which the Postal Service would have permitted such mailings to be

- 9 -

entered would have been the standard rate, which is approximately one-half the nonprofit rate.

31.  The United States has suffered monetary damages as a result of the conduct described above.

COUNT I

**False Claims Act, 31 U.S.C. § 3729(a)(7)**
**Presenting False or Fraudulent Claims**

32.  The plaintiff incorporates by reference all preceding paragraphs of this Complaint as if fully set forth herein.

33.  The defendants submitted false or fraudulent statements to the Postal Service at various times from 1991 until 1997, the precise number of which shall be determined through discovery and established at trial.

34.  The defendants knowingly presented or caused to be presented to the United States Government false or fraudulent statements for the purpose of concealing an obligation to pay or transmit money to the Government in violation of 31 U.S.C. § 3729(a)(7).

35.  As a result of the defendants' conduct set forth in this Count, the United States suffered actual damages.

## COUNT II
### Common Law Fraud

36.   Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

37.   The certifications on Forms 3602 that certain mailings were not cooperative were misrepresentations of material fact.

38.   The defendants caused these misrepresentations to be made with knowledge of their falsity or with reckless disregard for their truth.

39.   The United States, acting in reliance on Vantage's misrepresentations, accepted less money from the defendants than the defendants actually owed.

40.   As a result of the defendants' conduct, the United States has been damaged in an amount to be determined at trial.

## COUNT III
### Unjust Enrichment

41.   Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

42.   As a result of the conduct described in the foregoing paragraphs, the defendants concealed an obligation to pay or transmit money to the Government.

43.   As a result of the conduct set forth in the foregoing paragraphs, the defendants have been unjustly enriched at the expense of the United States, under circumstances dictating that,

- 11 -

in equity and good conscience, the obligation to pay or transmit money to the Government should be satisfied.

### PRAYER FOR RELIEF

WHEREFORE, the United States, demands that judgment be entered in its favor against defendants on Counts I, II and II of the Complaint, as follows:

1.  On Count I (False Claims Act; Presentation of False Claims) against defendants Henry R. Lewis and Vantage Travel Service, Inc., for treble the amount of the United States's actual damages, plus civil penalties of not less than $5,000 and not more than $10,000 for each of the false claims presented or caused to be presented, plus post-judgment interest and costs;

2.  On Count II (Common Law Fraud) against defendants Henry R. Lewis and Vantage Travel Service, Inc., for the amount by which the United States has been damaged as a result of the defendants' fraud, plus pre- and post-judgment interest and costs;

3.  On Count III (Unjust Enrichment) against defendants Henry R. Lewis and Vantage Travel Service, Inc., for the amount by which the defendants have been unjustly enriched, plus pre-and post-judgment interest and costs;

4.    For such other and further relief as the Court deems just and equitable.

Respectfully submitted,

DONALD K. STERN
United States Attorney

JOHN A. CAPIN
Assistant U.S. Attorney
1003 J.W. McCormack POCH
Boston, MA 02109
(617) 223-9406

Dated: July 20, 1998

- 13 -

# AGREEMENT

Agreement made as of this 6th day of February, 1990, by and between Vantage Studios, a division of Vantage Financial Services, Inc., 111 Cypress Street, Brookline, MA 02146 (hereinafter referred to as VANTAGE), and

### CRYPTIC MASONS MEDICAL RESEARCH FOUNDATION

(hereinafter referred to as ORGANIZATION)

## WITNESSETH

WHEREAS, VANTAGE has expertise in the areas of direct mail marketing and group solicitation; and

WHEREAS, ORGANIZATION desires to avail itself of VANTAGE'S expertise in the foregoing areas, in the solicitation of ORGANIZATION'S membership and others in one or more Greeting Card Programs;

NOW, THEREFORE, in consideration of the mutual covenants herein contained, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1.   VANTAGE or its designated agents shall distribute among the membership of ORGANIZATION and among such other lists as may be furnished to VANTAGE by ORGANIZATION, or by any of the ORGANIZATION'S members (collectively, the "Lists"), a special package of Greeting Cards throughout the year. Lists shall be supplied by ORGANIZATION on computer tape in a form usable without further conversion or adaptation by VANTAGE. If any list is not maintained on a computer, in form usable without further conversion or adaptation by VANTAGE, then either ORGANIZATION or VANTAGE shall have the necessary conversion performed. The cost of the Lists furnished and any conversion costs involved shall be an expense of the Greeting Card Program (PROGRAM), and paid from the PROGRAM as provided in Paragraph 6 hereof.

2.  VANTAGE or its designated agents shall prepare a master file from the Lists furnished as provided in Paragraph 1. This master file plus all additions thereto, shall be at all times, and shall remain the exclusive property of ORGANIZATION'S and no use of same, except as outlined in this Agreement, can be made by VANTAGE or its designated agents without the prior written consent of ORGANIZATION.

3.  All solicitation literature used for any PROGRAM shall be approved by a Representative of ORGANIZATION prior to printing. In the event no Representative shall be so designated, any action which requires the approval of such Representative may be taken by VANTAGE in good faith, without such approval.

4.  VANTAGE or its designated agents shall perform and supply all the work necessary for implementing the PROGRAM as more particularly described on Schedule "A" attached hereto, including maintaining the master file and preparing the presend option letter and two (2) reminder notices to all ORGANIZATION members that do not make a contribution for or return the box of cards.

5.  The funds received from this PROGRAM will be deposited at least weekly in a special escrow bank account jointly agreed to by VANTAGE and ORGANIZATION. VANTAGE or its designated depository will provide the ORGANIZATION with a report of the collection activity associated with the PROGRAM.

6.  For its services to be rendered hereunder, VANTAGE shall be paid as follows:

    (a)  From the gross collections associated with a PROGRAM, all actual postage for mailing the presend option letter, card package and two (2) reminder notices, bank service charges (if applicable) plus the List conversion costs described in Paragraph 1 hereof, shall be paid to VANTAGE, as these costs are incurred and invoiced to ORGANIZATION. The quantity of card packages mailed is to be substantiated by Form 3602, supplied by the United States Postal Service;

- 2 -

(b)   From the gross collections associated with a PROGRAM, net of the expenses and costs described in subparagraph (a), above, ORGANIZATION shall pay to VANTAGE TWO AND 50/100 DOLLARS ($2.50) per package mailed;

(c)   In the event that gross collections associated with a PROGRAM are insufficient to cover the expenses and costs described in subparagraph (a), above, and the $2.50 per box mailed described in subparagraph (b) , above, then VANTAGE shall have the right to solicit further known contributors until such shortfall is eliminated; and

(d)   Any remaining amounts collected that are associated with a specific PROGRAM, net of the items described in subparagraphs (a), (b) and (c), above, shall be paid to ORGANIZATION.

7.    The cost of any additional services rendered to the ORGANIZATION will be billed separately by VANTAGE and will be due and payable within 30 days of invoice.

8.    The term of this Agreement shall be for a period of five (5) years commencing on the date hereof and shall continue thereafter from year to year until terminated as herein provided.   Upon failure of both parties to give written notice of termination of on or before January 1, 1994 effective with the end of the then active PROGRAM, then this Agreement shall continue from year to year unless written notice of termination by the party desiring to terminate this Agreement shall be given on or before the second day of January of the year in which termination is desired, such termination to be effective no sooner than completion of the then current Greeting Card PROGRAM.

9.    Costs itemized in this Agreement do not include any postage. It is mutually agreed that costs of postage are to be billed in accordance with postage rates at the time of mailing the presend option letter, card package and reminder notices.

- 3 -

10. In the event of the termination of this Agreement by either VANTAGE or ORGANIZATION pursuant to the provisions of paragraph 8 hereof, or upon the expiration of this Agreement, or upon its termination for any other reason, then ORGANIZATION shall have the right to acquire the master file referred to in paragraph 2 hereof. VANTAGE'S obligation in this regard is limited to delivery of such master file in its then existing form, without conversion, adaptation or other action. As a condition to VANTAGE'S obligation in this regard, ORGANIZATION shall pay to VANTAGE, in advance, the cost of shipping the master file.

11. In partial consideration of the undertakings of VANTAGE described in this Agreement, ORGANIZATION agrees that in the event it conducts negotiations for the promotion of a Greeting Card Program with anyone else, after the expiration of the within Agreement or any renewal thereof, it shall give VANTAGE the option of meeting the same terms and conditions as such other person, firm or corporation shall offer to conduct said PROGRAM for said ORGANIZATION for the duration of this Agreement.

12. ORGANIZATION and its membership shall render such assistance to VANTAGE or its designated agents not inconsistent with its Charter and By-Laws.

13. Miscellaneous:

(a) All notices permitted or required hereunder shall be in writing and shall be effective when received after being sent by hand delivery, by telecopy, or by certified mail, postage prepaid, return receipt requested, at the following addresses

If to VANTAGE:  Vantage Studios
c/o Vantage Financial Services, Inc.
111 Cypress Street
Brookline MA 02146
Attn: Harry S. Melikian
Executive Vice President

- 4 -

If to ORGANIZATION:

      Marion K. Crum, PMIGM, Secretary
      Cryptic Masons Medical Research Foundation
      R.R. 4, Box 301
      Nashville, IN 47448

or to such other address as either party hereto may designate in a notice given pursuant to this Section13 (a) to the other party.

(b)    This Agreement constitutes the entire agreement between the parties to this Agreement with respect to the subject matter of this Agreement.

(c)    Neither this Agreement nor any provision hereof may be assigned, expressly or by operation of law, by either party to any person without the prior written consent of the other party.

(d)    This Agreement may be executed in any number of counterparts, each of which shall be deemed an original.    All Exhibits referred to herein are incorporated by reference and are part of this Agreement as if fully set forth herein.

(h)    This Agreement shall be governed by and construed in accordance with the laws of the Commonwealth of Massachusetts applicable to contracts made and to be performed therein.

IN WITNESS WHEREOF, have executed this Agreement as of the date first above written.

      VANTAGE FINANCIAL SERVICES, INC.

      _____
      Vice President

      CRYPTIC MASONS MEDICAL RESEARCH FDTN.

By: _____
      James A. Kirkbride, President

By: _____
      Marion K. Crum, PMIGM, Secretary

## SCHEDULE 'A' (SCHEDULE OF COSTS)

EACH PACKAGE MAILED COSTS THE ORGANIZATION TWO DOLLARS AND FIFTY CENTS ($2.50) PLUS APPLICABLE POSTAGE AND BANK CHARGES.

THE $2.50 COST TO THE ORGANIZATION INCLUDES THE FOLLOWING:

A)    Special assortment of first quality Greeting Cards, outstanding beautiful designs, packed into an attractive box;

B)    Cover letter, return envelope and addressed mailing card, all assembled for mailing;

C)    Addressing of mailing card and sorting for Postal Service breakdown, counting and banding:

D)    Collating and assembling above, sort, tie, sack and deliver to the Post Office;

E)    Preparing two (2) reminder notices, supplying letter, return envelopes, mailing envelopes, addressing assembling, sort, tie, sack and deliver to Post Office; and

F)    Preparation of the presend option letter for mailing and supplying all materials in the first year only.

## NOT INCLUDED IN THE $2.50 COST TO THE ORGANIZATION ARE:

A)    Actual postage for mailing packages and reminder notices shall be billed separately and shall be an expense of the Program and paid by the Program; and

B)    All bank charges relating to the handling of members contributions shall be billed separately and shall be an expense of the Program and paid by the Program.

Quantity of packages mailed to be substantiated by "Senders's Statement and Certificate of Bulk Mailing" on USPS Form 3602, as issued by the United States Postal Service.

**B**

# AGREEMENT

Agreement made as of this 13th day of August 1991, by and between Vantage Studios, a division of Vantage Financial Services, Inc., 111 Cypress Street, Brookline, MA  02146  (hereinafter referred to as VANTAGE), and

**Ohio Scottish Rite**
**c/o Al Rice**
**1105 Alnetta Drive**
**Cincinnati, Ohio   45230**

(Hereinafter referred to as ORGANIZATION)

## WITNESSETH

WHEREAS, VANTAGE has expertise in the areas of direct mail marketing and group solicitation; and

WHEREAS, ORGANIZATION desires to avail itself of VANTAGE'S expertise in the foregoing areas, in the solicitation of ORGANIZATION'S membership and others in one or more Fund Raising Programs;

NOW, THEREFORE, in consideration of the mutual covenants herein contained, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1.    VANTAGE or its designated agents shall distribute among the membership of ORGANIZATION and among such other lists as may be furnished to VANTAGE by ORGANIZATION, or by any of the ORGANIZATION'S members (collectively, the "Lists"), a special product throughout the year.  Lists shall be supplied by ORGANIZATION on computer tape in a form usable without further conversion or adaptation by VANTAGE.  If any list is not maintained on a computer in a form usable without further conversion or adaptation by Vantage then either ORGANIZATION or VANTAGE shall have the necessary conversion performed.  The cost of the lists furnished and any conversion costs involved shall be an expense of the FUND RAISING PROGRAM (PROGRAM) and paid from the PROGRAM as provided in Paragraph 6 hereof.

2.  VANTAGE or its designated agents shall prepare a master file from the Lists furnished as provided in Paragraph 1. This master file plus all additions thereto, shall be at all times, and shall remain the exclusive property of ORGANIZATION'S and no use of same, except as outlined in this Agreement, can be made by VANTAGE or its designated agents without the prior written consent of ORGANIZATION.

3.  All solicitation literature used for any PROGRAM shall be approved by a Representative of ORGANIZATION prior to printing.  Upon approval all printed matter will be deemed the property of ORGANIZATION.   In the event no Representative shall be so designated, any action which requires the approval of such Representative may be taken by VANTAGE in good faith, without such approval.

4.  VANTAGE or its designated agents shall perform and supply all the work necessary for implementing the PROGRAM as more particularly described on Schedule "A" attached hereto, including maintaining the master file and preparing the pre-send option letter and TWO (2) reminder notices to all ORGANIZATION members that do not make a contribution for or return the product.

5.  The funds received from the ORGANIZATION'S PROGRAM will be deposited at least weekly in an interest bearing bank account in the name of the ORGANIZATION. ORGANIZATION will provide VANTAGE with a report of the collection activity associated with the PROGRAM.

6.  For its services to be rendered hereunder, VANTAGE shall be paid as follows:

    (a)   All actual postage for mailing the pre-send option letter, product and TWO (2) reminder notices, bank services charges (if applicable) plus the List conversion costs described in Paragraph 1 hereof, is the responsibility of the ORGANIZATION and shall be paid to VANTAGE, as these costs are incurred and invoiced to ORGANIZATION.  The quantity of packages mailed is to be substantiated by Form 3602, supplied by the United States Postal Service;

    (b)   After postage and other costs described in subparagraph (a) are paid then ORGANIZATION shall pay to VANTAGE $2.50 per package mailed.

- 2 -

(c)    In the event that gross collections associated with a PROGRAM are insufficient to cover the expenses and costs described in subparagraph (a) & (b), above, then the ORGANIZATION will be billed by VANTAGE for the shortfall, which will be due and payable within 30 days of invoice.

7.    The cost of any additional services rendered to the ORGANIZATION will be billed separately by VANTAGE and will be due and payable within 30 days of invoice.

8.    The term of this Agreement shall be for a period of TWO (2) years commencing the date hereof and shall continue thereafter from year to year until terminated as herein provided. This Agreement may not be cancelled until the completion of the first program which includes pre-send option letter, product, and follow-up notice(s) and other mailings as described in sub paragraph 6 (c). Upon failure of both parties to give written notice of termination of on or before January 1, 1993 effective with the end of the then active PROGRAM, then this Agreement shall continue from year to year unless written notice of termination by the party desiring to terminate this Agreement shall be given on or before the second day of January of the year in which termination is desired, such termination to be effective no sooner than completion of the then current Fund Raising PROGRAM.

9.    Costs itemized in this Agreement do not include any postage. It is mutually agreed that costs of postage are to be billed to the ORGANIZATION accordance with postage rates at the time of mailing the pre-send option letter, package and reminder notice(s). Costs of postage are the direct responsibility of the ORGANIZATION.

10.    In the event of termination of this Agreement by either VANTAGE or ORGANIZATION pursuant to the provisions of paragraph 8 hereof, or upon the expiration of this Agreement, or upon its termination for any other reason, then ORGANIZATION shall have the right to acquire the master file referred to in paragraph 2 hereof. VANTAGE'S obligation in this regard is limited to delivery of such master file in its then existing form, without conversion, adaptation or other action. As a condition to VANTAGE'S obligation in this regard, ORGANIZATION shall pay to VANTAGE, in advance, the cost of shipping the master file.

in partial consideration of the undertakings of VANTAGE described in this Agreement, ORGANIZATION agrees that in the event it conducts negotiations for the promotion of a Fund Raising Program with anyone else, after the expiration of the Agreement or any renewal thereof, it shall give VANTAGE the option of meeting the same terms and conditions as such other person, firm or corporation shall offer to conduct said PROGRAM for said ORGANIZATION for the duration of this AGREEMENT.

12. ORGANIZATION and its membership shall render such assistance to VANTAGE or its designated agents not inconsistent with its Charter and By-Laws.

13. Miscellaneous:

(a)   All notices permitted or required hereunder shall be in writing and shall be effective when received after being sent by hand delivery, by telecopy, or by certified mail, postage prepaid, return receipt requested, at the following address:

If to VANTAGE:

       Vantage Studios
       c/o Vantage Financial Services, Inc.
       111 Cypress Street
       Brookline, MA   02146

       ATTN:  Richard L. Jarvis, General Manager

If to ORGANIZATION:

       Ohio Scottish Rite
       1105 Alnetta Drive
       Cincinnati, Ohio   45230

       ATTN:  Al Rice

or to such other address as either party hereto may designate in a notice given pursuant to this Section 13 to the other party.

(b)   This Agreement constitutes the entire agreement between the parties to this Agreement with respect to the subject matter of this Agreement.

- 4 -

(c) Neither this Agreement nor any provision hereof may be assigned, expressly or by operation of law, by either party to any person without the prior written consent of the other party.

(d) This Agreement may be executed in any number of counterparts, each of which shall be deemed an original. All Exhibits referred to herein are incorporated by reference and are part of this Agreement as if fully set forth herein.

(e) This Agreement shall be governed by and construed in accordance with the laws of the Commonwealth of Massachusetts applicable to contracts made and to be performed therein.

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date first above written.

VANTAGE FINANCIAL SERVICES, INC.

By: _____
Lawrence C. Lyon

By: _____
Richard L. Jarvis

OHIO SCOTTISH RITE

By: _____
Thereunto duly authorized

By: _____

## SCHEDULE 'A'
## SCHEDULE OF COSTS
## GREETING CARD PROGRAM

Each package mailed costs the PROGRAM $2.50 plus applicable postage and bank charges.

The $2.50 cost to the PROGRAM includes the following:

A)  Special assortment of first quality Greeting Cards, outstanding, beautiful designs, packed into an attractive box;

B)  Cover letter, return envelope and addressed mailing card, all assembled for mailing;

C)  Addressing of mailing card and sorting for Postal Service breakdown, counting and banding;

D)  Collating and assembling above, sort, tie, sack and deliver to the Post Office;

E)  Preparing two (2) reminder notices, supplying letter, return envelopes, mailing envelopes, addressing, assembling, sort, tie, sack and deliver to Post Office; and

F)  Preparation of the presend option letter for mailing and supplying all materials in the first year only.

NOT INCLUDED IN THE $2.50 COST TO THE PROGRAM ARE:

A)  Actual postage for mailing packages and reminder notices shall be billed separately and shall be an expense of the PROGRAM and paid by the PROGRAM; and

B)  All bank charges relating to the handling of members' contributions shall be billed separately and shall be an expense of the PROGRAM and paid by the PROGRAM.

Quantity of packages mailed to be substantiated by "Senders Statement and Certificate of Bulk Mailing" on USPS Form 3602 as issued by the U.S. Postal Service.

C

# Vantage Studios

## Product Specialists in the Art of Giving

A Divison of Vantage Financial Services, Inc.

Mr. Al Rice
Ohio Scottish Rite
1105 Alnetta Drive
Cincinnati, Ohio   45230

August 13, 1991

COPY

Dear Mr. Rice:

    Confirming our conversation regarding the distribution of gross receipts for the greeting card program, Vantage Studios has agreed to the following:

From the proceeds of the card program:

(A) Vantage Studios will allow The Ohio Scottish Rite to keep the first $.50 per box of cards mailed as advanced profits for the fund-raising program.  Subsequent proceeds will be applied to the program cost:  Once these costs are paid in full then all future proceeds will go to The Ohio Scottish Rite  .

(B) In the event that proceeds from the program are insufficient to cover the expenses, then Vantage Studios shall have the right to extend the program and mail to the known contributors until such shortfall is eliminated.

(C) To prevent The Ohio Scottish Rite from reporting any financial liability, Vantage Studios agrees not to invoice The Ohio Scottish Rite until sufficient funds are collected to cover the invoice.

    This letter supercedes the payment method described in paragraph six (6) of this Agreement and will serve to affirm our mutual understanding of the financial arrangements associated with the greeting card fund-raising program.

501383

111 CYPRESS STREET ■ BROOKLINE, MA 02146
617-734-8000 ■ TOLL-FREE 800-634-2180 ■ TELEX 752281 ■ TELEFAX 617-277-0911

D

**UNITED STATES POSTAL SERVICE**

# Statement of Mailing with Permit Imprints
## Third-Class Mail (Nonprofit Rates Only)

PRODUCT VS169

**MAILER: Complete all items by typewriter, pen, or indelible pencil. Prepare in duplicate if you need a receipt.**

| Post Office of Mailing | Date | Processing Category | USPS Authorized Mailing ID Code(s) |
|---|---|---|---|
| Randolph, MA | 9/27/93 | ☐ Letters (DMM 128.2) ☐ Flats (DMM 128.31) ☐ Automation-Compatible Flats (DMM 128.32) ☐ Machinable Parcels (DMM 128.4) ☐ Irregular Parcels (DMM 128.5) ☐ Outside Parcels (DMM 128.6) | |

**Mailer's Information**

Permit No. **155**

Mailing Statement Seq. No.

| Permit Holder's Name & Address (Include ZIP Code) | Telephone Number | Receipt No | | |
|---|---|---|---|---|

| | | No. Sacks | No. Trays | No. Pallets | No. Other |
|---|---|---|---|---|---|

Irish National Caucus, Inc.

Washington D.C.

Weight of a Single Piece ___ . ___ ___ ___ ___ pounds

Authorized to use nonprofit rates? (DMM 625)*  ☑ Yes  ☐ No

| Total Pieces in Mailing | Total Weight of Mailing | Sacking Based on |
|---|---|---|
| 19,246 | | ☐ 125 pcs. ☐ 15 lbs. ☐ Both (DMM 641) |

Name & Address of Individual or Organization for Which Mailing is Prepared (If other than the permit holder)

Name and Address of Mailing Agent* (If other than the permit holder)

Century Mailing Co., Inc.
64 Teed Drive
Randolph, MA  02368

**Check All That Apply**
☐ Centralized Postage Payment
☐ Plant Loaded at
☐ Plant Verified Drop Shipment to
☐ Entered at
☐ Orig. ☐ Dest. A/O ZIP _____
☐ Orig. ☐ Dest. SCF 3D ZIP _____
☐ Orig. ☐ Dest. BMC _____

Authorized to use nonprofit rates? (DMM 625)*  ☐ Yes  ☐ No

**Postage Computation**

- For bulk mailings of automation-compatible letter-size pieces (see DMM 521), go to Part A on the reverse of this form.
- For bulk mailings of non-automation compatible letter-size pieces (see DMM 128.2) weighing .2085 lb. (3.3363 oz.) or less, go to Part B on the reverse of this form.
- For bulk mailings of non letter-size pieces (see DMM 128.2) weighing .2085 lb. (3.3363 oz.) or less, go to Part C on the reverse of this form.
- For bulk mailings of all pieces weighing more than .2085 lb. (3.3363 oz.) but less than 1.0 lb. (16.0 oz.), go to Part D on the reverse of this form.

Postage (From Reverse Side) ►

| Part A | $ 1933.20 |
|---|---|
| Part B | $ |
| Part C | $ |
| Part D | $ |

Single Piece Rate ☐ or Additional Postage Payment (State reasons for Additional Postage)

| | No. Pieces | Rate/Piece $ | = $ |
|---|---|---|---|

Is applicable bulk per piece rate affixed to each piece? (Form 3602-PC required)  ☐ Yes  ☐ No

**Total Postage ──────►  $ 1933.20**

**Certification**

*The signature of a mailer certifies that: (1) the mailing does not violate DMM 625; (2) only the mailer's matter is being mailed; (3) this is not a cooperative mailing with other persons or organizations and is not authorized to mail at special bulk third-class rates at this office; (4) this mailing has not been undertaken by the mailer on behalf of or produced for another person or organization not authorized to mail at special bulk third-class rates at this office; and (5) it will be liable for and agrees to pay, subject to appeals prescribed by postal laws and regulations, any revenue deficiencies assessed on this mailing, whether due to a finding that the mailing is cooperative or for other reasons. (If this form is signed by an agent, the agent certifies that it is authorized to sign this statement, that the certification binds the agent and the nonprofit mailer, and that both the nonprofit mailer and the agent will be liable for and agree to pay any deficiencies.)

The submission of a false, fictitious or fraudulent statement may result in imprisonment of up to 5 years and a fine of up to $10,000 (18 USC 1001). In addition, a civil penalty of up to $5,000 and an additional assessment of twice the amount falsely claimed may be imposed (31 USC 3802).

I hereby certify that all information furnished on this form is accurate and truthful, and that this material presented qualifies for the rates of postage claimed.

Signature of Permit Holder or Agent (Both principal and agent are liable for any postage deficiency incurred)

Telephone Number **961-1900**

**USPS Use Only**

| Single Piece Weight ___ . ___ ___ ___ ___ pounds | Are the figures at left adjusted from mailer's entries? ☐ Yes ☐ No  If "Yes" Reason |
|---|---|

| Total Pieces | Total Weight |
|---|---|

Total Postage

| Check One ☐ Verif. Not Scheduled ☐ formed as Scheduled | Presort Verification Performed as Scheduled | Date Mailer Notified | Contact | By (Initials) |
|---|---|---|---|---|

I CERTIFY that this mailing has been inspected concerning: 1) eligibility for the rate of postage claimed; 2) proper preparation (and presort where required); 3) proper completion of the statement of mailing; and (4) payment of the required annual fee.

Round Stamp (Required)

| Signature of Weigher | Time ___ AM ___ PM |
|---|---|

S Form **3602-N**, October 1992

Financial Document – Forward to Finance Office

# Form 3602-N — Third Class Nonprofit Rate — Permit Imprint

## Postage Computation — Bulk Rates

### Automation-Compatible Letter (DMM 521)

| Entry Discount (If Any) | Presort/Automation Discounts | Net Rate | Count (Pcs/Lbs) | Charge |
|---|---|---|---|---|
| None | Saturation W/S | .071 × | _____ pcs. = $ _____ | |
| | Carrier Route | .074 × | _____ pcs. = $ _____ | |
| | 5-Digit Barcoded | .081 × | _____ pcs. = $ _____ | |
| | 3-Digit Barcoded | .088 × | _____ pcs. = $ _____ | |
| | 3/5-Digit ZIP + 4 | .094 × | 7120 pcs. = $ 669.28 | |
| | 3/5-Digit Presort | .098 × | 315 pcs. = $ 30.87 | |
| | Basic ZIP + 4 Barcoded | .094 × | _____ pcs. = $ _____ | |
| | Basic ZIP + 4 | .104 × | 1,134 pcs. = $ 153.76 | |
| | Basic | .111 × | 678 pcs. = $ 74.31 | |
| BMC Entry | Saturation W/S | .059 × | _____ pcs. = $ _____ | |
| | Carrier Route | .062 × | _____ pcs. = $ _____ | |
| | 5-Digit Barcoded | .069 × | _____ pcs. = $ _____ | |
| | 3-Digit Barcoded | .076 × | _____ pcs. = $ _____ | |
| | 3/5-Digit ZIP + 4 | .082 × | _____ pcs. = $ _____ | |
| | 3/5-Digit Presort | .066 × | _____ pcs. = $ _____ | |
| | Basic ZIP + 4 Barcoded | .082 × | _____ pcs. = $ _____ | |
| | Basic ZIP + 4 | .092 × | _____ pcs. = $ _____ | |
| | Basic | .099 × | _____ pcs. = $ _____ | |
| SCF Entry | Saturation W/S | .054 × | _____ pcs. = $ _____ | |
| | Carrier Route | .057 × | _____ pcs. = $ _____ | |
| | 5-Digit Barcoded | .064 × | _____ pcs. = $ _____ | |
| | 3-Digit Barcoded | .071 × | _____ pcs. = $ _____ | |
| | 3/5-Digit ZIP + 4 | .077 × | _____ pcs. = $ _____ | |
| | 3/5-Digit Presort | .081 × | _____ pcs. = $ _____ | |
| | Basic ZIP + 4 Barcoded | .077 × | _____ pcs. = $ _____ | |
| | Basic ZIP + 4 | .087 × | _____ pcs. = $ _____ | |
| | Basic | .094 × | _____ pcs. = $ _____ | |
| DDU Entry | Saturation W/S | .049 × | _____ pcs. = $ _____ | |
| | Carrier Route | .052 × | _____ pcs. = $ _____ | |

**Total – Part A (Carry to front of form)** $ 1935.20

### Check one: ☐ Automation-Compatible Flat (DMM 522) ☐ Other Nonletter – .2085 lb. (3.3363 oz.) or less

| Entry Discount | Presort/Automation Discounts | Net Rate | Count | Charge |
|---|---|---|---|---|
| None | Saturation W/S | .112 × | _____ pcs. = $ _____ | |
| | 125-pc. W/S | .117 × | _____ pcs. = $ _____ | |
| | Carrier Route | .119 × | _____ pcs. = $ _____ | |
| | 3/5-Digit ZIP + 4 Barcoded* | .133 × | _____ pcs. = $ _____ | |
| | 3/5-Digit Presort | .150 × | _____ pcs. = $ _____ | |
| | Basic ZIP + 4 Barcoded* | .139 × | _____ pcs. = $ _____ | |
| | Basic | .164 × | _____ pcs. = $ _____ | |
| BMC Entry | Saturation W/S | .100 × | _____ pcs. = $ _____ | |
| | 125-pc. W/S | .105 × | _____ pcs. = $ _____ | |
| | Carrier Route | .107 × | _____ pcs. = $ _____ | |
| | 3/5-Digit ZIP + 4 Barcoded* | .121 × | _____ pcs. = $ _____ | |
| | 3/5-Digit Presort | .138 × | _____ pcs. = $ _____ | |
| | Basic ZIP + 4 Barcoded* | .127 × | _____ pcs. = $ _____ | |
| | Basic | .152 × | _____ pcs. = $ _____ | |
| SCF Entry | Saturation W/S | .095 × | _____ pcs. = $ _____ | |
| | 125-pc. W/S | .100 × | _____ pcs. = $ _____ | |
| | Carrier Route | .102 × | _____ pcs. = $ _____ | |
| | 3/5-Digit ZIP + 4 Barcoded* | .116 × | _____ pcs. = $ _____ | |
| | 3/5-Digit Presort | .133 × | _____ pcs. = $ _____ | |
| | Basic ZIP + 4 Barcoded* | .122 × | _____ pcs. = $ _____ | |
| | Basic | .147 × | _____ pcs. = $ _____ | |
| DDU Entry | Saturation W/S | .090 × | _____ pcs. = $ _____ | |
| | 125-pc. W/S | .095 × | _____ pcs. = $ _____ | |
| | Carrier Route | .097 × | _____ pcs. = $ _____ | |

Available only for Automation-Compatible Flats (DMM 522)

**Total – Part C (Carry to front of form)** $ _____

---

### Non-Automation Compatible Letter .2085 lb. (3.3363 oz.) or less

| Entry Discount | Presort/Automation Discounts | Net Rate | Count | Charge |
|---|---|---|---|---|
| None | Saturation W/S | .071 × | _____ pcs. = $ _____ | |
| | Carrier Route | .074 × | _____ pcs. = $ _____ | |
| | 3/5-Digit Presort | .098 × | _____ pcs. = $ _____ | |
| | Basic | .111 × | _____ pcs. = $ _____ | |
| BMC Entry | Saturation W/S | .059 × | _____ pcs. = $ _____ | |
| | Carrier Route | .062 × | _____ pcs. = $ _____ | |
| | 3/5-Digit Presort | .086 × | _____ pcs. = $ _____ | |
| | Basic | .099 × | _____ pcs. = $ _____ | |
| SCF Entry | Saturation W/S | .054 × | _____ pcs. = $ _____ | |
| | Carrier Route | .057 × | _____ pcs. = $ _____ | |
| | 3/5-Digit Presort | .081 × | _____ pcs. = $ _____ | |
| | Basic | .094 × | _____ pcs. = $ _____ | |
| DDU Entry | Saturation W/S | .049 × | _____ pcs. = $ _____ | |
| | Carrier Route | .052 × | _____ pcs. = $ _____ | |

**Total – Part B (Carry to front of form)** $ _____

### Check one: ☐ Letter** ☐ Automation-Compatible Flat (DMM 522) ☐ Other Nonletter – More than .2085 lb. (3.3363 oz.) But less than 1.0 lb. (16.0 oz.)

| Entry Discount | Presort/Automation Discounts | Net Rate | Count | Charge |
|---|---|---|---|---|
| None | Saturation W/S plus | .019 × / .446 × | _____ pcs. = $ _____ / _____ lbs. = $ _____ | |
| | 125-pc. W/S plus | .024 × / .446 × | _____ pcs. = $ _____ / _____ lbs. = $ _____ | |
| | Carrier Route plus | .026 × / .446 × | _____ pcs. = $ _____ / _____ lbs. = $ _____ | |
| | 3/5-Digit ZIP + 4 Barcoded* plus | .040 × / .446 × | _____ pcs. = $ _____ / _____ lbs. = $ _____ | |
| | 3/5-Digit Presort plus | .057 × / .446 × | _____ pcs. = $ _____ / _____ lbs. = $ _____ | |
| | Basic ZIP + 4 Barcoded* plus | .046 × / .446 × | _____ pcs. = $ _____ / _____ lbs. = $ _____ | |
| | Basic plus | .071 × / .446 × | _____ pcs. = $ _____ / _____ lbs. = $ _____ | |
| BMC Entry | Saturation W/S plus | .019 × / .388 × | _____ pcs. = $ _____ / _____ lbs. = $ _____ | |
| | 125-pc. W/S plus | .024 × / .388 × | _____ pcs. = $ _____ / _____ lbs. = $ _____ | |
| | Carrier Route plus | .026 × / .388 × | _____ pcs. = $ _____ / _____ lbs. = $ _____ | |
| | 3/5-Digit ZIP + 4 Barcoded* plus | .040 × / .388 × | _____ pcs. = $ _____ / _____ lbs. = $ _____ | |
| | 3/5-Digit Presort plus | .057 × / .388 × | _____ pcs. = $ _____ / _____ lbs. = $ _____ | |
| | Basic ZIP + 4 Barcoded* plus | .046 × / .388 × | _____ pcs. = $ _____ / _____ lbs. = $ _____ | |
| | Basic plus | .071 × / .388 × | _____ pcs. = $ _____ / _____ lbs. = $ _____ | |
| SCF Entry | Saturation W/S plus | .019 × / .365 × | _____ pcs. = $ _____ / _____ lbs. = $ _____ | |
| | 125-pc. W/S plus | .024 × / .365 × | _____ pcs. = $ _____ / _____ lbs. = $ _____ | |
| | Carrier Route plus | .026 × / .365 × | _____ pcs. = $ _____ / _____ lbs. = $ _____ | |
| | 3/5-Digit ZIP + 4 Barcoded* plus | .040 × / .365 × | _____ pcs. = $ _____ / _____ lbs. = $ _____ | |
| | 3/5-Digit Presort plus | .057 × / .365 × | _____ pcs. = $ _____ / _____ lbs. = $ _____ | |
| | Basic ZIP + 4 Barcoded* plus | .046 × / .365 × | _____ pcs. = $ _____ / _____ lbs. = $ _____ | |
| | Basic plus | .071 × / .365 × | _____ pcs. = $ _____ / _____ lbs. = $ _____ | |
| DDU Entry | Saturation W/S plus | .019 × / .342 × | _____ pcs. = $ _____ / _____ lbs. = $ _____ | |
| | 125-pc. W/S plus | .024 × / .342 × | _____ pcs. = $ _____ / _____ lbs. = $ _____ | |
| | Carrier Route plus | .026 × / .342 × | _____ pcs. = $ _____ / _____ lbs. = $ _____ | |

*Available only for Automation-Compatible Flats (DMM 522)
**Letter-size pieces cannot be claimed at 125-piece W/S rate

**Total – Part D (Carry to front of form)** $ _____

## GENERAL RELEASE

This General Release is made as of this 11 day of February, 1998, by Laurence A. Saklad.

## PREMISES

WHEREAS, Saklad was an employee of Vantage Travel Service, Inc. ("Vantage") from on or about January 27, 1992 to on or about September 23, 1992.

WHEREAS, Henry R. Lewis is the President and Chief Executive Officer of Vantage (collectively, "Defendants").

WHEREAS, on or about March 18, 1994, Laurence A. Saklad ("Saklad" or "Plaintiff") commenced an action in Middlesex Superior Court, Civil Action No. 94-1629, by filing a complaint against the Defendants based on, inter alia, alleged employment discrimination.

WHEREAS, an entry of final judgment was entered, with the assent of Plaintiff, in favor of Vantage on June 12, 1997.

WHEREAS, Defendants have denied and continue to deny that any of Plaintiff's alleged claims have merit and have denied and continue to deny that Vantage or Lewis discriminated against the Plaintiff, engaged in any wrongdoing towards him, or incurred any legal liability whatsoever.

WHEREAS, Plaintiff has been advised and represented by Vincent G. Campanella, a member of the Bar of the Commonwealth of Massachusetts, in connection with his claims against Defendants and the possible resolution of such claims.

WHEREAS, to avoid further expense, distraction and conflict, the parties to this Agreement now desire to resolve amicably the claims Plaintiff has asserted, and any and all existing and potential claims by Plaintiff against Lewis, Vantage, or their related entities, successors, or assigns, as described more completely below.

NOW, THEREFORE, in consideration of the Settlement Agreement between the parties and for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties agree as follows:

With the exception of any claims arising out of the performance or non-performance of any obligation set forth in the Settlement Agreement between the parties, Plaintiff, on his own behalf, and on behalf of his heirs, executors, administrators, and assigns, hereby fully releases and dischargse, and covenants not to sue, file administrative charges, or make any claims, against Lewis and Vantage and any of their past, present or future directors, trustees, officers, agentes, attorneys, employees, representatives, insurers, parents, subsidiaries, affiliates, related entities, insurers, heirs executors, successors, or assigns (hereinafter individually and collectively referred as "Releasees") from and with respect to any and all claims, demands, charges, liabilities, actions, causes of action, and suits, whatsoever of every name and nature, in law or equity, whether know or unknown, suspected or unsuspected, and whether or not concealed or hidden, which Plaintiff has, may have, or may have had against Releasees, from the beginning of time, including without limitation any and all claims arising out of or directly or indirectly related to his employment with Vantage and his relationships with Lewis. Plaintiff understands and

2

acknowledges that the claims released in this paragraph include, but are not limited to, any claims that were or could have been asserted in Civil Action No. 94-1629.

LAURENCE A. SAKLAD,

VINCENT G. CAMPANELLA,
Attorney for Laurence A. Saklad

Attorney for Laurence Saklad
BBO# 554414
CAMPANELLA & FUSILLO
Lewis Wharf, Bay 232
Boston, MA 02110-3927
617-248-8888

363988.01

HENRY R. LEWIS,
Chief Executive Officer,
Vantage Travel Service, Inc.

FRANCES S. COHEN,
Attorney for Henry R. Lewis and
Vantage Travel Service, Inc.

Attorney for Henry R. Lewis
BBO# 542811
HILL & BARLOW,
  a Professional Corporation
One International Place
Boston, MA 02110
617-428-3000

3