**EXHIBIT** L

# Mahoney, Hawkes & Goldings, LLP

ATTORNEYS AND COUNSELLORS AT LAW

The Heritage on the Garden • 75 Park Plaza • Boston, Massachusetts 02116
Telephone: 617.457.3100 • Facsimile: 617.457.5125

## Facsimile Transmittal

| | | | |
|---|---|---|---|
| To: | Jay Fleisher, Esq. | Date: | September 21, 2000 |
| Firm: | Shriners Hospitals for Children | Client No: | 3729-1 |
| Fax No: | **813-281-0943** | Tele. No: | 813-281-0300 |
| From | Brian W. LeClair, Esq. | Sender Direct Dial: | 617-210-1495 |
| Re: | | Pages Sent: (Including Cover) | 6 |

☐ Urgent    ☐ Reply ASAP    ☐ Please Comment    ☐ For Your Review

Message:

*MORRIS GOLDINGS — OUT A MTL*
*(ANYTHING OTHER THAN A YES*
*WILL BE INTERPRETED AS A NO).*

SHC 00930

☐ Original Will Follow Via:                    ☐ Original Will Not Follow
☐ Regular Mail    ☐ Overnight Delivery    ☐ Hand Delivery    ☐ Other

Time Sent: _____  ☐ AM ☐ PM    _____  Fax Operator

Call 617.210.1527 with any problems.

CONFIDENTIALITY NOTICE: This facsimile contains privileged and confidential information intended only for the use of the individual or entity named above. If the reader of this facsimile is not the intended recipient or the employee or agent responsible for delivering it to the intended recipient, you are hereby notified that any dissemination or copying of this facsimile is strictly prohibited. If you have received this facsimile in error, please notify us immediately by telephone (collect) and return the original facsimile to us at the above address via U.S. Postal Service. We will reimburse you for postage. Thank you.



# MAHONEY, HAWKES & GOLDINGS, LLP
ATTORNEYS AND COUNSELLORS AT LAW

Morris M. Goldings
Loyd M. Starrett
William S. Hawkes
Mark Peters
Frances Allou Gershwin
Bruce Winthrop Edmands
James B. Cox
Laurence M. Johnson
Daniel J. Goldberg
Douglas L. Jones
Brian W. LeClair
Richard S. Jacobs
Matthew P. Zayotti
Brenda A. Buan
Alison J. Little
Angela M. Cox

Diane Rubin
Of Counsel

Direct Dial
(617) 210-

September 21, 2000

**BY FACSIMILE TRANSFER**
Jay Fleisher, Esquire
Shriners Hospitals for Children
P.O. Box 31356
Tampa, Florida 33631-3356

    Re:   Vantage Group

Dear Mr. Fleisher:

    We represent The Vantage Group in connection with an action entitled <u>U.S. ex rel Saklad v. Vantage Travel Services Inc.</u>, No. 97-10052 on the docket of the United States District Court for Massachusetts.

    In 1998, the Postal Service sent letters seeking information and documents from Vantage's customers concerning historical communications and transactions with Vantage. Vantage moved for an order restraining the Postal Service from contacting the customers and related relief. There follow excerpts of a July 23, 1998 hearing transcript on Vantage's motion. If you examine pages 26-7, you will see that Judge Lindsay, the sitting emergency judge, ordered that the Postal Service not send any more letters to charities without first obtaining leave from Judge Wolfe, to whom the case had been assigned. At no time subsequent to that hearing has the Postal Service sought, or the court granted leave for the Postal Service to contact Vantage's customers or vacated Judge Lindsay's July 23, 1998 Order.

    We understand that your client, the Shriners Hospitals for Children, may have recently received a letter from the Postal Service requesting historical information concerning communications or transactions with Vantage. We believe any such letter would have violated Judge Lindsay's order. In recent communications with the United States Attorney's office in Boston, we have advised them that we believe any letters sent to Vantage's customers violate Judge Lindsay's order and that we are considering seeking sanctions.

    Should you have any questions, please do not hesitate to call.

           Sincerely,

           Brian W. LeClair

Enclosure/63497

SHC 00931

*9/22 fyi copy faxed to Ted C.*

UNITED STATES DISTRICT COURT FOR
DISTRICT OF MASSACHUSETTS


Civil Action No. 97-10052
*******************************
UNITED STATES OF AMERICA


Vs.


VANTAGE TRAVEL SERVICE and
HENRY R. LEWIS
*******************************


TRO MOTION HEARING
BEFORE THE HONORABLE REGINALD C. LINDSAY
UNITED STATES DISTRICT JUDGE


Courtroom No. 12, 3rd Floor
Post Office & Courthouse Building
Boston, Massachusetts 02109
July 23, 1998


APPEARANCES:

John Capin, AUSA, on behalf of the government.

Morris M. Goldings, Esq., on behalf of the defendant.


Teri Celeste Gibson, Official Court Reporter
605 U.S.P.O. & Courthouse Building
Boston, Massachusetts 02109
(617) 423-6614

Mechanical stenography; computer aided transcription.

25

1   letters out before the case started.

2         MR. GOLDINGS:  No, he did not say that.

3         THE COURT:  He said that in his papers.  Didn't you

4   tell me in your papers that before you -- didn't you tell me

5   in your papers before you that these things happened before

6   the complaint was filed or before the government had

7   intervened?

8         MR. CAPIN:  No.  These letters went out after the

9   case developed.  These letters could not go out until the

10   case was unsealed which happened when we intervened.

11         THE COURT:  So the litigation had been done?

12         MR. CAPIN:  That's correct, Your Honor.  I feel

13   obligated to correct something on the record.  I think I said

14   in telling the court how many nonprofit organizations we have

15   told Vantage or implicated in this civil action, that there

16   were 130, give or take a dozen.  I didn't mean to suggest

17   that we sent a dozen letters.

18         THE COURT:  No, I understand.  Okay.  So you sent

19   this letter out to these charities in connection with this

20   litigation.

21         MR. CAPIN:  That's correct.

22         THE COURT:  So that you -- if I hear what you are

23   saying, you took advantage -- the government took advantage

24   of powers that it would have had in the absence of litigation

25   to use this in the course of litigation to get this

1   information, which means that I take it your position would

2   be that as litigation proceeds, you can continue to do this

3   because you have the right under these regulations to do

4   this; is that going -- would that be your position?

5          What difference does it make that you have a right

6   to give a subpoena?

7          Couldn't you just send these letters out anytime

8   you wanted to?

9          MR. CAPIN:  I think this particular letter could go

10  out at any time.  I think any time during the course of civil

11  litigation, any litigant has the right to send a witness or

12  potential witness a letter asking for information.

13          THE COURT:  No, but --

14          MR. CAPIN:  If that litigant then responds to the

15  Postal Service and says, "What right have you to gather this

16  information?"  If I were to read to them the applicable

17  regulations, I don't think I would be doing anything

18  different from what I am doing now, and I don't think I would

19  be doing anything that is outside of the rules.

20          Mr. Goldings is suggesting, somehow, that his

21  client has a proprietary right to know who we are contacting,

22  to have -- to be CC'd, copied on letters to nonparty

23  witnesses.  There is simply no support in the rules, and the

24  bankruptcy analogy just simply doesn't hold.

25          THE COURT:  Here is what I'm going to do.  I am

SHC 00934

1    going to -- I am going to order that you not send anymore

2    letters like this out to any of these charities, pending a

3    scheduling conference by Judge Wolf at which time I will have

4    Judge Wolf make the decision.

5         I will ask -- you can put the question to Judge

6    Wolf about how -- what happens with respect to the letters

7    that have already gone out, but at the scheduling conference,

8    Judge Wolf with presumably set a schedule and determine what

9    method of discovery there will be, and it seems to me one of

10   the things you want to discuss with him is whether you can

11   send letters like this out to charities or contact charities,

12   independently.

13        I think you can do that, frankly, but I don't think

14   you should send any more letters until Judge Wolf has had an

15   opportunity to review this in the context of an overall

16   schedule of discovery in this case, and then the question

17   becomes what happens with the people you already notified.

18        MR. GOLDINGS:  That's why I rose.  At the very

19   least we would like to know who he notified.  I would really

20   like an order that he be required to say something to them.

21        THE COURT:  What about that?  You say that is your

22   work product.  It seems to me -- I am not sure why that is

23   work  product.  Tell me why that is work product, what

24   persons you talked to?

25        MR. CAPIN:  Your Honor, if during the course of