UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

VANTAGE FINANCIAL SERVICES, INC.
Plaintiff,

v.

NONPROFIT SERVICE GROUP AND
GEORGE E. MILLER,
Defendants.

C.A. No. 04-11686-WGY

## PLAINTIFF'S RESPONSES TO DEFENDANTS' FIRST REQUEST FOR ADMISSIONS

Pursuant to Rule 36(a), F.R.Civ.P., solely for purposes of the above-entitled action, Plaintiff Vantage Financial Services, Inc. makes the following responses to Defendants' First Request for Admissions:

**Request No. 1.** The net profit earned by the Plaintiff from the Contract exceeded $2,250,000.00.

**Response No. 1.** Plaintiff is unable to truthfully admit or deny this request because, although Plaintiff has made reasonable inquiry, information known or readily obtainable by Plaintiff is insufficient to enable it to admit or deny for the reasons set forth at length below: Plaintiff does not determine the "net profit" on individual contracts, or even on all contracts with particular customers. A determination of Plaintiff's "net profit" on the Shriners' Contract would require consideration of considerably more than the revenues received and the direct expenses incurred by Plaintiff in the performance of the contract. It would also require calculation of Plaintiff's unallocated general and administrative expenses during the period of Plaintiff's performance of the contract, the determination of an appropriate method for allocating such expenses among all of the contracts that were performed by Plaintiff during that period, and the application of such method to the Shriners' Contract in order to derive an amount of general and

administrative expenses properly chargeable against the revenues received from performance of the Shriners' Contract. That process would require engagement of competent and experienced accountants to analyze Plaintiff's business operations (including but not limited to consideration of the importance of the Shriners' Contract in Plaintiff's overall fundraising operations during the period), review its financial records and develop the information necessary to determine the net profit realized on the Shriners' Contract in order to respond to this Request. The Shriners' Contract was performed over a period of several years and any such accounting analysis would involve the analysis of several years of financial data and would involve very substantial expense. Plaintiff's obligation to respond to discovery does not require that it incur such expense in order to be able to respond to Defendants' Requests for Admissions.

Request No. 2.   Prior to executing the Contract, the Plaintiff assured the Shriners that the Shriners would not be liable for any shortfalls under the Contract.

**Response No. 2.**   Denied.

Request No. 3.   Prior to executing the Contract, Defendants advised the Plaintiff that the Shriners were required to be liable for any shortfalls under the Contract in order for the Contract to comply with the Cooperative Mail Rule.

**Response No. 3.**   Denied.

Request No. 4.   Prior to executing the Contract, Plaintiff was aware of the provisions the Cooperative Mail Rule.

**Response No. 4.**   Plaintiff admits that it was aware of the existence and text of the Cooperative Mail Rule prior to executing the Contract. Plaintiff denies that it was aware of the application of the Cooperative Mail Rule to the Contract drafted by Defendants as interpreted by the United States Postal Service.

Request No. 5.   There has been no judicial determination that the Contract violated the Cooperative Mail Rule.

**Response No. 5.** Plaintiff cannot admit or deny this request because it involves an interpretation of rulings by the United States District Court in the underlying *Qui Tam* case. That Court made judicial determinations with respect to the Contract, concluding in effect that the Contract violated the Cooperative Mail Rule unless it could be shown that payment of Shriners' liability under the contract through Plaintiff's right to rent the Shriners' mailing list to other companies for a three year period made payment to Vantage so certain that the contract was the same as a full recourse contract. See, Memorandum and Order of March 5, 2004 in *United States ex rel. Laurence Saklad v. Henry R. Lewis, et als,* D.Mass. C.A. No. 97-10052-MLW (Wolf, J.). Plaintiff believes that that order constituted a judicial determination that the Contract violates the Cooperative Mail Rule but recognizes that whether or not it does involves a matter of interpretation of the Memorandum and Order.

**Request No. 6.** Payment-in-kind by use of a non-profit mailing list was consistent with a methodology which the entire industry had used for many years prior to the creation of the Contract and was viewed as unexceptional, and was never challenged or questioned by the United States Postal Service.

**Response No. 6.** Denied.

**Request No. 7.** Having the ability to rent or sell the Shriners mailing list for a period of three years would produce a huge amount of income, certainly enough to cover any shortfall under the Contract, and it is generally accepted in the industry as the way a shortfall is made up by a mailer such as the Plaintiff.

**Response No. 7.** (a) **Objection:** Plaintiff objects to this Request on the grounds that it is compound, conclusory, speculative and contains the term "huge" which leaves imprecise and indecipherable what is meant. (b) **Response:** Subject to the foregoing objections, Plaintiff responds as follows: With respect to that portion of the Request that refers to what is "generally accepted in the industry as the way a shortfall is made up by a mailer such as the Plaintiff" Plaintiff denies that any such practice was "generally accepted in the industry." With respect to the remainder of this Request, Plaintiff is unable to admit or deny the request because there is no

-3-

way to determine what amount of income, if any, sale or rental of the Shriners' mailing list would have produced, much less whether such amount could be considered "huge."

Request No. 8.    Prior to entering into the Contract the Plaintiff was aware that payment-in-kind through the use of a non-profit entity's mailing list was an accepted practice in the industry of which the Plaintiff was an active participant and that such contract provisions were understood by the Plaintiff to comply with the Cooperative Mail Rule.

Response No. 8.    Plaintiff denies that payment-in-kind through use of a non-profit entity's mailing list was an accepted practice in the non-profit fundraising industry, admits that it was an active participant in that industry, further admits only that it then understood that such contract provisions complied with the Cooperative Mail Rule solely on the basis of Defendants' advice to that effect and denies this Request in every other respect.

Request No. 9.    Pursuant to the terms of the Contract, the Shriners assumed complete and full responsibility for payment of all postage incurred as a result of the performance of the Contract.

Response No. 9.    **Objection:** Plaintiff objects to this request on the ground that it calls for interpretation of the Contract. While a portion of Paragraph 2 of the Contract purports to so provide, that provision must be read together Paragraph 7.3.2 and 7.3.3 which provide for the payment of postage out of the Program Account and with Paragraph 13.1 which provides that, in the event of termination of the Contract by Shriners without cause, Shriners has the option to limit Plaintiff to collection of amounts owed on its billing statements (including postage) to sale or rental of the Shriners' mailing list and/or further Donor Renewal Mailings. Accordingly, it is unclear, at best, whether the Contract in fact provides for Shriners' complete and unconditional liability for the payment of postage incurred in performance of the Contract.

Request No. 10.    Plaintiff agreed to indemnify the Shriners for any liability for postal revenue deficiencies paid as a result of the underlying action.

Response No. 10.    Admitted.

  <u>Request No. 11.</u>  Prior to agreeing to indemnify the Shriners for any liability for postal revenue deficiencies as a result of the performance of the Contract, Plaintiff was entitled to be reimbursed by the Shriners for any postal deficiencies the Plaintiff had to pay as a result of the underlying action.

  **<u>Response No. 11.</u>**  Plaintiff is unable to admit or deny this Request because it is unclear, as a matter of law, and there are no means of securing a judicial determination as to whether Shriners would have been legally obligated to indemnify Plaintiff for such postal deficiencies.

  <u>Request No. 12.</u>  Plaintiff's charges to the Shriners for all mailings made under the Contract included a product markup of a least 50%.

  **<u>Response No. 12.</u>**  Denied.

  <u>Request No. 13.</u>  Plaintiff's charges to the Shriners for all mailings made under the Contract included a product markup of a least 70%.

  **<u>Response No. 13.</u>**  Denied.

  <u>Request No. 14.</u>  Plaintiff's charges to the Shriners for all mailings made under the Contract included a product markup of 100%.

  **<u>Response No. 14.</u>**  Denied.

  <u>Request No. 15.</u>  Laurence Johnson, Esq. Participated in the negotiation of the settlement of the underlying action.

  **<u>Response No. 15.</u>**  Admitted.

  <u>Request No. 16.</u>  Laurence Johnson, Esq. Provided advice and counsel to Plaintiffs concerning the settlement of the underlying action.

  **<u>Response No. 16.</u>**  Admitted.

  <u>Request No. 17.</u>  Pursuant to the terms for the Contract, Vantage had no obligation whatsoever for payment of postage.

  **<u>Response No. 17.</u>**  **Objection:** Plaintiff objects to this request on the ground that it calls for interpretation of the Contract. While a portion of Paragraph 2 of the Contract purports

to so provide, that provision must be read together Paragraph 7.3.2 and 7.3.3 which provide for the payment of postage out of the Program Account and with Paragraph 13.1 which provides that, in the event of termination of the Contract by Shriners without cause, Shriners has the option to remit Plaintiff to collection of amounts owed on its billing statements (including postage) to sale or rental of the Shriners' mailing list and/or further Donor Renewal Mailings. Accordingly, it is unclear, at best, whether the Contract in fact provides for Shriners' complete and unconditional liability for the payment of postage incurred in performance of the Contract.

Request No. 18.   With respect to the funds paid to settle the underlying action, Plaintiff did not agree with the United States as to the allocation of such funds to any particular fundraising programs that were a subject of the underlying action.

**Response No. 18.**   Admitted.

Request No. 19.   With respect to the funds paid to settle the underlying action, Plaintiff did not discuss with the United States any allocation of such funds to any particular fundraising programs that were a subject of the underlying action.

**Response No. 19.**   Admitted.

Request No. 20.   There is no evidence that the Shriners would have entered into the Contract if any of its terms were different from the terms of the "Agreement to Provide Fund Raising, Consulting and Management Service" executed by the Shriners on June 17, 1999 and executed by Vantage Financial Services Inc. on June 22, 1999.

**Response No. 20.**   Plaintiff is unable to admit or deny this request because neither discovery nor its additional investigation of the facts that are the subject matter of this request is complete and until the completion of same, Plaintiff cannot determine whether evidence exists that Shriners would have entered into a fundraising services contract differing in any respects from that prepared by Defendants.

Request No. 21.   The Shriners would not have entered into the Contract if any of its terms were different from the terms of the "Agreement to Provide Fund Raising, Consulting and Management Services" executed by the Shriners on June 17, 1999 and executed by Vantage Financial Services Inc. on June 22, 1999.

**Response No. 21.** Plaintiff is unable to admit or deny this request because neither discovery nor its additional investigation of the facts that are the subject matter of this request is complete and until the completion of same, Plaintiff cannot determine whether evidence exists that Shriners would have entered into a fundraising services contract differing in any respects from that prepared by Defendants.

Request No. 22. The funds paid by the Plaintiff to settle the claims concerning the Shriners Contract underlying action were a necessary cost to Plaintiff of entering into the business relationship with the Shriners that is a subject of the complaint in this action.

**Response No. 22.** Denied.

Signed under the pains and penalties of perjury this Second day of May, 2005.

VANTAGE FINANCIAL SERVICES, INC.

By *Ted L. Sykes*

Ted L. Sykes, its Secretary

**As to objections:**

VANTAGE FINANCIAL SERVICES, INC.
By its Attorneys,

Laurence M. Johnson, Esq. (BBO #252720)
Davis, Malm & D'Agostine, P.C.
One Boston Place
Boston, MA 02108
(617) 367-2500
ljohnson@davismalm.com

I HEREBY CERTIFY THAT A TRUE COPY OF THE ABOVE DOCUMENT WAS SERVED UPON THE ATTORNEY OF RECORD FOR EACH PARTY BY MAIL/HAND ON *Richard Policia*

362373v.1

-7-