## MAHONEY, HAWKES & GOLDINGS, LLP
ATTORNEYS AND COUNSELLORS AT LAW

The Heritage on the Garden • 75 Park Plaza • Boston, Massachusetts 02116
Telephone: 617.457.3100 • Facsimile: 617.457.3125

## FACSIMILE TRANSMITTAL

| | | | |
|---|---|---|---|
| TO: | Jay Fleisher, Esq. | DATE: | September 21, 2000 |
| FIRM: | Shriners Hospitals for Children | CLIENT NO: | 3729-1 |
| FAX NO: | **813-281-0943** | TELE. NO: | 813-281-0300 |
| FROM: | Brian W. LeClair, Esq. | SENDER DIRECT DIAL: | 617-210-1495 |
| RE: | | PAGES SENT: (INCLUDING COVER) | 6 |

☐ URGENT    ☐ REPLY ASAP    ☐ PLEASE COMMENT    ☐ FOR YOUR REVIEW

MESSAGE:

*Morris Goldings — out ntl (anything other than a yes will be interpreted as a no).*

SHC 00930

☐ ORIGINAL WILL FOLLOW VIA:        ☐ ORIGINAL WILL NOT FOLLOW
☐ REGULAR MAIL    ☐ OVERNIGHT DELIVERY    ☐ HAND DELIVERY    ☐ OTHER
TIME SENT: _____    ☐ AM ☐ PM    _____ FAX OPERATOR
CALL 617.210-1527 WITH ANY PROBLEMS.

CONFIDENTIALITY NOTICE: THIS FACSIMILE CONTAINS PRIVILEGED AND CONFIDENTIAL INFORMATION INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY NAMED ABOVE. IF THE READER OF THIS FACSIMILE IS NOT THE INTENDED RECIPIENT OR THE EMPLOYEE OR AGENT RESPONSIBLE FOR DELIVERING IT TO THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION OR COPYING OF THIS FACSIMILE IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS FACSIMILE IN ERROR, PLEASE NOTIFY US IMMEDIATELY BY TELEPHONE (COLLECT) AND RETURN THE ORIGINAL FACSIMILE TO US AT THE ABOVE ADDRESS VIA U.S. POSTAL SERVICE. WE WILL REIMBURSE YOU FOR POSTAGE. THANK YOU.

# MAHONEY, HAWKES & GOLDINGS, LLP
## ATTORNEYS AND COUNSELLORS AT LAW

Morris M. Goldings
Loyd M. Starrett
William S. Hawkes
Mark Peters
Frances Allou Gershwin
Bruce Winthrop Edmands
James B. Cox
Laurence M. Johnson
Daniel J. Goldberg
Douglas L. Jones
Brian W. LeClair
Richard S. Jacobs
Matthew P. Zayotti
Brenda A. Buan
Alison J. Little
Angela M. Cox

Diane Rubin
Of Counsel

Direct Dial
(617) 210-

September 21, 2000

**BY FACSIMILE TRANSFER**
Jay Fleisher, Esquire
Shriners Hospitals for Children
P.O. Box 31356
Tampa, Florida 33631-3356

Re: Vantage Group

Dear Mr. Fleisher:

We represent The Vantage Group in connection with an action entitled U.S. ex rel Saklad v. Vantage Travel Services Inc., No. 97-10052 on the docket of the United States District Court for Massachusetts.

In 1998, the Postal Service sent letters seeking information and documents from Vantage's customers concerning historical communications and transactions with Vantage. Vantage moved for an order restraining the Postal Service from contacting the customers and related relief. There follow excerpts of a July 23, 1998 hearing transcript on Vantage's motion. If you examine pages 26-7, you will see that Judge Lindsay, the sitting emergency judge, ordered that the Postal Service not send any more letters to charities without first obtaining leave from Judge Wolfe, to whom the case had been assigned. At no time subsequent to that hearing has the Postal Service sought, or the court granted leave for the Postal Service to contact Vantage's customers or vacated Judge Lindsay's July 23, 1998 Order.

We understand that your client, the Shriners Hospitals for Children, may have recently received a letter from the Postal Service requesting historical information concerning communications or transactions with Vantage. We believe any such letter would have violated Judge Lindsay's order. In recent communications with the United States Attorney's office in Boston, we have advised them that we believe any letters sent to Vantage's customers violate Judge Lindsay's order and that we are considering seeking sanctions.

Should you have any questions, please do not hesitate to call.

Sincerely,

Brian W. LeClair

Enclosure/63497

SHC 00931

The Heritage on the Garden • 75 Park Plaza • Boston, Massachusetts 02116
Telephone: 617.457.3100 • Facsimile: 617.457.3125

9/22 fyi copy faxed to Ted C.

UNITED STATES DISTRICT COURT FOR
DISTRICT OF MASSACHUSETTS

Civil Action No. 97-10052
*******************************
UNITED STATES OF AMERICA

Vs.

VANTAGE TRAVEL SERVICE and
HENRY R. LEWIS
*******************************

TRO MOTION HEARING
BEFORE THE HONORABLE REGINALD C. LINDSAY
UNITED STATES DISTRICT JUDGE

Courtroom No. 12, 3rd Floor
Post Office & Courthouse Building
Boston, Massachusetts 02109
July 23, 1998

APPEARANCES:

John Capin, AUSA, on behalf of the government.

Morris M. Goldings, Esq., on behalf of the defendant.

Teri Celeste Gibson, Official Court Reporter
605 U.S.P.O. & Courthouse Building
Boston, Massachusetts 02109
(617) 423-6614

Mechanical stenography; computer aided transcription.

SHC 00932

1  letters out before the case started.
2          MR. GOLDINGS: No, he did not say that.
3          THE COURT: He said that in his papers. Didn't you
4  tell me in your papers that before you -- didn't you tell me
5  in your papers before you that these things happened before
6  the complaint was filed or before the government had
7  intervened?
8          MR. CAPIN: No. These letters went out after the
9  case developed. These letters could not go out until the
10 case was unsealed which happened when we intervened.
11         THE COURT: So the litigation had been done?
12         MR. CAPIN: That's correct, Your Honor. I feel
13 obligated to correct something on the record. I think I said
14 in telling the court how many nonprofit organizations we have
15 told Vantage or implicated in this civil action, that there
16 were 130, give or take a dozen. I didn't mean to suggest
17 that we sent a dozen letters.
18         THE COURT: No, I understand. Okay. So you sent
19 this letter out to these charities in connection with this
20 litigation.
21         MR. CAPIN: That's correct.
22         THE COURT: So that you -- if I hear what you are
23 saying, you took advantage -- the government took advantage
24 of powers that it would have had in the absence of litigation
25 to use this in the course of litigation to get this

```
 1   information, which means that I take it your position would
 2   be that as litigation proceeds, you can continue to do this
 3   because you have the right under these regulations to do
 4   this; is that going -- would that be your position?
 5           What difference does it make that you have a right
 6   to give a subpoena?
 7           Couldn't you just send these letters out anytime
 8   you wanted to?
 9           MR. CAPIN:  I think this particular letter could go
10   out at any time.  I think any time during the course of civil
11   litigation, any litigant has the right to send a witness or
12   potential witness a letter asking for information.
13           THE COURT:  No, but --
14           MR. CAPIN:  If that litigant then responds to the
15   Postal Service and says, "What right have you to gather this
16   information?"  If I were to read to them the applicable
17   regulations, I don't think I would be doing anything
18   different from what I am doing now, and I don't think I would
19   be doing anything that is outside of the rules.
20           Mr. Goldings is suggesting, somehow, that his
21   client has a proprietary right to know who we are contacting,
22   to have -- to be CC'd, copied on letters to nonparty
23   witnesses.  There is simply no support in the rules, and the
24   bankruptcy analogy just simply doesn't hold.
25           THE COURT:  Here is what I'm going to do.  I am
```

1  going to -- I am going to order that you not send anymore
2  letters like this out to any of these charities, pending a
3  scheduling conference by Judge Wolf at which time I will have
4  Judge Wolf make the decision.
5        I will ask -- you can put the question to Judge
6  Wolf about how -- what happens with respect to the letters
7  that have already gone out, but at the scheduling conference,
8  Judge Wolf with presumably set a schedule and determine what
9  method of discovery there will be, and it seems to me one of
10 the things you want to discuss with him is whether you can
11 send letters like this out to charities or contact charities,
12 independently.
13       I think you can do that, frankly, but I don't think
14 you should send any more letters until Judge Wolf has had an
15 opportunity to review this in the context of an overall
16 schedule of discovery in this case, and then the question
17 becomes what happens with the people you already notified.
18       MR. GOLDINGS: That's why I rose. At the very
19 least we would like to know who he notified. I would really
20 like an order that he be required to say something to them.
21       THE COURT: What about that? You say that is your
22 work product. It seems to me -- I am not sure why that is
23 work product. Tell me why that is work product, what
24 persons you talked to?
25       MR. CAPIN: Your Honor, if during the course of