```
                                                         198
                                          VOLUME: 2
                                          PAGES: 198-312
                                          EXHIBITS: 17-22


              UNITED STATES DISTRICT COURT
           FOR THE DISTRICT OF MASSACHUSETTS
      - - - - - - - - - - - - - - - - - x
      VANTAGE FINANCIAL SERVICES, INC.,
                       Plaintiff,
         v.                                Civil Action
      NONPROFIT SERVICE GROUP and          No. 04-11686-WGY
      GEORGE MILLER,
                       Defendants.
      - - - - - - - - - - - - - - - - - x


         CONTINUED DEPOSITION of GEORGE E. MILLER
                    October 7, 2005
                      12:01 p.m.
              Davis, Malm & D'Agostine, P.C.
                    One Boston Place
                  Boston, Massachusetts



         Reporter: Michael D. O'Connor, RPR
```

JONES REPORTING COMPANY
617-451-8900

George E. Miller

237

1     A.   No, I don't.

2     Q.   Do you have a memory of discussing that subject with them at some point?

4     A.   Yes. It became apparent that the parties would not reach an agreement without the Shrine getting some assurance that they would be able to pay the cost of the program from the revenue that the program generated. Vantage wanted to reach an agreement with the Shrine.

    If you look at these early drafts, the risk for the cost of the program is placed on the Shrine. So the question of collateral or security was not an issue then.

14     Q.   Was the Shrine position that they wanted only to have to pay for the costs of the program out of the revenues raised from the program or was their position that they didn't want to have to pay for the costs of the program by having to dip into their own cash assets?

20     A.   I'm not sure I understand what the question was.

22     Q.   I will try to find a way to put it that you do understand, sir.

    Was their position that they only wanted to

1   services at-risk requirements as expressed in the
2   Cooperative Mail Rule?
3       A.   I think I told both Mr. Lyon and Mr.
4   Melikian that I thought, given the contract and the
5   pro forma, which was part of the contract, that the
6   language in 13.2 would satisfy the postal service's
7   Cooperative Mail Rule, and I still believe that.
8       Q.   Did you tell them in words, substance or
9   effect, that you had utilized very similar
10  provisions in previous contracts that you had
11  prepared for either fund-raisers or nonprofits?
12          MR. NAHIGIAN: Objection to the form of the
13  question.
14      A.   I certainly, I think, said that I had
15  drafted contracts which had similar provisions in
16  them.
17      Q.   Did you tell either Mr. Lyon or Mr.
18  Melikian in words, substance or effect that
19  provisions very similar to those appearing in the
20  Shriners agreement, and particularly in Paragraph
21  13.2 of the Shriners agreement, were common in the
22  industry?
23          MR. NAHIGIAN: Objection to the form of the
24  question.

George E. Mill                                                          290

1   A.   No.

2   Q.   Did you tell either Mr. Lyon or Mr.
3   Melikian in words, substance or effect that
4   provisions similar to those used in the Shriners
5   agreement had never been objected to or challenged
6   by the postal service?

7        MR. NAHIGIAN: Objection.

8   A.   Provisions providing for additional
9   mailings or provisions providing for list rental
10  income to be used to satisfy any kind of shortfall,
11  yes.

12  Q.   Now, putting aside whether you think that
13  there's a significant difference or not between a
14  provision simply providing that income from rental
15  or exchange of a donor list can be used as security
16  or collateral to satisfy a nonprofit's payment
17  obligations as opposed to a provision which gives
18  the nonprofit the right to remit the fund-raiser as
19  its sole source to the income from such donor list
20  use, were you aware, sir, in fact, at that time, of
21  any fund-raiser agreement that either you or anybody
22  else had prepared which remitted a for-profit
23  fund-raiser for payment solely to the proceeds to be
24  realized from rental or exchange of a donor list and