UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| VANTAGE FINANCIAL SERVICES, INC.<br>      Plaintiff<br><br>v.<br><br>NONPROFIT SERVICE GROUP, INC. and<br>GEORGE E. MILLER<br>      Defendants | CIVIL ACTION NO. 04-11686WGY |

## DEFENDANTS' RULE 56.1 STATEMENT OF UNDISPUTED FACTS

Defendants George E. Miller and Nonprofit Service Group, Inc. set forth the following

statement of material facts as to which there is no genuine issue to be tried.

### UNDERLYING FACTS

1.      Vantage is engaged in the business of providing fundraising services to nonprofit

organizations. (Complaint, ¶7 attached as Exhibit "1" to the Affidavit of Matthew J. Griffin,

"Griffin Aff." attached hereto as Exhibit "A").

2.      In or about 1999, Vantage became involved in the negotiation of a substantial

fundraising services contract with Shriners.  (Complaint, ¶10).

> While Shriners wanted to be able to mail its fundraising mailings
> at not-for-profit postal rates, Shriners had nonetheless demanded,
> during the course of the negotiations, that any fundraising services
> contract with Vantage include terms that limited its liability to pay
> Vantage for its fundraising services and out-of-pocket expenses
> from Shriners' cash assets in the event that the fundraising
> programs failed to raise sufficient amounts to pay [Vantage's
> fundraising fees] out of the fundraising proceeds.

(Complaint, ¶11).

3.      Defendants spent over two months in the negotiation and drafting process that resulted in an Agreement to Provide Fundraising, Consulting and Management Services (the "Agreement").  During that time, at least six drafts of the Agreement were produced. (Deposition of Jay Fleisher, "Fleisher Tr." at pp. 73-74, attached as Exhibit "2" to Griffin Aff.).

4.      Jay Fleisher, Shriners' legal counsel involved in drafting the agreement, testified at deposition that he was not concerned that the Agreement presented CMR compliance issues because he had consulted outside counsel, the late William Lehrfeld, who had advised that the Agreement was in compliance with the CMR.  (Fleisher Tr. at pp. 22-23; 66; 97-98).

5.      Jay Fleisher and Ralph Semb, a Shriners Board member who was involved in the negotiations which resulted in the Agreement, testified at deposition that Shriners would not have executed the Agreement had it contained payment provisions different from those that were actually employed.  (Fleisher Tr. at pp. 96; 194-195; Deposition of Ralph Semb at pp. 32-36 attached as Exhibit "3" to Griffin Aff.)

6.      Shriners considered and rejected certain alternative payment provisions.  These included a loan agreement proposed by defendant George Miller in which the cost of postage under the Agreement would be advanced to Shriners, as well as eliminating the thirty-six month time limit on the period of time that Vantage could rent Shriners' donor list to defray outstanding fundraising expenses after the termination of the Agreement. (Fleisher Tr. at pp. 43-45; 70-72).

7.      At the time of the negotiations with Shriners, Vantage was defending a civil action in the United States District Court for the District of Massachusetts.  (The "*Qui Tam* case").  In the *Qui Tam* Case, the United States Government (the "Government") alleged that Vantage had improperly mailed fundraising materials on behalf of nonprofit organizations at reduced not-for-profit postal rates. (Complaint ¶8).

8.      According to the Government, it was improper under the CMR for Vantage to mail fundraising solicitations at the reduced nonprofit postage rate because Vantage had agreed to limit its nonprofit customers' liability to pay Vantage for its fundraising services and out-of-pocket expenses in the event that Vantage's fundraising efforts failed to raise sufficient amounts to pay its fees and expenses.  (Complaint, ¶8).

9.      Vantage alleges that it retained defendants to assist in the preparation of a fundraising agreement with Shriners that not only would comply with the CMR, but also would (1) permit Vantage to mail at the reduced nonprofit postage rate, and (2) satisfy Shriners' demand that its liability to pay for Vantage's services be limited to amounts raised through Vantage's fundraising efforts.  (Complaint, ¶¶11-13).

10.     Vantage also alleges that defendants represented that the resulting Agreement "would be effective to avoid any violation of the CMR and protect Vantage from possible claims with respect to mailings at not-for-profit postal rates made pursuant to the Contract and from any exposure to additional liability on claims such as those being asserted in the [*Qui Tam* Case]." (Complaint, ¶17).

11.     According to the Complaint, defendants advised Vantage that the Agreement contained provisions providing for payment of Vantage's fees and expenses that were similar to those employed in other nonprofit fundraising contracts, and that none of those provisions had been questioned, objected to or challenged by the United States Postal Service (the "Postal Service").  (Complaint, ¶17).

12.     Notwithstanding defendants' efforts to help produce a fundraising agreement that satisfied both the requirements of the CMR and Shriners' demand that its liability be limited to fundraising proceeds, the Government took the position that the Agreement violated the CMR

and incorporated the Agreement into its claims for damages in the *Qui Tam* Case.  (Complaint, ¶19).

13.    The court in the *Qui Tam* case never actually ruled that the Agreement violated the CMR.  Instead, the court acknowledged that the Agreement permitted Vantage to rent the Shriners' donor list for thirty-six months to defray outstanding fundraising expenses.  The court agreed that this constituted "payment in kind" that could satisfy the requirements of the CMR. The court noted, however, that Vantage had failed to offer any evidence that thirty-six months of list rental income would be enough to defray any outstanding fundraising expenses.  The court therefore concluded that it was unable to rule on this issue because Vantage had failed to designate an expert on the value of the list rental income and to introduce critical evidence on this issue.  While this left the Government's postal revenue deficiency claim pending, the court did hold that Vantage and its principals were not liable under the False Claims Act as a result of Vantage's reliance on defendants' expertise.  (3/5/2004 Memorandum and Order (Wolf, J.) at pp. 16-19 attached as Exhibit "4" to Griffin Aff.).

14.    Vantage made at least $15 million in gross profit from the Agreement. (Deposition of Lawrence C. Lyon "Lyon Tr." at p. 117, attached as Exhibit "5" to Griffin Aff.).

## VANTAGE'S CAUSES OF ACTION

15.    On the basis of the allegations actually pleaded in the Complaint, Vantage originally sought recovery under five causes of action: breach of contract (Count I), negligence (Count II), fraudulent misrepresentation (Count III), negligent misrepresentation (Count IV), and violation of M.G.L. c.93A (Count V).  (Complaint)

16.    On October 26, 2005, the court dismissed Counts III (fraudulent misrepresentation) and V (violation of M.G.L. c.93A) on summary judgment.

17.    Of the surviving causes of action, Vantage's negligence claim alleges that defendants breached

> [a] duty to exercise reasonable professional skill and care and, in particular, to exercise the degree of care that a reasonable attorney holding himself out as a specialist in "charitable solicitation law, including compliance with state regulations, negotiating settlements, and fundraising contract drafting and enforcement" would have exercised in the circumstances.

(Complaint, ¶30).

18.    Vantage's breach of contract claim contains identical language to that asserted in its negligence claim. (Complaint, ¶27).

19.    Vantage's remaining claim, for negligent misrepresentation, fails to specify what alleged misrepresentations are referred to therein.  Count IV of the Complaint simply alleges that defendants, "and each of them, knew of [sic] ought to have known that the aforesaid representations were false."  (Complaint, ¶42).

20.    Count III, which is incorporated by reference into Count IV (negligent misrepresentation), alleges that defendants falsely represented

> that they were skilled and experienced in advising nonprofits and their professional fundraisers in "charitable solicitation law, including compliance with state regulations, negotiating settlements, and fundraising contract drafting and enforcement," and that they had the experience and ability to prepare a contract that would satisfy Shriners' requirement for limitations on its liability to pay for Vantage's fundraising services out of Shriners' own cash assets while at the same time, complying with the requirements of the CMR and shielding Vantage from exposure to additional liability in the [*Qui Tam* case].  [Defendants] further represented that the draft contract that [defendants] prepared for use with Shriners effectively met these objectives.

(Complaint, ¶34).

21.    While Vantage has recently relied on a statement made by one of its former employees during a deposition that defendant George E. Miller stated that the Agreement had

been approved by the Postal Service, this allegation appears nowhere in the Complaint.  Vantage employee Lawrence Lyon testified at deposition that he never asked defendants to seek the Postal Service's approval before the Agreement was executed.  (Lyon Tr. at pp. 102-103).

22.    Vantage's corporate designee under Fed. R. Civ. P. 30(b)(6) expressly agreed that Vantage's profits under the Agreement exceeded the amount of the damages it claims in this case.  (Deposition of Harry Melikian at p. 182, attached as Exhibit "6" to Griffin Aff.).

## DEFENDANTS' EXPERT

23.    Defendants have designated two experts, including Robert S. Tigner, Esq. who is also general counsel to the Association of Direct Response Fundraising Counsel (ADRFCO) and regulatory counsel to the Nonprofit Federation of the Direct Marketing Association (DMANF).  (Expert Report of Robert S. Tigner, Esq., attached as Exhibit "7" to Griffin Aff.).

## PLAINTIFFS HAVE NO EXPERT

24.    Plaintiffs have not disclosed any expert witnesses.

Respectfully submitted,
Nonprofit Service Group, Inc. and
George E. Miller,
By their attorneys,

/s/ Matthew J. Griffin
Richard L. Nahigian
BBO No. 549096
Matthew J. Griffin
BBO No. 641720
Peabody & Arnold LLP
30 Rowes Wharf
Boston, MA 02110
(617) 951-2100

PABOS2:MJGRIFF:626918_1
14794-90433