# EXHIBIT 3

Page 1

```
 1    IN THE UNITED STATES DISTRICT COURT
      FOR THE DISTRICT OF MASSACHUSETTS
 2
 3
      --------------->
 4    VANTAGE FINANCIAL SERVICES,  :
      INC.,                        :
 5                                 :
        Plaintiff,                 :
 6                                 : CASE NO.: 04-11686-WGY
      vs                           :
 7                                 :
      NONPROFIT SERVICE GROUP and  :
 8    GEORGE MILLER,               :
 9      Defendants.                :
                                   :
10    --------------->
11
12    DEPOSITION OF:    RALPH W. SEMB
13    TAKEN:            Pursuant to Notice by
                        Counsel for Plaintiff
14
      DATE:             October 28, 2005
15
      PLACE:            Shriners Hospital
16                      2900 Rocky Point Drive
                        Tampa, Florida
17
      TIME:             1:00 p.m. to 1:52 p.m.
18
      REPORTED BY:      Shelly Noriega, RPR
19                      Notary Public
                        State of Florida at Large
20
21
                Pages 1 - 41
22
23
24
25
```

Page 2

```
 1    APPEARANCES:
 2
 3      LAURENCE M. JOHNSON, ESQUIRE
        Davis, Malm & D'Agostine, P.C.
 4      One Boston Place
        Boston, Massachusetts 02108
 5      617-589-3810
        Ljohnson@davismalm.com
 6
          Appeared on behalf of Plaintiff
 7
 8
 9      MATTHEW J. GRIFFIN, ESQUIRE
        Peabody & Arnold, LLP
10      30 Rowes Wharf
        Boston, Massachusetts 02110-3342
11      617-951-2009
        Mjgriffin@peabodyarnold.com
12
          Appeared on behalf of Defendants
13
14
15      MACKENZIE CANTER, III, ESQUIRE
        Copilevitz & Canter, LLC
16      Suite 215
        1900 L Street, NW
17      Washington, DC 20036
        202-861-0740
18      Maccanter@aol.com
19        Appeared on behalf of Shriners Hospital
20
21
22
23
24
25
```

Page 3

```
 1              INDEX
 2                                          PAGE
 3    Examination by Mr. Johnson............4, 32, 37
 4    Examination by Mr. Griffin.............32, 36
 5    Certificate of Reporter......................39
 6    Errata Sheet.................................40
 7    Read and Sign Letter.........................41
 8
 9
10           INDEX OF EXHIBITS
11    NUMBER                               PAGE
12      1    Affidavit.........................27
13
         (Exhibits retained by Mr. Johnson.)
14
15
16
17
18
19
20
21
22
23
24
25
```

Page 4

```
 1        The deposition of RALPH W. SEMB, taken pursuant to
 2   notice by counsel for the Plaintiff, on October 28, 2005,
 3   commencing at 1:00 p.m., at Shriners Hospital, 2900 Rocky
 4   Point Drive, Tampa, Florida, before Shelly Noriega, RPR,
 5   Notary Public, State of Florida at Large.
 6            RALPH W. SEMB,
 7   having been duly sworn to tell the truth, the whole
 8   truth, and nothing but the truth, was examined and
 9   testified as follows:
10            EXAMINATION
11   BY MR. JOHNSON:
12     Q   Good afternoon, Mr. Semb.  I'm Laurence
13   Johnson, and I represent the plaintiff Vantage Financial
14   Services in this case.  Would you just identify yourself
15   by giving your full name for the record.
16     A   I'm Ralph W. Semb, S-E-M-B.  I'm from Erving,
17   Massachusetts, and I'm the chairman of the board of
18   trustees, Shriners Hospitals for Children.
19     Q   In May and June of 1999 did you have an
20   association with Shriners Hospitals for Children?
21     A   Yes.
22     Q   What position did you hold at that time, sir?
23     A   May and June of 1999, I was --
24     Q   If there's any difference, why don't we just
25   make it the spring of '99, say February on.
```

1

Page 29

1    A    Correct.
2    Q    Now, in the last paragraph of that affidavit,
3　Mr. Semb, you referred to some of the provisions of
4　Paragraph 13.2 of the agreement as executed and you say
5　that "with respect to that that Shriners would not have
6　entered into the agreement absent the inclusion of that
7　provision in Paragraph 13.2 as written." Do you see that
8　language?
9    A    Upon conclusion of said 36-month period, is
10   that what you're referring to?
11   Q    No, the statement below that.
12   A    "Shriners would not have entered into the
13   agreement absent the inclusion" -- that's correct.
14   Q    Absent the inclusion of Paragraph 13.2 of the
15　agreement as written?
16   A    Would not have entered into the agreement
17   absent the inclusion, yes, sir.
18   Q    Okay. Now, that language was -- the language
19　of whoever prepared the affidavit was not your language,
20　was it?
21   A    Not mine.
22   Q    Okay. Is it fair to say, Mr. Semb, that when
23　you signed that affidavit that what you intended to
24　communicate by that language was that in your
25　understanding SHC would not have entered into the Vantage

Page 30

1　agreement without the inclusion of a provision such as
2　that appearing in Paragraph 13.2 which gave you adequate
3　assurance -- gave SHC adequate assurance that it would
4　not have to pay for program charges out of its own
5　nonprogram-related resources?
6        MR. GRIFFIN: Objection.
7    A    True.
8  BY MR. JOHNSON:
9    Q    I take it you weren't intending to communicate
10　by that language that you thought that SHC was
11　irretrievably wedded to the precise words of Paragraph
12　13.2 and to nothing else?
13       MR. GRIFFIN: Objection.
14   A    Say it again.
15 BY MR. JOHNSON:
16   Q    Okay. Yeah. When you said in that last
17　statement of your affidavit that SHC wouldn't have
18　entered into an agreement without the provision of
19　Paragraph 13.2 as written, you weren't intending to say
20　that SHC was irretrievably wedded to the precise words of
21　Paragraph 13.2 and that it wouldn't have entered into an
22　agreement with Shriners with Vantage without those
23　provisions with those exact words?
24       MR. GRIFFIN: Objection.
25   A    All I know is we entered into an agreement that

Page 31

1　it would not cost us anything and I'm assuming that's
2　exactly what that meant.
3  BY MR. JOHNSON:
4    Q    And what you intended to communicate in that
5　statement in your affidavit was that a provision such as
6　that in Paragraph 13.2 which provided in SHC's estimate
7　satisfactory assurance that it wouldn't have to cut a
8　check from its own resources to pay for program charges
9　you wouldn't have entered into the agreement with Vantage
10　absent that kind of a provision?
11   A    That's true.
12       MR. GRIFFIN: Object.
13 BY MR. JOHNSON:
14   Q    That what's you were intending to communicate?
15   A    Yes.
16   Q    That's really all you were intending to
17　communicate, isn't it?
18   A    That we would not cost Shriners Hospital
19   anything and we needed to be assured of that.
20       MR. JOHNSON: Okay. Thank you, sir. I have no
21　further questions.
22            EXAMINATION
23 BY MR. GRIFFIN:
24   Q    I have one question. Sitting here today there
25　is no way you can say whether you would have agreed to

Page 32

1　any different form of the contract than the one that's
2　set forth in Exhibit 2 to Jay Fleisher's deposition; is
3　that correct?
4    A    Yes.
5        MR. GRIFFIN: Thanks.
6            EXAMINATION
7  BY MR. JOHNSON:
8    Q    By that, I take it you mean there's no way you
9　can say one way or the other what you would have agreed
10　to some --
11   A    I wouldn't have agreed to any other provision,
12   I don't believe.
13   Q    Well, when you say you wouldn't have agreed to
14　any other provision, didn't you just tell me a moment
15　ago, Mr. Semb, that your concern with respect to this
16　matter was that SHC was not going to be in a position of
17　ever having to pay for any shortfall on this program out
18　of its nonprogram-related resources and that as long as
19　the contract gave you adequate assurance that you were
20　protected in that manner you were going to be satisfied?
21       MR. GRIFFIN: Objection.
22   A    So where did I go wrong in the words here? Am
23   I understanding what you said?
24 BY MR. JOHNSON:
25   Q    Yeah. I think if you are agreeing with me

8

Page 33

1  now -- I think what you've just told Mr. Griffin a moment
2  ago was a little different from that. You told him a
3  moment ago that you not only wanted assurance that you
4  wouldn't have to pay for program shortfalls out of
5  Shriners nonprogram-related resources but that you wanted
6  this exact assurance and no other.
7    A  That's what I thought he said.
8    Q  Well, okay.
9      MR. GRIFFIN: I believe you said yes, right?
10     THE DEPONENT: Yeah.
11 BY MR. JOHNSON:
12   Q  But the point is, now you've just told me,
13 though, that as long as the contract contained a
14 provision that protected Shriners by some adequate means
15 from ever having to be liable out of its own resources
16 for paying for program shortfalls that that was what
17 Shriners wanted and that's what would have satisfied you?
18     MR. GRIFFIN: Objection.
19 BY MR. JOHNSON:
20   Q  Am I not correct?
21   A  That's what did satisfy us.
22   Q  And I understand this particular provision
23 satisfied you?
24   A  Mmm-hmm.
25   Q  But I take it you recognize that it's also

Page 34

1  possible that some different wording, maybe even some
2  different modality, if it also provided clear protection
3  that you were never going to have to pay for a shortfall
4  out of Shriners' own nonprogram-related resources that
5  would have addressed the issue and that would have
6  satisfied you?
7      MR. GRIFFIN: Objection.
8  BY MR. JOHNSON:
9    Q  Wouldn't it?
10   A  I don't know how it could have been any
11 different.
12   Q  Well, that isn't my question. I'm not asking
13 you to imagine whether it could have been any different.
14   A  It's a hypothetical thing, isn't it? I mean,
15 it's there --
16   Q  Well, let me do it in non-hypothetical form.
17     MR. GRIFFIN: It's impossible.
18     MR. JOHNSON: You wait and see.
19   A  Go for it.
20 BY MR. JOHNSON:
21   Q  Is it not your testimony, sir, that any
22 contract provision which clearly protected Shriners
23 against any liability for having to pay program
24 shortfalls out of its own resources would have satisfied
25 your concern in that regard and would have satisfied you?

Page 35

1      MR. GRIFFIN: Objection. I think it's like the
2  seventh time you've asked him.
3    A  I don't know how I can say it any different
4  than it was there. If it's written there, it's the way
5  it is.
6  BY MR. JOHNSON:
7    Q  I understand that, sir.
8    A  If there was -- if you -- I don't know -- how
9  can you reword it to be any different?
10   Q  I'm not --
11   A  I guess those of us in the western part of the
12 state don't understand the eastern part of the state
13 but --
14   Q  It's not that hard. I don't have any trouble
15 communicating with my neighbors out in Alford at all.
16 I'm not delving into the question of how one would go
17 about drafting some alternative provision over your
18 concern. Isn't it fair to say that your concern and the
19 concern of your colleagues was that with the substance,
20 you wanted to be protected against having to pay for
21 shortfalls out of SHC's other resources?
22     MR. GRIFFIN: Objection.
23   A  Yes.
24 BY MR. JOHNSON:
25   Q  That's what you were concerned about, weren't

Page 36

1  you?
2    A  That's what we did.
3    Q  And you were concerned with the substance of
4  that issue, that you have the protection, not with the
5  words that provided it, weren't you?
6      MR. GRIFFIN: Objection.
7    A  Yeah.
8      MR. JOHNSON: Good. Thank you. That's it.
9      MR. GRIFFIN: I'll ask him to clarify because
10 this has been so muddied.
11     EXAMINATION
12 BY MR. GRIFFIN:
13   Q  Sitting here today there is no way you can say
14 you would have agreed to any contract other than the
15 contract that's before you, correct?
16     MR. JOHNSON: Objection to the form. Asked and
17 answered.
18   A  You are right. That's it.
19 BY MR. GRIFFIN:
20   Q  Mr. Johnson's questions about different
21 versions are speculation in your mind, correct?
22   A  Yes, sir.
23     EXAMINATION
24 BY MR. JOHNSON:
25   Q  Forces me to ask one further question.

9