UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Vantage Financial Services, Inc.<br>　　　　　Plaintiff<br><br>v.<br><br>NonProfit Service Group, Inc and George E. Miller<br>　　　　　Defendants | CIVIL ACTION NO. 04-11686-WGY |

**DEFENDANTS' MOTION IN LIMINE TO PRECLUDE SPECULATIVE EVIDENCE**

Defendants Nonprofit Service Group, Inc. and George E. Miller ("Miller") submit this Motion in Limine to preclude various categories of speculative evidence.

## I. INTRODUCTION

Plaintiff Vantage Financial Services, Inc. ("Vantage") alleges that defendants were negligent in negotiating and drafting an Agreement to Provide Fund Raising Consulting and Management Services ("Agreement") entered into between Vantage and the Shriners Hospitals for Children ("Shriners") on June 17, 1999. It is clear from Vantage's pretrial submissions that it intends to rely on speculative evidence in presenting its case to the jury. Such evidence is inadmissible and Vantage should be precluded from introducing it at trial. Specifically, Vantage intends to rely on speculation to prove the fundamental elements of causation and damages.

## II. ARGUMENT

### A.　THE COURT SHOULD EXCLUDE SPECULATVE EVIDENCE THAT THE AGREEMENT COULD HAVE BEEN DRAFTED DIFFERENTLY

Vantage's case is premised on the theory that defendants should have negotiated a different agreement with the Shriners, however, there is no evidence such an agreement was even

possible. Vantage is intent on asking the jury to assume various scenarios that have no evidentiary foundation. Vantage's assumptions are threefold: 1) that there were alternative payment provisions available that satisfied the Cooperative Mail Rule ("CMR") 2) that those alternative provisions would have satisfied the Shriners demands and 3) that the alternative payment provisions would have avoided exposure in the underlying *qui tam* case in which Vantage was a defendant.

Vantage's "chain of conjecture" does not satisfy its obligation to prove causation in this case. Berman v. Alexander, 57 Mass.App.Ct. 181, 188 (2003) In Berman, much like this case, the plaintiff argued that if her attorney had given her different advice there would have been a series of theoretical outcomes. Id. at 187-188. The Massachusetts Appeals Court rejected the plaintiff's approach as "pure speculation." Id. As in Berman, there is no evidence that the alternatives proposed by Vantage are anything more than wishful thinking and such speculation should be excluded. See McLaughlin v. Vinios, 39 Mass.App.Ct. 5, 8 (1995) ("If the links in the chain of causation are overly attenuated the evidence may be excluded as speculative"); Bordern v. Betty Gibson Associates, Inc. 31 Mass.App.Ct. 51, 55 (1991) ("A recovery in a negligence case cannot be based on conjecture or speculation as to causation.")

1. **THE COURT SHOULD EXCLUDE SPECULATIVE EVIDENCE AS TO ALTERNATIVE CONTRACT LANGUAGE**

In order to prove its case, Vantage must present evidence that alternative contract language existed and that the language satisfied the CMR. Having no expert witness, Vantage is incapable of presenting such evidence to the jury other than in the form of pure speculation. Only an expert can propose and discuss alternative contract provisions that similarly situated attorneys would have considered and hold those provisions up to CMR scrutiny. In the absence of such testimony, Vantage should not be allowed to engage in mere speculation and simply

suggest alternative contract provisions to the jury and suggest that such provisions would have satisfied the CMR.

### 2. THE COURT SHOULD EXCLUDE SPECULATIVE EVIDENCE AS TO WHAT, IF ANY, ALTERNATIVES THE SHRINERS WOULD HAVE AGREED TO

As indicated in its opposition to defendants' most recent motion for summary judgment, Vantage believes that the jury can reasonably infer that the Shriners would have accepted alternative provisions in the Agreement. As discussed above, there will be no evidence of such alternative provisions. Moreover, there will be no evidence as to what, if any, alternative contract language would have been acceptable to the various members of the Shriners board of directors who were responsible for approving such agreements. To suggest to the jury that there was some acceptable alternative would merely place another layer of speculation between reality and the alternative universe Vantage hopes to create from whole cloth. The jury cannot look into the minds of the Shriners personnel and decide what the Shriners would have done. See Berman, 57 Mass.App.Ct. at 190 (excluding speculative evidence in legal malpractice case as to what members of board of directors would have done under different circumstances). Vantage should not be permitted to introduce speculative evidence that the Shriners would have accepted alternative provisions.

### 3. THE COURT SHOULD EXCLUDE SPECULATIVE EVIDENCE AS TO WHETHER AN ALTERNATIVE FORM OF THE CONTRACT WOULD HAVE PASSED SCRUTINY IN THE *QUI TAM* ACTION

In addition to a lack of evidence of what, if any, alternatives were available and acceptable to the Shriners, there is a similar lack of evidence as to ultimate question of whether any other form of the Agreement would have avoided exposure in the *qui tam* action. Again, Vantage has no evidence to present to the jury on this point. There is no expert to opine as to

3

CMR compliance. Even if there were such an expert testifying on behalf of Vantage, it would be mere speculation to attempt to go back and read the mind of the Government, just as it is speculation to attempt to read the minds of the Shriners. The chain of conjecture would only be extended. There will be no evidence that an alternative agreement could have been reached that would have avoided exposure in the *qui tam* case and Vantage should not be permitted to ask the jury to speculate otherwise.

### B. THE COURT SHOULD EXCLUDE SPECULATIVE EVIDENCE OF DAMAGES

The net financial result for Vantage under the Agreement was a multi-million dollar profit. Vantage did not suffer damages. Although Vantage speculates that a different agreement should have been reached, the evidence is that defendants' conduct resulted in "sure and significant gains" for its client as a result of the Agreement. Berman, 57 Mass.App.Ct. at 189. see also, Birbiglia v. St. Vincent Hospital, Inc. 427 Mass. 80, 84 (1998) (finding that doctor had no claim for damages due to loss of staff privileges when he made more money without staff privileges); Ullmann v. Olwine, Connelly, Chase, O'Donnell Etc., 123 F.R.D. 237 (S.D. Ohio 1987)(dismissing plaintiff's claim that she was fraudulently induced into taking new job where the new job actually paid the plaintiff twice as much and there was no evidence she could have taken a different job). Vantage came out well ahead as a result of the Agreement and there is no evidence to support a better result.

### 1. THE COURT SHOULD EXCLUDE SPECULATVE EVIDENCE THAT SETTLEMENT EXPOSURE COULD HAVE BEEN AVOIDED

There is no evidence that an alternative Agreement could have been reached that would have avoided exposure in the *qui tam* action. As discussed above, there is no evidence to support the theory that any alternative existed that was both acceptable to the Shriners and would have

past muster with the Government. The parties, the Court and the jury can only to deal with the Agreement that was actually entered into by Vantage and Shriners which resulted in $15 million dollars of profit for Vantage. Even taking into account Vantage's $4.5 million settlement payment to the Government, Vantage comes out far ahead. Vantage would never have realized those profits if it had not entered into the Agreement, and there is no non-speculative evidence of any alternative to the Agreement. Vantage simply was not damaged by defendants.

Vantage's failure on the issues of both causation and damages is analogous to the case of Lifespan/Physicians Professional Services Organization, Inc. v. Combined Insurance Company of America, 345 F.Supp.2d 214 (D.R.I. 2004). The Lifespan case included claims for negligent misrepresentation and negligence based on an insurance broker's alleged failure to obtain more favorable insurance coverage than the policy under which the plaintiff had been compensated for its loss. Id. at 225-28. The defendant insurance broker filed a motion for summary judgment based in part on the argument that the plaintiff "has provided no evidence that there was any better insurance coverage available on the market, and so there were no adverse consequences to [plaintiff] as a result of its failure to fully understand the coverage provided by the policy." Id. at 227.[1] The court found this argument compelling and entered summary judgment in the defendants' favor on both the negligent misrepresentation and negligence claims, noting :

> It would be insufficient under these circumstances merely to allege loss of opportunity to seek insurance coverage where the attempt might not have been successful; rather, the ultimate purpose to be effected is to allow recovery where, had the defendant acted properly, plaintiff would not only have the opportunity to seek, but also could have successfully procured alternative insurance. . .The law is well established that the plaintiff must show by the preponderance of the evidence that other insurance could have been obtained, which requirement arises out of the plaintiff's obligation to prove causation and damages.

---

[1] As in this case, the plaintiff in Lifespan did not have an expert to support its claim.

Lifespan, 345 F.Supp.2d at 228 citing Bayly, Martin & Fay v. Pete's Satire, 739 P.2d 239 (Colo. 1987). The court found that there was no evidence that the plaintiff could have obtained any better policy than the one that it received and was paid under. Id. As a result, any claim of damages could not be supported and was merely "speculative." Id. at 227

The same reasoning applies here. Vantage claims that it could have avoided exposure in the *qui tam* action if it had not relied on the defendants' alleged advice to enter into the Agreement. However, Vantage can only speculate that it could have structured an agreement in such a way that would have avoided settlement exposure. Without proof that a more favorable agreement could have been reached, Vantage can only speculate that it was damaged. Vantage should be precluded from presenting such speculation to the jury.

2. **THE COURT SHOULD EXCLUDE SPECULATIVE EVIDENCE AS TO THE ALLOCATION OF THE SETTLEMENT**

Vantage should not be permitted to present speculative evidence as to the allocation of the *qui tam* settlement. Vantage, through its Rule 30(b)(6) designee and in its responses to defendants' request for admissions, has admitted that no allocation of the settlement was ever discussed or agreed to with the Government. As a result, there is no evidence of what money was actually paid to settle the Shriners' claim. In place of such evidence, Vantage has simply crafted a settlement allocation that suits its purposes in this case. Vantage speculates that because fifty-percent of the single damages claimed in the *qui tam* action were allegedly attributable to the Shriners' claim, fifty-percent of the settlement should be allocated to the Shriner's claim even though there was never a meeting of the minds on such an allocation. See Schiller & Schmidt, 969 F.2d 410, 415 (7th Cir. 1992)(noting damages calculations "must not insult the intelligence" or be based on "simplistic extrapolation and childish arithmetic"). There

6

is no evidence to support an actual allocation and without such proof Vantage cannot recover damages:

> It is the long standing rule in this Commonwealth that while a plaintiff need not prove damages to a mathematical certainty, such damages cannot be predicated upon speculation or conjecture. See Burnham v. Dowd, 217 Mass. 351, 360, 104 N.E. 841 (1914), and cases cited. See also Novel Iron Works, Inc. v. Wexler Construction Co., 26 Mass. App. Ct. 401, 412-13, 528 N.E. 2d 142, rev. denied 403 Mass. 1104, 530 N.E. 2d 797 (1988) (degree of certainty necessary to assess damages); Bond Pharmacy, Inc. v. City of Cambridge, 338 Mass. 488, 491-92, 156 N.E. 2d 34 (1959) (damages requires more than speculation). When a plaintiff seeks damages, the jury must have a reasonable basis for measuring the amount owed the plaintiff as a result of his loss. See Stark v. Patalano Ford Sales, Inc., 30 Mass. App. Ct. 194, 202, 567 N.E. 2d 1237 (1991). In Stark, a case where the plaintiff sought damages for the loss of use of a truck the Appeals court reiterated the long-standing principle that "[w]hen ... damages are sought they must be proved and not left, as here, to speculation. 'This is simply a concrete application of the wider principle ... that the complaining party must establish his claim upon a solid foundation in fact, and cannot recover when any essential element is left to conjecture, surmise or hypothesis.'" Id., citing Snelling & Snelling of Mass., Inc. v. Wall, 345 Mass. 634, 636, 189 N.E. 2d 231 (1963), quoting from John Hetherington & Sons, Ltd. v. William Firth Co., 210 Mass. 8, 22, 95 N.E. 961 (1911). When damages are founded upon speculation and conjecture, the plaintiff cannot recover as a matter of law. See Birbiglia v. St. Vincent Hosp., 3 Mass. L. R. PTR. 407, 1994 WL 878836, 9 (Mass. Super. Ct. 1994).

Bala v. AOTec, 1998 WL 1181261 **1 (Mass.Super). Defendants should not be penalized by Vantage's failure to allocate the settlement during its negotiations with the Government. Furthermore, Defendants should not be penalized by Vantage's failure to designate an expert witness to attempt addresses actual damages exposure as opposed to simply halving the pie. Vantage should be precluded from presenting its speculative theory of damages to the jury.

3. **THE COURT SHOULD EXCLUDE SPECULATIVE EVIDENCE THAT THE SHRINERS' CLAIM INCREASED THE VALUE OF THE QUI TAM SETTLEMENT**

Vantages' theory that the Shriners claim increased its settlement exposure in the *qui tam* action is contrary to the evidence and Vantage should be precluded from suggesting otherwise to the jury. Vantage has testified that the *qui tam* action could not have been settled for less than

$4.5 million even before the Shriners' claim was made an issue in the case. Any suggestion that the Shriners' claim increased Vantage's exposure is contrary to the evidence and should not be presented to the jury. By its own admission, Vantage was not damaged since it could never have settled the *qui tam* action for less.

### III. CONCLUSION

For the above-stated reasons, Vantage should be precluded from introducing speculative evidence concerning causation and damages.

Respectfully submitted,

NonProfit Service Group, Inc. and
George E. Miller,

By their attorneys,

_____
Richard L. Nahigian, Esq., BBO#: 549096
Matthew J. Griffin, Esq., BBO#641720
PEABODY & ARNOLD LLP
30 Rowes Wharf, 6th Floor
Boston, MA 02110-3342
(617) 951-2100

PABOS2:MJGRIFF:630218_1
14794-90433