UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Vantage Financial Services, Inc.<br><br>　　　　　　Plaintiff<br><br>v.<br><br>Nonprofit Service Group, Inc. and George E. Miller<br><br>　　　　　　Defendants | CIVIL ACTION NO. 04-11686-WGY |

## DEFENDANTS' TRIAL BRIEF

Defendants Nonprofit Service Group, Inc. and George E. Miller submit this Trial Brief

pursuant to the Court's November 11, 2005 Pretrial Order.

## I. PENDING SUMMARY JUDGMENT MOTION

Pending before the Court is Defendants' Motion for Summary Judgment Concerning

Expert Testimony.  Defendants have moved for summary judgment on the grounds that plaintiff

Vantage Financial Services, Inc. ("Vantage") cannot succeed on its remaining claims without the

support of expert testimony.  Ultimately, Vantage's claims depend on a showing 1) that

alternative contract provisions existed, 2) that such contract provisions complied with the

Cooperative Mail Rule, 3) that the provisions would have satisfied the Shriners' demands, 4) that

the provisions would have avoided exposure in the *Qui Tam* action, and 5) the defendants

deviated from the standard of care.  Expert testimony is required to make even a minimal

showing as to most, if not all of the above-listed factors.  Having no expert, Vantage cannot meet

its burden of proof.

In its opposition to defendants' summary judgment motion, Vantage attempts to avoid dismissal by mischaracterizing the record evidence in a number of respects

**A.    VANTAGE MISCHARACTERIZES THE AFFIDAVIT OF DEFENDANT MILLER SUBMITTED IN THE *QUI TAM* ACTION AND IGNORES THE RECORD OF SIMILAR AGREEMENTS**

Vantage attempts to support its negligent misrepresentation claim by mischaracterizing an affidavit of defendant George Miller that Vantage submitted to the court in the *Qui Tam* Case. In its opposition, Vantage states that Mr. Miller's affidavit informed the Court that he was aware of or had drafted numerous agreements with "payment provisions: that were similar to those at issue here." In fact, it is undisputed that Mr. Miller's affidavit states only that he drafted "similar agreements," a statement which is supported by the factual record. Defendants have been involved in the preparation of numerous fundraising contracts with provisions similar to those employed in the Shriners Agreement. Some of those agreements, the ones that defendants were able to locate and produce, are included in Exhibit I to the Appendix of Exhibits in Support of Plaintiff's Opposition to Defendants' Motion For Summary Judgment Concerning Expert Testimony. Among those agreements, provisions for follow-up mailings and donor list rental to defray outstanding fundraising expenses appear in the following pages of Exhibit I: NSG2015, NSG2047, NSG2063, NSG2098, NSG2121, NSG2137, NSG2157, NSG2170, NSG2185, NSG2211, NSG2226, NSG2248, NSG2249, and NSG2243.

**B.    VANTAGE MISTATES THE RECORD OF ALTERNATIVE PAYMENT PROVISIONS CONSIDERED BY THE SHRINERS**

Vantage suggests that the only payment provisions proposed or considered by the parities were those that were contained in the final form of the Agreement. It also suggests that Mr. Miller proposed the payment provisions that appeared in the final Agreement. Both of these suggestions conflict with the undisputed deposition testimony of Jay Fleisher, which is attached

as Exhibit 2 to the previously filed Affidavit of Matthew J. Griffin in support of Defendants'

motion.

Early on in the negotiations (before defendants even became involved), Shriners insisted

and understood from its discussions with Vantage that Shriners' liability to pay for Vantage's

services would be limited to assets generated by the fundraising program  (Fleisher Tr. at p. 16).

Mr. Fleisher testified that the negotiations going forward were "limited by the presentations at

the Board meetings as to how the program would operate without financial risk to Shriners . . .

.". (Fleisher Tr. at pp. 83-84).  Thus, Shriners rejected Mr. Miller's initial draft of the Agreement

because it did not comport with the Shriners' understanding that its liability would be limited

based on discussions with Vantage before defendants became involved in the negotiations:

> Q:      Okay.  And at some point did you become aware that there was a
> problem or a potential problem with respect to addressing SHC's interest
> by that means?
>
> A:      When I first received the contract from Mr. Miller subsequent to
> the board meetings, it did not include any provisions with would insulate
> Shriners Hospitals from loss should the proceeds from the mailings not
> cover the costs of the program.
>
> Q:      Okay.  And when you received that draft – and that, I take it, was a
> later draft than the one that's a part of Exhibit 1, was it not?
>
> A:      Correct.

(Fleisher Tr. at pp. 21; see also Fleisher Tr. at pp. 93-94).  Mr. Fleischer testified that he "asked

[Mr. Miller] why the agreement that he prepared was inconsistent with the representation that

had been made to our board members and subsequently by our boards (sic) members to me that

there would be no risk of loss, and I believe he [Mr. Miller] referred to postal regulations."

(Fleisher Tr. at p. 23; see also Fleisher Tr. at p. 50).

Mr. Fleisher testified that he would not have advised the Shriners to enter into the Agreement absent the inclusion of the final payment provisions, as written. (Fleisher Tr. at p. 96). Mr. Fleisher also acknowledged that he was responsible for creating the final draft of the Agreement (Fleisher p. 97) and that the payment provisions were included in the final Agreement at the request of Shriners' board members. (Fleisher Tr. at pp. 90-93). Vantage ignores the fact that the ultimate Agreement had to satisfy the Shriners's understanding and demands. Vantage also ignores the fact that expert testimony would be necessary to prove what the defendants should have or could have done to address those demands.

Vantage's contention that alternative payment provisions were not proposed and were actually feasible is simply not supported by the record. Although Vantage's opposition ignores the initial draft prepared by Mr. Miller, which place the risk squarely on the Shriners, Vantage's opposition admits that various alternatives were in fact proposed and rejected by the Shriners (i.e., the so-called "up-front funding and loan agreement methods). In fact, Shriners considered and rejected the only alternative payment method that Vantage complains was not proposed to the Shriners (the unlimited list rental or exchange alternative). Mr. Fleisher testified that the Shriners considered payment provisions that did not place limitations on the time period in which Vantage could rent or exchange the Shriners mailing list. (Fleisher Tr. at pp. 70-72). Vantage has no evidence to suggest that alternative payment provisions existed that would have satisfied the Shriners. The record evidence is to the contrary. In any event, only an expert could opine as to available alternatives that would have satisfied the Cooperative Mail Rule. Having no such expert, Vantage's claims must be dismissed on summary judgment.

## II. **JURY INSTRUCTIONS**

Defendants' Request for Jury Instructions is attached hereto as Exhibit A

### III. SPECIAL VERDICT FORM

Defendants' Proposed Special Verdict Form is attached hereto as Exhibit B

Respectfully submitted,

Nonprofit Service Group, Inc. and
George E. Miller,

By their attorneys,

/s/ Matthew J. Griffin
Richard L. Nahigian, Esq., BBO#: 549096
Matthew J. Griffin, Esq., BBO#641720
PEABODY & ARNOLD LLP
30 Rowes Wharf, 6th Floor
Boston, MA  02110-3342
(617) 951-2100

### CERTIFICATE OF SERVICE

I, Matthew J. Griffin, Esq. certify that on this 27th day of January 2006 I electronically served the foregoing document on the following attorney of record:

Laurence M. Johnson Esq.
Davis, Malm & D'Agostine, P.C.
One Boston Place
Boston, MA  02108

/s/ Matthew J. Griffin
Matthew J. Griffin, Esq.

PABOS2:MJGRIFF:630214_1
14794-90433

5