UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

VANTAGE FINANCIAL SERVICES, INC.
Plaintiff,

v.

NONPROFIT SERVICE GROUP AND
GEORGE E. MILLER,
Defendants.

C.A. No. 04-11686-WGY

### MOTION IN LIMINE TO EXCLUDE EXPERT TESTIMONY

INTRODUCTION

The plaintiff, Vantage Financial Services, Inc. ("Vantage"), hereby moves in limine to exclude the expert testimony and expert report proposed by the defendants, Nonprofit Service Group and George E. Miller ("Defendants"), on the ground that the proposed testimony and report do not address any factual issues in dispute under Vantage's theory of the case.

DISCUSSION

A.  **Defendants' Expert Report**

In connection with their defense of the claims asserted by Vantage in this matter, Defendants have engaged the services of Robert S. Tigner ("Tigner"), an individual who claims to have expertise in the areas of fundraising regulation and nonprofit accountability. Tigner submitted an expert report (the "Tigner Report") in this matter in which Tigner states that he was asked by Defendants to answer a number of questions concerning the contract between Vantage and Shriners Hospital for Children (the "Shriners Contract"). (A copy of the Tigner Report is attached hereto as <u>Exhibit A</u>.) In the report, Mr. Tigner states that he was asked to do the following:

1.  "assess the [Shriners C]ontract against the standards the Postal Service uses to determine what it terms 'unauthorized cooperative mailings.'"

2.  "examine various aspects of contingent security interests in donor list rental income (including ethical considerations, frequency of occurrence, and sufficiency in protecting fees owed to the secured party)."

3.  "examine the degree of care exercised by Miller in comporting the contract to the requirements of the cooperative mail rule to the extent that it can be assessed from the face of the contract and from other facts known to me."

**B.    Vantage's Theory Of The Case**

As this case presently stands, Vantage is proceeding to trial on three (3) theories of liability: breach of contract, legal malpractice and negligent misrepresentation. Vantage alleges that it entered into a contract with Defendants under which Defendants agreed to provide professional legal services. Specifically, Vantage engaged Defendants to assist it in preparing a substantial fundraising services contract it was then negotiating with Shriners Hospitals for Children ("Shriners"), a large nonprofit corporation.

Vantage required Defendants' assistance because, at that time, Vantage was involved in a civil lawsuit under the False Claims Act in the United States District Court for the District of Massachusetts (the "Underlying Action") in which the United States alleged, among other things, that Vantage had made certain mailings on behalf of other nonprofits that were not eligible for mailing at not-for-profit postal rates because Vantage's contracts with such nonprofits either limited the nonprofit's liability to pay Vantage for its services and out-of-pocket costs or restricted the means by which Vantage could obtain payment for same in the event of a shortfall in the funds raised by the solicitation mailings and that, as a result, the mailing of such

2

solicitations at not-for-profit postage rates was proscribed by the United States Postal Service's Cooperative Mail Rule (hereinafter the "CMR").

As alleged in the Complaint, the evidence will show that Vantage chose Defendants because they held themselves out as experts in various areas of nonprofit fundraising and, in particular, preparing contracts for providing mailing services to nonprofits that complied with the CMR. The evidence will also show that Defendants were aware of the Underlying Litigation and understood that they had been engaged in order to ensure that Vantage avoid any risk or exposure to liability with respect to any contract with Shriners or to advise Vantage if they concluded that it was not possible to prepare contract provisions that would both satisfy Shriners and protect Vantage from potential liability for violation of the CMR or additional claims against it in the Action.

### C. Defendants' Proposed Expert Testimony Addresses None Of Vantage's Theories

Defendants' proposed expert testimony does not address any of Vantage's theories of liability in this case and therefore should be excluded. The Tigner Report is addressed to the question of whether an attorney should be held to have anticipated that the Postal Service would claim that the payment provisions of the Shriners' Contract contravened the CMR. Miller himself has admitted that he was always aware that in order to comply with the CMR, Shriners had to be <u>solely</u> at risk for bearing all program costs and that his draft of Paragraph 13.2 of the Shriners Contact failed to so provide and left Vantage expressly liable for program costs that had not been recovered by follow up mailings and/or rental of the donor list at the expiration of the thirty-six month period after termination for cause. Thus, Miller has acknowledged that he was, in fact, aware of precisely what his retained experts have argued he was not required to be aware

of. This admission renders Tignor's opinions irrelevant to both Plaintiff's theories of liability and to Defendants' admitted knowledge.

Moreover, the Tigner Report fails to address the single issue that is common to all of Vantage's remaining claims in this case; misrepresentation. Defendants numerous misrepresentations stand alone as a separate cause of action but also serve as an independent basis for both Vantage's breach of contract and malpractice claims. *See e.g. Chipman v. Shocket*, 60 Mass. App. Ct. 1109, n.5 (2003) (attorney's misrepresentation went to the jury as a basis for legal malpractice claims); *Hendrickson v. Sears*, 365 Mass 83, (1976) (attorneys misrepresentations regarding the quality of title to real property was a basis for malpractice claim). Indeed, the Tignor Report indicates no awareness that any representations at all were made by Miller to Vantage, fails to consider their significance and is therefore wholly irrelevant to the facts and legal issues in the case, and must be excluded.

Finally, the evidence will show that a term of the contract between Vantage and Defendants obligated Defendants to inform Vantage if it was not possible to prepare contract provisions that would both satisfy Shriners and protect Vantage from potential liability for violation of the CMR or additional claims against it in the Action. It is undisputed that Defendants advised Vantage that the Shriners Contract complied with the CMR. It follows therefore, that the issue to be decided by the Jury on this breach is not whether the Shriners Contract complied with the CMR, but whether Defendants an actual basis for so advising Vantage. The evidence that will be before the Jury on the issue of whether Defendants were derelict in meeting their duty of care is as follows: (1) Defendants never prepared a fundraising contract with a payment provision similar to the Shriners Contract; (2) Defendants never reviewed any funding raising contracts with similar payment provisions; (3) Defendants were

4

aware of no administrative or court decisions addressing the validity of a payment provision similar the Shriners Contract; and (4) Defendants never submitted the Shriners Contract, or a draft thereof, to the Postal Service for an "advanced ruling." This evidence conclusively establishes that Defendants' advice was baseless, only exacerbated Defendants' misrepresentations and are therefore well within the ken of a layman. *Turcotte v. DeWitt*, 332 Mass. 160, 165 (1955) (when "a matter may easily be comprehended by jurors the testimony of an expert has no place."). Without the need for expert testimony, Vantage's evidence establishes that Defendants had no basis for advising Vantage to enter into the Shriners Contract and that by doing so, as well as by misrepresenting the facts upon which their advice was purportedly based, Defendants breached the contract between Vantage and Defendants and committed malpractice. *Glidden v. Terranova*, 12 Mass. App. Ct. at 598-599 *citing Gilbert v. Williams*, 8 Mass. 51, 57 (1811) ("whenever an attorney disobeys the lawful instructions of his client, and a loss ensues, for that loss the attorney is responsible")

WHEREFORE, Vantage respectfully requests that the Court exclude the Tigner Report and any testimony from Tigner.

VANTAGE FINANCIAL SERVICES, INC.

By its Attorneys,

*/s/ Laurence M. Johnson*

Laurence M. Johnson (BBO #252720)
Neal J. Bingham (BBO#652029)
Davis, Malm & D'Agostine, P.C.
One Boston Place
Boston, MA 02108
(617) 367-2500

394625v.1