UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| VANTAGE FINANCIAL SERVICES, INC.<br>Plaintiff,<br><br>v.<br><br>NONPROFIT SERVICE GROUP AND<br>GEORGE E. MILLER,<br>Defendants. | C.A. No. 04-11686-WGY |

## MOTION IN LIMINE TO EXCLUDE IRRELEVANT DOCUMENTS

### INTRODUCTION

The plaintiff, Vantage Financial Services, Inc. ("Vantage"), hereby moves in limine to exclude trial exhibits proposed by the defendants, Nonprofit Service Group and George E. Miller ("Defendants"), in their pretrial papers on the ground that the proposed exhibits do not address any factual issues in dispute in the case. To the contrary, introduction of these proposed exhibits is intended to distract the Jury and prejudice Vantage.

### BACKGROUND

**A.   General Factual Background**

Vantage engaged Defendants to assist it in preparing a substantial fundraising services contract it was then negotiating with Shriners Hospitals for Children ("Shriners"), a large nonprofit corporation.

Vantage required Defendants' assistance because, at that time, Vantage was involved in a civil lawsuit under the False Claims Act in the United States District Court for the District of Massachusetts (the "Underlying Action") in which the United States alleged, among other things, that Vantage had made certain mailings on behalf of other nonprofits that were not eligible for

mailing at not-for-profit postal rates because Vantage's contracts with such nonprofits either limited the nonprofit's liability to pay Vantage for its services and out-of-pocket costs or restricted the means by which Vantage could obtain payment for same in the event of a shortfall in the funds raised by the solicitation mailings and that, as a result, the mailing of such solicitations at not-for-profit postage rates was proscribed by the United States Postal Service's Cooperative Mail Rule (hereinafter the "CMR").

As alleged in the Complaint, the evidence will show that Vantage chose Defendants because they held themselves out as experts in various areas of nonprofit fundraising and, in particular, preparing contracts for providing mailing services to nonprofits that complied with the CMR. The evidence will also show that Defendants were aware of the Underlying Litigation and understood that they had been engaged in order to ensure that Vantage avoid any risk of or exposure to liability with respect to any contract with Shriners or to advise Vantage if they concluded that it was not possible to prepare contract provisions that would both satisfy Shriners and protect Vantage from potential liability for violation of the CMR or additional claims against it in the Action.

### B.  Vantage's Theory Of The Case

The single issue that is common to and determinative of all of Vantage's remaining claims in this case is misrepresentation. Defendants had a contractual obligation to inform Vantage if it was not possible to prepare contract provisions that would both satisfy Shriners and protect Vantage from potential liability for violation of the CMR or additional claims against it in the Action. Instead, the evidence will show that Defendants misrepresented that the Shriners Agreement's payment provisions (which they had drafted) (1) were in common use in the industry, (2) had been frequently utilized by them previously in preparing other non-profit

fundraising agreements, (3) had never been questioned or challenged by the Postal Service and (4) that the Shriners Agreement itself had been shown to and approved by the Postal Service. It is undisputed that Defendants advised Vantage that the Shriners Contract complied with the CMR. It follows therefore, that the issue to be decided by the Jury is not whether the Shriners Contract complied with the CMR, but whether Defendants made the above misrepresentations in connection with their advice to Vantage that the Shriners Agreement complied with the CMR and that if Vantage executed the Agreement it would be safe from any risk or exposure to CMR violation claims based upon the Agreement.

### C.      Vantage Objections To Defendants' Proposed Trial Exhibits

#### 1.      Late Identified Proposed Exhibits

The Court should exclude all exhibits that were identified late by Defendants. Pursuant to this Court's procedural order of November 1, 2005, the parties filed a Joint Pretrial Memorandum on November 14, 2005, which included Defendants' identification of 113 proposed trial exhibits. Vantage filed its objections to certain of these proposed exhibits on January 26, 2005. On January 25, 2005, Defendants served a supplemental list of proposed Exhibits that contained a large number of additional exhibits and that also substituted certain documents for others in Defendants' original list of proposed exhibits. The documents added and substituted by Defendants must be excluded. Defendants identified these documents on the eve of trial. If these documents are allowed into evidence, Vantage will be prejudiced because its attorneys have been preparing for trial with the understanding that they would be dealing with a known number of proposed exhibits. Defendants themselves have insisted upon strict compliance with the Court's scheduling orders and have successfully foreclosed Vantage from offering expert testimony because Vantage was not able to serve its expert report within the time

3

required by the Court's scheduling order, even though such a report would still have been served well prior to the commencement of trial. Defendants should not be permitted to insist upon Vantage's compliance with the schedule ordered by the Court and, at the same time, to ignore it when Defendants find it convenient to do so.

### 2. Several Categories Of Documents Identified By Defendants Should Be Excluded From Evidence Because They Are Irrelevant

Of even greater importance than their late designation of additional proposed exhibits, Defendants have designated as exhibits and propose to offer in evidence, literally thousands of pages of documents that are wholly irrelevant to the misrepresentation claims presently before the Court. The objectionable proposed exhibits fall into four major categories: (1) post-contract administration and performance of the Shriners Contract, including various disputes between Vantage and Shriners with respect to the performance of the Agreement, <u>none of which involve Shriners liability to pay for program costs, the only provisions at issue in this case</u>, (2) the dealings between Vantage and Shriners with respect to the ultimate termination of the Agreement, (3) Vantage's fundraising arrangements with various of the <u>other</u> nonprofits, whose contracts were the subject of entirely separate claims by the Government in the Underlying Action and (4) the economic results, to Shriners and Vantage, of the fundraising programs pursuant to the Shriners Agreement. None of these matters, or the proposed trial exhibits that relate to them, have any anything whatsoever to do with either Miller's performance of his obligations as Vantage's counsel, the misrepresentations that the evidence will establish that he made, or the consequences of same to Vantage.

As an initial matter, Defendants can establish absolutely no connection between any of these proposed trial exhibits and Vantage's burden to establish liability on the misrepresentation claims because virtually all of the documents were created <u>after</u> Defendants made the alleged

4

misrepresentations <u>and</u> Vantage entered into the Shriners Contract in 1999. As but one example of the irrelevance of documents involving such dealings, Defendants seek to admit numerous documents that relate to an administrative typographical error in one of the fundraising mailings that Vantage prepared and had mailed on behalf of Shriners. An incorrect contact telephone number was printed in a mailing resulting in complaints by a the person whose telephone number erroneously appeared on the mailing. The error was promptly corrected and appropriate apologies made to all concerned, but that is beside the point. Neither these, nor any other post-misrepresentation documents relating to other events similarly remote from this case, can have any bearing on this case beyond the possible efficacy that Defendants perceive in their potential to divert attention from Miller's misrepresentations and possibly to confuse or prejudice the jury.

Nor are any of these proposed exhibits relevant on the issue of damages, although the point of the majority of Defendants' proposed exhibits is to confuse or prejudice the jury on that very issue. With respect to the proposed documents related to administration and performance of the Shriners Contract, it is apparent that Defendants intend to use these documents in an effort to support their defense that Shriners Contract was profitable. With respect to settlement negotiation documents, Defendants seek to establish that Vantage's settlement of the Underlying Action cost less than its profit on the contract. Taken together, Defendants seek to persuade the Jury that Vantage suffered no damages. The calculation of damages on Vantage's malpractice/misrepresentation claim is not measured on the basis of the Agreement's alleged profitability. Vantage's evidence will permit the jury to find that it was caused to enter into the Agreement as a result of Miller's misrepresentations and that, as a result, its exposure in the Underlying Action was increased to the point where it was faced with a choice between risking financial ruin and settling the case. Its damage stem from that situation and not from the ultimate

5

denoument of the fundraising programs under the Shriners Agreement. Unless Vantage is found to have acted either unreasonably or in bad faith in settling the Underlying Action, it is entitled to be compensated for its resultant loss, which, at a minium, amounts to all reasonable expenditures in settling the Underlying Action that are ascribable to the $3 million in claims that the Government added to the case based upon the Shriners mailings. To admit documents that not only fail to address the actual issues in the case but, still worse, have no purpose but to divert attention from the actual issues and sow confusion and prejudice among the jurors. Vantage would then have no alternative but to respond to and explain all of the spurious issues raised by such documents and the inevitable result would be to unnecessarily and very substantially prolong the trial.

WHEREFORE, Vantage respectfully requests an order, *in limine*, from the Court excluding the all proposed trial exhibits related to (1) post-contract administration and performance of the Shriners Contract, including various disputes between Vantage and Shriners with respect to the performance of the Agreement, <u>none of which involve Shriners liability to pay for program costs, the only provisions at issue in this case</u>, (2) the dealings between Vantage and Shriners with respect to the ultimate termination of the Agreement, (3) Vantage's fundraising arrangements with various of the <u>other</u> nonprofits, whose contracts were the subject of entirely separate claims by the Government in the Underlying Action and (4) the economic results, to Shriners and Vantage of the fundraising programs pursuant to the Shriners Agreement and directing counsel to refrain from referring to such matters, whether in their opening statements, examination of witnesses, or final argument.

VANTAGE FINANCIAL SERVICES, INC.

By its Attorneys,

/s/ Neal Bingham
Laurence M. Johnson (BBO #252720)
Neal J. Bingham (BBO #652029)
Davis, Malm & D'Agostine, P.C.
One Boston Place
Boston, MA 02108
(617) 367-2500

394629v.1