UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| VANTAGE FINANCIAL SERVICES, INC.<br>Plaintiff,<br><br>v.<br><br>NONPROFIT SERVICE GROUP AND<br>GEORGE E. MILLER,<br>Defendants. | C.A. No. 04-11686-WGY |

**OPPOSITION TO MOTION IN LIMINE REGARDING SPECULATIVE EVIDENCE**

INTRODUCTION

The plaintiff, Vantage Financial Services, Inc. ("Vantage"), hereby opposes the motion in limine filed by the defendants, Nonprofit Services Group ("NSG") and George E. Miller ("Miller") (collectively "Defendants") regarding the exclusion of speculative evidence.

ARGUMENT

A.   **Evidence Related To Alternative Contract Language**

The first broad category of evidence that Defendants seek to exclude is evidence that alternative language could have been utilized for the Shriners Contract that would have allowed it to pass scrutiny under the Cooperative Mail Rule ("CMR"). Vantage does not intend to offer any such testimony or documents into evidence because such evidence would be irrelevant and therefore inadmissible. If, however, Defendants are permitted to offer evidence that alternative language could not have been negotiated or drafted (presumably on their theory that such circumstance relates to the issue of causation) then Vantage obviously will be entitled to offer,

and will offer, evidence that numerous alternatives existed and that their acceptance by Shriners cannot be dismissed.[1]

As the case presently stands, Vantage is proceeding to trial on three (3) theories of liability: breach of contract, legal malpractice and negligent misrepresentation. Vantage alleges that it entered into a contract with Defendants under which Defendants agreed to provide professional legal services. Specifically, Vantage engaged Defendants to assist it in preparing a substantial fundraising services contract it was then negotiating with Shriners Hospitals for Children ("Shriners"), a large nonprofit corporation. Vantage required Defendants' assistance precisely because of the CMR claims being made against it by the Government in the then-pending Underlying Action and the immense scope of the Shriners Contract, which contemplated a volume of future fundraising mailings that was approximately equal to all of Vantage's fundraising mailings for all of its other non-profit customers in the aggregate.

As alleged in the Complaint, the evidence will show that Vantage chose Defendants because they held themselves out as experts in various areas of nonprofit fundraising and, in particular, preparing contracts for providing mailing services to nonprofits that complied with the CMR. The evidence will also show that Defendants were aware of the Underlying Litigation and understood that they had been engaged in order to ensure that Vantage avoid any risk or exposure to liability with respect to the Shriners Contract and to advise Vantage if they concluded that it was not possible to prepare contract provisions that would both satisfy Shriners and protect Vantage from risk or exposure to liability for violation of the CMR or additional claims against it in the Underlying Action. Without regard to whether Paragraph 13.2 complied

---

[1] Vantage submits that the only necessary evidence of causation is a demonstration that Miller's misrepresentations caused Vantage to agree to enter into the Shriners Contract and that the Government's inclusion of claims based upon the mailings made under the Agreement in turn caused Vantage to settle the Underlying Action.

with the CMR, or whether alternative language could have been fashioned, Defendants' numerous misrepresentations placed Vantage in exactly the situation that Defendants were hired to prevent.

### B.  Vantage Will Be Able To Establish Its Damages Claim

Defendants' efforts to exclude evidence of damages must be denied. The primary thrust of Defendants' argument is that Vantage's damage calculation is speculative. This argument fails on its face. What the evidence will show without dispute is that, prior to entering into the Shriners Contract, Vantage was faced with a single damages claim by the United States in the Underlying Action in the amount of $3,000,000.00. That single damages claim doubled to approximately $6,000,000.00 after the Shriners Contract mailings claims weres added by the United States. There was nothing speculative about this calculation as the Shriners claims clearly encompassed 50% of the damages claimed and the jury can conclude that Defendants' negligent misrepresentations were the cause. Moreover, Defendants were fully aware of the enormous scope of mailings under the Shriners Contract at the time they drafted the Agreement. As a result of Judge Wolf's denial of Vantage's summary judgment motion in the Underlying Action and his finding that the Shriners Contract might very well violate the CMR, it would be reasonable for the finder of fact to conclude that Vantage had no option but to settle the case.

For the proposition that Vantage's allocation of the settlement is speculative, Defendants rely primarily on the Seventh Circuit case of *Schiller & Schmidt*, 969 F.2d 410 (7th Cir. 1992). In that case, the plaintiff, a seller of office supplies, brought suit against the defendant, a competitor, alleging copyright infringement and misappropriation of trade secrets. The plaintiff was faced with a complicated damage calculation because the Court found that some portion of the plaintiff's claimed damages was caused by the plaintiff's misconduct and some other portion

3

by the defendant's lawful entry as a powerful competitor on the market. The plaintiff's expert witness made no effort to separate the two.

The *Schmidt* case's reasoning does not apply to the facts of the present case. Here, there is no dispute that approximately $3,000,000.00 of the overall $6,000,000.00 damages claim in the Underlying Action was the direct result of the Government's inclusion of the Shriners claims. Defendants' attempt to suggest that damages calculations must be complicated in order to stand the scrutiny of the Court. That is wholly devoid of merit where, as here, Vantage had to settle the case for approximately $1.5 Million in excess of the entire single damages amount claimed by the United States prior to adding the Shriners claims. Unlike the finder of fact in *Schmidt*, the jury in the present case has all of the information it will ever need to understand the basis for Vantage's payment of the settlement, as well as the amount of the loss rationally ascribable to Defendants' misrepresentations. That calculation is exactly the one Vantage was faced with when it had to choose between settling the Underlying Action and risking its entire business through further litigation. Vantage prudently and reasonably under the circumstances chose to protect the future of its business and employees.

WHEREFORE, Vantage respectfully requests that the Court deny Defendants's motion in limine to exclude speculative evidence.

VANTAGE FINANCIAL SERVICES, INC.

By its Attorneys,

Laurence M. Johnson (BBO #252720)
Neal J. Bingham (BBO#652029)
Davis, Malm & D'Agostine, P.C.
One Boston Place
Boston, MA 02108
(617) 367-2500

394633v.1

4